Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street, 3rd Floor
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178

15 CV 1167

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

PABLO STAR LTD.,

    *Plaintiff*,

v.

THE WELSH GOVERNMENT; GRACENOTE
(d/b/a TRIBUNE MEDIA SERVICE);
PITTSBURGH POST-GAZETTE; E.W. SCRIPPS,
CO.; COLORADO NEWS FEED; TRAVEL
SQUIRE; RICHMOND TIMES DISPATCH; and
MIAMI HERALD MEDIA CO.,

    *Defendants*.

Civil Action No.:

**COMPLAINT AND
DEMAND FOR A JURY TRIAL**

---

Plaintiff Pablo Star Ltd., by and through undersigned counsel, pursuant to Rule 8 of the Federal Rules of Civil Procedure and the Local Rules of this Court, hereby demands a trial by jury of all claims and issues so triable and, for its Complaint against Defendants The Welsh Government; Gracenote (d/b/a Tribune Media Service); the Pittsburgh Post-Gazette; E.W. Scripps, Co.; Colorado News Feed; Travel Squire; Richmond Times Dispatch; and Miami Herald Media Co. (together "Defendants") states as follows:

1

## PLAINTIFF AND ITS COPYRIGHTED WORKS

1. Plaintiff Pablo Star Ltd. ("Plaintiff") is a company organized and registered under the laws of Ireland and the United Kingdom.

2. Plaintiff is the owner of all American copyrights in and to the photographic works featuring the iconic poet Dylan Thomas that are the subject of this action for copyright infringement and related claims against Defendants.

3. Plaintiff owns all American copyrights in the following photo identified as "Just Married Dylan Thomas" (referred to herein as "*Just Married*"):



4. Plaintiff owns all American copyrights in the following photo identified as "Dylan and Caitlin at Penard" (referred to herein as "*Penard*"):



5. Both *Just Married* and *Penard* were originally created by photographer Vernon Watkins.

6. As of August 25, 2011, Pablo Star acquired all rights, title, and interest in the photographs, including all copyrights therein, by written agreement.

7. Plaintiff has registered its copyrights in both *Just Married* and *Penard* with the United States Copyright Office and was issued certificates of registration for both works.

8. Plaintiff owns exclusive and valid American copyrights in the subject photos.

## JURISDICTION AND VENUE

9. This is an action for copyright infringement and related claims brought by Plaintiff, the registered owner of copyrights in and to the photographic works described herein, against Defendants for unauthorized uses of those copyrighted photographs.

10. This Court has jurisdiction over the Defendants, either generally and/or for the specific acts alleged herein.

11. As alleged in more detail herein, the Welsh Government published, displayed, distributed, and otherwise used unauthorized copies of Plaintiff's copyrighted photographs to in advertisements, publications, and other promotional materials directed at and specifically targeted towards New York residents.

12. Upon information and belief, the Welsh Government (the devolved Government of Wales) operates "Visit Wales" as an administrative division to encourage tourism and otherwise publicize and promote Wales.

13. The Welsh Government, acting through its Visit Wales division, purposefully directed advertisements, publications, promotions, solicitations, and other aspect of a tourism campaign toward residents of the State of New York.

14. The Welsh Government maintains offices, employees, and agents in New York and also conducts substantial ongoing business in the State of New York and this District.

15. Upon information and belief, the Welsh Government provided unauthorized copies of Plaintiff's copyrighted works to the other Defendants for purposes of promoting tourism and Wales' tourism-related interests in New York City.

16. Defendants Gracenote (d/b/a Tribune Media Service) ("Tribune"); E.W. Scripps, Co. ("Scripps"); the Colorado News Feed; the Pittsburgh Post-Gazette; the Richmond Times Dispatch; Travel Squire; and Miami Herald Media Co. ("Miami Herald") are collectively referred to hereinafter as the "Publisher Defendants."

17. Upon information and belief, the Publisher Defendants conduct substantial ongoing business in New York, including providing ongoing goods and services primarily in the form of news, entertainment, and other publications, including but not limited to online publications, to numerous residents of the State of New York and this District.

18. All Defendants conduct substantial business in the State of New York, are subject to personal jurisdiction in the State of New York, and have infringed Plaintiff's copyrights in the State of New York and in this District.

19. Upon information and belief, Defendants Tribune; Scripps; and Travel Squire also maintain employees, agents and/or offices in New York.

20. Upon information and belief, Defendant Travel Squire owns and operates the website www.travelsquire.com which is an online digital magazine and travel itinerary planning service.

21. Upon information and belief, Defendant Colorado News Feed owns and operates the website www.conewsfeed.com which supplied updated news and information articles online to viewers and supplies content and articles to subscribers.

22. Upon information and belief, Defendant Colorado News Feed has subscribers and customers who reside in New York and Colorado News Feed otherwise provides content and articles to individuals who reside in New York.

23. Upon information and belief, Defendant Scripps owns and operates the website www.TCPalm.com which, according to that website, is an "interactive online service" which provides news, weather, and entertainment stories to visitors.

24. Upon information and belief, Defendant Richmond Times Dispatch owns and operates the website www.timesdispatch.com which is an online publication that provides news, weather, and entertainment stories to visitors.

25. Upon information and belief, Defendant Miami Herald owns and operates the website www.miamiherald.com which is an online publication that provides news, weather, and entertainment stories to visitors.

26. Upon information and belief, each of the Publisher Defendants obtained unauthorized copies of Plaintiff's photos from the Welsh Government (or one of its administrative divisions or websites) that the Publisher Defendants then published and displayed on the websites that they each respectively own and operate.

27. Jurisdiction for Plaintiff's claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

28. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) because Defendants either reside in this District, have infringed Plaintiff's copyrights within this District, and or a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

29. Venue also is proper in this Court under 28 U.S.C. § 1400(a) since Defendants reside or may be found in this District.

## FACTUAL ALLEGATIONS

30. In March of 2012, Plaintiff discovered that the Welsh Government, acting through Visit Wales, was using Plaintiff's *Just Married* photo without permission. Through Visit Wales, the Plaintiff advised the Welsh Government that it owned copyright in the photo and promptly demanded in writing that the Welsh Government cease and desist using Plaintiff's *Just Married* photo.

31. On or about March 30, 2012, a representative of the Welsh Government acknowledged Plaintiff's notice of copyright and claimed that the Welsh Government would comply with Plaintiff's demand that Defendant cease and desist use of the photo.

32. Despite acknowledging Plaintiff's 2012 copyright notice and takedown demand, the Welsh Government subsequently began new unauthorized uses of Plaintiff's *Just Married* photo.

33. Beginning in 2014, the Welsh Government began using unauthorized copies of Plaintiff's *Just Married* photo in advertisements, promotions, brochures, and other tourism-related materials, including materials directed specifically at residents of New York and intended to lure American tourists to Wales.

34. Attached hereto as Exhibits 1 and 2 are true and correct copies of examples of publications and tourism materials published by the Welsh Government that feature unauthorized and infringing copies of Plaintiff's *Just Married* photo.

35. Because information regarding the scope of Defendant's use of Plaintiff's photographs remains in Defendant's sole possession, the full and complete scope of Defendant's infringing uses of Plaintiff's *Just Married* work has not yet been ascertained.

36. In addition to making new unauthorized uses of Plaintiff's *Just Married* photo, Defendant also created or acquired an unauthorized derivative copy of Plaintiff's *Just Married* photo that it subsequently displayed, published, sold, and otherwise used without permission from Plaintiff and despite knowing that Plaintiff claimed copyright in the underlying photographic work.

37. Attached hereto as Exhibit 3 is a true and correct uncropped copy of the unauthorized derivative work created or acquired by Defendant. Exhibit 3 is a photograph, taken from Defendant's website, of an old print of Plaintiff's *Just Married* photo that was being displayed at the time on the mantle of a fireplace at the Birthplace of Dylan Thomas.

38. Despite previously acknowledging Plaintiff's copyright notice, the Welsh Government published, displayed, and offered for sale the unauthorized derivative of Plaintiff's *Just Married* original work.

39. Attached hereto as Exhibit 4 is a true and correct copy of a screen capture from the website www.walesonview.com, which is owned and/or operated by the Welsh Government, showing the unauthorized derivative copy being offered for sale as image "SVW-C53-1213-0171.JPG."

40. The Welsh Government also provided this unauthorized derivative copy of Plaintiff's *Just Married* photo to the other Publisher Defendants (as well as to other, yet-to-be-ascertained third parties) to use to promote Wales tourism and the Visit Wales campaign here in the United States.

7

41. The Welsh Government also used Plaintiff's *Penard* photo as part of its advertising, tourism, and promotional campaign.

42. Because information regarding the scope of the Publisher Defendants' use of this unauthorized derivative copy of Plaintiff's photograph remains in the Publisher Defendants' sole possession, the full and complete scope of Defendants' infringing uses of the unauthorized derivative has not yet been ascertained.

43. Attached hereto as Exhibits 5-12 are true and correct copies of various publications and other documents showing that the Publisher Defendants published and displayed unlicensed copies of Plaintiff's photos or unauthorized derivatives of Plaintiff's copyrighted work.

44. Because information regarding the scope of Defendant's use of Plaintiff's *Penard* photograph remains in Defendant's sole possession, the full and complete scope of Defendant's infringing uses of Plaintiff's *Penard* work has not yet been ascertained.

## COUNT I
## COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS

45. Plaintiff repeats and re-alleges each allegation set forth in paragraphs above as if set forth fully herein.

46. Plaintiff is the sole and exclusive owner of the creative visual works identified herein and that are the subject of this action.

47. Plaintiff registered its copyrights in the images that are the subject of this action with the U.S. Copyright Office prior to filing this lawsuit and prior to the infringing acts described and alleged herein.

48. As alleged herein, Defendants used, published, distributed, displayed, sold, and otherwise exploited Plaintiff's copyrighted works without a license and without permission.

49. Upon information and belief, the Welsh Government never had permission or a license to use either the *Just Married* or *Penard* photos, particularly to promote tourism or in its advertising campaigns.

50. In the event that the Welsh Government contends that it did have permission or a license, Plaintiff alleges that Defendant exceeded the scope of any alleged license.

51. Regardless of whether the Welsh Government ever had any permission to use the photos—which Plaintiff contends it did not—Plaintiff's March 2012 correspondence provided sufficient notice to the Welsh Government that any purported license had been rescinded or revoked and that no additional uses of the photo were permitted.

52. By infringing Plaintiff's copyrights, Defendants misappropriated Plaintiff's intellectual property for their own profit, causing Plaintiff significant injuries, damages, and losses in amounts to be determined at trial.

53. Defendants' unauthorized uses of Plaintiff's copyrighted images were knowing and willful.

54. Plaintiff seeks all damages recoverable under the Copyright Act, including statutory or actual damages, including each Defendant's profits attributable to the infringing use of Plaintiff's creative works and the damages suffered as a result of the lack of compensation, credit, and attribution.

55. Plaintiff also seeks a declaration that the Welsh Government lacks a license to use Plaintiff's photos identified herein

56. Plaintiff also seeks a preliminary and permanent injunction against the Welsh Government precluding any ongoing or future use of Plaintiff's photos, or unauthorized derivative copies of Plaintiff's original works.

57. Plaintiff also seeks all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

## COUNT II
### CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST THE WELSH GOVERNMENT

58. Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

59. Without permission, the Welsh Government provided copies, distributed, or otherwise allowed access to Plaintiff's copyrighted works to numerous third parties, including the Publisher Defendants.

60. Through its actions, the Welsh Government materially contributed to, facilitated, induced, or otherwise is responsible for the directly infringing acts carried out by the other defendants and yet-to-be-ascertained third parties.

61. The Welsh Government exercised control over the content of its websites and publications and third party access to the content of those websites and publications, including copies of Plaintiff's works.

62. The Welsh Government had the ability to prevent the Publisher Defendants and other third parties from copying Plaintiff's photos or unauthorized derivative copies that were in the control and possession of the Welsh Government.

63. When the Publisher Defendants copied, displayed, published, or sold unauthorized copies of Plaintiff's photos to promote Wales tourism they were acting at the direction, behest, on behalf of, for, and/or under the control of the Welsh Government.

64. The Welsh Government obtained direct financial benefits from the infringements of the Publisher Defendants, including the promotion of its tourism business and goals.

65. By copying, distributing, displaying, publishing, and otherwise exploiting Plaintiff's copyrighted creative works, each of the defendants infringed Plaintiff's copyrights in the creative works identified herein and caused Plaintiffs significant injuries, damages, and losses in amounts to be determined at trial.

66. Plaintiff seeks all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendants' profits attributable to the infringements, and damages suffered as a result of the lack of compensation, credit, and attribution and from any diminution in the value of Plaintiff's copyrighted works. Plaintiff also seeks all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

**WHEREFORE,** Plaintiff respectfully prays for judgment on its behalf and for the following relief:

1. A preliminary and permanent injunction against Defendants precluding Defendants from copying, displaying, distributing, publishing, selling, or in any way using Plaintiff's works or any publications, advertisements, brochures, or other promotional materials that include unauthorized uses of Plaintiff's creative works, and requiring Defendants to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of Plaintiff's photographs and all copies of the infringing materials described in this complaint, that are in the control or possession or custody of Defendants;

2. All allowable damages under the Copyright Act, including but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiff's loss of licensing revenue, Defendants' lack of attribution, and Defendants' profits attributable to infringement;

3. Plaintiff's full costs, including litigation expenses, expert witness fees, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

4. Any other relief authorized by law, including punitive and/or exemplary damages; and

5. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**
Dated February 18, 2015
New York, New York.

Respectfully submitted,

NELSON & McCULLOCH LLP

By: _____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street, 3rd Floor
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
dnelson@nelsonmcculloch.com
kmcculloch@nelsonmcculloch.com

*Attorneys for Plaintiff*