# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PABLO STAR LTD., | Case No. 15-cv-1167 (JPO) |
| *Plaintiff*, | Hon. J. Paul Oetken |
| v. | ECF Case<br>Electronically Filed |
| THE WELSH GOVERNMENT; GRACENOTE (d/b/a TRIBUNE MEDIA SERVICE); PITTSBURGH POST-GAZETTE; E.W. SCRIPPS, CO.; COLORADO NEWS FEED; TRAVEL SQUIRE; RICHMOND TIMES DISPATCH; and MIAMI HERALD MEDIA CO., | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
Tel: (646) 704-4900
Fax: (646) 308-1178

*Attorneys for Plaintiff*

April 27, 2015

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................................................................................ 1

SUMMARY OF ARGUMENT ..................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

I.      APPLICABLE STANDARD OF REVIEW. ...................................................................... 3

II.     PLAINTIFF SATISFIES ALL REQUIREMENTS FOR
        GRANTING A PRELIMINARY INJUNCTION. .............................................................. 4

        A.      Plaintiff Will Prevail On The Merits Of Its
                Copyright Claims ................................................................................................... 4

        B.      Denial of Injunctive Relief Will Cause Plaintiff
                Irreparable Injury ................................................................................................... 7

                1.      The Strength of Plaintiff's Liability Claim Is
                        Dispositive. ................................................................................................. 8

                2.      Difficulties in Calculating Monetary
                        Damages Will Cause Irreparable Harm. ..................................................... 9

                3.      Harm to Plaintiff's "Exclusive Rights" To
                        Control The Photographs Is Irreparable................................................... 11

        C.      THE BALANCE OF HARDSHIPS FAVORS
                GRANTING PLAINTIFF'S MOTION ................................................................ 14

        D.      PUBLIC   INTEREST   CONSIDERATIONS
                FAVOR GRANTING PLAINTIFF'S MOTION .................................................. 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**

*Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789 (8th Cir. 2003) ............................................. 10

*Apple Computer, Inc., v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir. 1983) ................................................................................................................... 9, 14

*Cassidy v. Bowlin*, 540 F. Supp. 901 (W.D. Mo. 1982) .......................................................... 11, 12

*Designer Skin, LLC v. S & L Vitamins, Inc.*, No. 05-cv- 3699, 2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ............................................................................... 13

*eBay, Inc. v. MercExchange*, 547 U.S. 388 (2006) ...................................................................... 3, 4

*FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539 (E.D. Pa. 2005) .................................................................................................................................. 9

*Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932) ............................................................................. 12

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) ........................................................................................................................ 11

*Hamil Am., Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) ....................................................................... 5

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003) ........................................................ 4

*Kontes Glass Co. v. Lab Glass, Inc.*, 373 F.2d 319 (3d Cir. 1967) ................................................. 9

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002) ........................................................................... 10

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94 (2d Cir. 2002) ......................................................................................................... 11

*Microsoft Corp. v. Marturano*, No. 06-cv-1747, 2009 WL 1530040 (E.D. Cal. May 27, 2009) ........................................................................................................ 13

*Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125 (D.N.J. 1982) ................................................................................................................................ 9

*Mortgage Market Guide, LLC v. Freedman Report, LLC*, No. 06-cv-140-FLW, 2008 WL 2991570 (D.N.J. July 28, 2008) ...................................................... 12

*Nat'l Football League v. Primetime 24 Joint Venture*, No. 98 Civ. 3778, 1999 WL 760130 (S.D.N.Y. Sept. 27, 1999) ................................................................ 12

*New York City Triathlon LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....................................................................................... 13

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004) ............................................................. 4

*Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir. 1994) ..................................................5

*Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190
    (2d Cir. 1971) ..............................................................................................................11

*Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984) ......................................................5

*Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d
    329 (S.D.N.Y. 1998) ....................................................................................................13

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007) .............................................5

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir.
    2004) ............................................................................................................................10

*Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515
    (S.D.N.Y. May 13, 2011) ............................................................................................13

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ...................................................................5

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ............................................................................3

*Shapiro, Bernstein & Co. v. Remington Records, Inc.*, 265 F.2d
    263 (2d Cir. 1959) ........................................................................................................10

*Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77 (2d Cir. 2004) ............................................ 12, 14

*Warner Bros. Entertainment, Inc. v. RDR Books,* 575 F. Supp. 2d
    513 (S.D.N.Y. 2008) ....................................................................................................12

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009) ..............................................10

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ................................................3

**STATUTES**

17 U.S.C. § 106 ............................................................................................................................ 9, 11

17 U.S.C. § 408(a) ............................................................................................................................5

17 U.S.C. § 410(c) ............................................................................................................................5

17 U.S.C. § 502(a) ........................................................................................................................ 3, 5

**RULES**

Fed. R. Civ. P. 65 ..............................................................................................................................3

Plaintiff Pablo Star Ltd. ("Plaintiff"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of Plaintiff's Motion for Preliminary Injunction requesting that the Court restrain and enjoin Defendants The Welsh Government; Gracenote (d/b/a Tribune Media Service); the Pittsburgh Post-Gazette; E.W. Scripps, Co.; Colorado News Feed; Travel Squire; Richmond Times Dispatch; and Miami Herald Media Co. (together "Defendants")[1] from continuing to publish, display, distribute, and otherwise use Plaintiff's copyrighted photographs at issue in this action in advertisements, publications, and other promotional materials during the pendency of this action.

Plaintiff also requests that the Court order the impoundment (or quarantine) of any materials in Defendants' possession, custody, or control that include copies of the subject photos.

## FACTUAL BACKGROUND

Plaintiff is the owner of all American copyrights in and to the two photographs featuring the iconic poet Dylan Thomas that are the subject of this action. (Dkt. No. 1 ("Compl.") ¶¶ 2-4.). Plaintiff's copyrights have been registered with the U.S. Copyright Office and was issued certificates of registration for both photos. (*Id.* ¶ 7.) Copies of Plaintiff's certificates of copyright registration are provided as Exhibits 1 and 2 to the Declaration of Kevin McCulloch (hereinafter "McCulloch Decl.").

The Defendants used Plaintiff's copyrighted photos without a license or permission in a world-wide advertising campaign to promote tourism to Wales. More specifically, the Welsh Government provided unauthorized copies of Plaintiff's copyrighted works to the other Publisher Defendants, either directly or by making copies of the photos available on its various websites,

---

[1] Defendants Tribune Media Service ("Tribune"); E.W. Scripps, Co. ("Scripps"); the Colorado News Feed; the Pittsburgh Post-Gazette; the Richmond Times Dispatch; Travel Squire; and Miami Herald Media Co. ("Miami Herald") are collectively referred to hereinafter as the "Publisher Defendants."

1

as part of its advertising campaign and to promote tourism to Wales. (Compl. ¶ 15.) The Welsh Government also used unauthorized copies of Plaintiff's photos in advertisements, promotional materials, and other publications that it created, namely publications created by its "Visit Wales" administrative division whose sole purpose is to encourage tourism to Wales. (*Id.* ¶¶ 12-13.)

Many of these advertisements and promotional materials were expressly targeted to New York residents. (*E.g.*, *id.* ¶¶ 13, 15.)

## SUMMARY OF ARGUMENT

Plaintiff seeks a preliminary injunction, pursuant to Sections 502(a) of the Copyright Act and Rule 65(a) of the Federal Rules of Civil Procedure, and impoundment or quarantine of the infringing materials, under Section 503(a) of the Copyright Act, against the Defendants restraining and enjoining them from continuing to make unlicensed and infringing uses of Plaintiff's copyrighted works during the pendency of this action.

There is no serious dispute that Defendants lacked license or permission to use Plaintiff's photos for any reason and yet have continued to publish and exploit Plaintiff's photos to promote tourism to Wales. Plaintiff's success on the merits thus is assured. A preliminary injunction is necessary because assessing damages, particularly profits attributable to the infringing use of Plaintiff's works, will be difficult given the nature of the infringements which relate to use of the photos in promotional and advertising campaigns rather than in products with directly identifiable profits.

**ARGUMENT**

**I.     APPLICABLE STANDARD OF REVIEW.**

The Copyright Act provides that the Court may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Rule 65(a) of the Federal Rules of Civil Procedure also permits the Court to enter a preliminary injunction. Fed. R. Civ. P. 65(a). The Copyright Act also permits the Court to order "the impounding, on such terms as it may deem reasonable, of all copies . . . claimed to have been made or used in violation of the exclusive right of the copyright owner." 17 U.S.C. § 503(a)(1)(A). The Federal Rules also permit a copyright holder to seek injunctive relief as part of a request for impoundment of the infringing works. Fed. R. Civ. P. 65(f).

The Supreme Court has held that, in general, a "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted). Following the Supreme Court's decision in *eBay, Inc. v. MercExchange*, 547 U.S. 388 (2006), the Second Circuit has determined that this same four-prong analysis applies in the context of a copyright claimant seeking a preliminary injunction. *See Salinger v. Colting*, 607 F.3d 68, 77-80 (2d Cir. 2010).

Specifically, the Second Circuit explained the four-step inquiry as follows:

"First, . . . a court may issue a preliminary injunction in a copyright case only if the plaintiff has demonstrated either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor." *Id.*

Second, the court must determine whether the moving party has demonstrated that it "is likely to suffer irreparable injury in the absence of an injunction." *Id.* 79-80. In conducting this "irreparably injury" inquiry, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Id.* at 80 (quoting *eBay*, 547 U.S. at 391).

"Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Id.* (citations omitted).

Finally, "the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Id.* (quoting *eBay*, 547 U.S. at 391).

## II. PLAINTIFF SATISFIES ALL REQUIREMENTS FOR GRANTING A PRELIMINARY INJUNCTION.

### A. Plaintiff Will Prevail On The Merits Of Its Copyright Claims.

The first consideration in the preliminary injunction analysis is the probability of success on the merits. *See Salinger*, 607 F.3d at 79 (citing *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004)). To prevail on its claims for infringement, Plaintiff must show (i) "ownership of a valid copyright" and (ii) "unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). Plaintiff satisfies both elements.

As to the first element, Plaintiff owns the copyrights in these photos under a copyright purchase agreement dated August 25, 2011. (McCulloch Decl. Ex. 3.) Plaintiff also has registered its copyrights in both of the photos at issue in this action with the U.S. Copyright Office. (*Id.* Exs. 1 & 2.) These certificates of copyright registration provide *prima facie*

4

evidence of valid copyright in the subject photos.  *See* 17 U.S.C. § 410(c); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (infringer bears burden of rebutting presumption).

Even if Defendants could rebut the presumption of a valid registration, this is not a prerequisite to a request for injunctive relief.  *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010) ("[Section 411(a)] establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the Act's *remedial* provisions." (emphasis added)); *Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994) ("The power to grant injunctive relief is not limited to registered copyrights, or even to those copyrights which give rise to an infringement action."); *Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 & n.17 (11th Cir. 1984) ("The district court in this case had the power to issue such an injunction because the statute provides for injunctions to prevent infringement of '*a copyright*' (emphasis added), not necessarily the registered copyright that gave rise to the infringement action. . . . To refuse injunctive relief under these conditions would render meaningless the fact that registration is 'not a condition of copyright protection.'" (citation omitted)); *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007) ("[T]he Copyright Act gives courts broad authority to issue injunctive relief."). Nor would such a limitation be consistent with the Copyright Act which provides that the Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright," 17 U.S.C. § 502(a), and specifies that "registration is not a condition of copyright protection," *id.* at § 408(a).

As to the second element, there is no question that Defendants engaged in unauthorized copying of Plaintiff's photos.  Prior to this lawsuit, Plaintiff's counsel contacted the Welsh Government and its counsel to demand that the Welsh Government cease and desist using

5

Plaintiff's copyrighted photos. (*See* McCulloch Decl. Ex. 4 (exhibits not attached as they are redundant of the exhibits to the Complaint).) This letter set forth in detail the history of the Welsh Government's use of Plaintiff's works and demonstrates that the uses at issue here are unauthorized. Indeed, the Welsh Government acknowledged as much in March of 2012 and specifically agreed to stop displaying Plaintiff's photos on its website. This action arose from the Welsh Government's subsequent decision to begin reusing Plaintiff's photos despite its prior acknowledgement of Plaintiff's copyright notice and its agreeing to stop using the photos.

In an e-mail dated March 29, 2012, Plaintiff directly contacted the Visit Wales division of the Welsh Government to advise it that Plaintiff owned the copyrights in the subject "Just Married Dylan Thomas" photograph and to demand that Visit Wales stop using the photo without permission to promote Autumn holiday tours in Wales. (*See* Compl. ¶¶ 30-31; McCulloch Decl. Ex. 5.) Visit Wales acknowledged this copyright notice on March 30, 2012 and claimed that it would comply with our client's cease and desist demand, stating "**The image has been deleted from our system and will not be used again.**" (*Id.* (emphasis added).)

Despite acknowledging Plaintiff's copyright notice and stating that the photo "will not be used again," Visit Wales subsequently began reusing the photo in its recent advertising campaign. (*See* Compl. ¶¶ 32-34 & Compl. Exs. 1 & 2.) In addition, the Welsh Government also created an unauthorized derivative copy of Plaintiff's *Just Married* photo by photographing an old paper copy of the photo that was propped on the mantle of Dylan Thomas' Birthplace and family home and then subsequently cropped that photo to create the unauthorized derivative work (identifiable by the clear creases in the photo). (*See* Compl. ¶¶ 36-37; Compl. Ex. 3.)

The Welsh Government, through Visit Wales, has since begun using both copies of Plaintiff's photo and copies of this unauthorized derivative work in its recent promotional and

tourism campaigns, including by providing access to or copies of these works to the Publisher Defendants for publication. The Welsh Government also somehow acquired a copy of Plaintiff's copyrighted *Penard* photo and also has been using that photo as part of its advertising, tourism, and promotional campaign. The Complaint sets forth numerous screen captures documenting the Defendants' unlicensed and infringing uses of Plaintiffs' photos. (*See* Compl. Exs. 4-12.)

Although the Second Circuit has noted "the difficulty of predicting the merits of a copyright claim at a preliminary injunction hearing" in certain contexts, *Salinger*, 607 F.3d at 80, the Court faces no such difficulty in this case.

### B. Denial of Injunctive Relief Will Cause Plaintiff Irreparable Injury.

A copyright holder seeking a preliminary injunction must demonstrate "'that he is likely to suffer irreparable injury in the absence of an injunction.'" *Salinger*, 607 F.3d at 80 (quoting *Winter*, 555 U.S. at 20). In making this determination, the Court must "consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Id.* at 77 (quoting *eBay*, 547 U.S. at 391). "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Id.* at 81.

Plaintiff need not demonstrate irreparable injury with absolute certainty, but rather is required to demonstrate only "that irreparable injury is *likely* in the absence of an injunction[.]" *Winter*, 555 U.S. at 20 (emphasis in original, citations omitted).

For numerous reasons, Plaintiff will suffer irreparable injury if injunctive relief is denied and Defendants are permitted to continue to publish, display, distribute, and otherwise use

7

Plaintiff's copyrighted photographs in advertisements, publications, and other promotional materials.

### 1. The Strength of Plaintiff's Liability Claim Is Dispositive.

While copyright claimants no longer are entitled to a "presumption" of irreparable injury, courts have recognized that this historical practice had a strong logical basis because most infringement victims will suffer irreparable injury absent injunctive relief. In *eBay*, for instance, the Supreme Court cautioned courts against moving to the other extreme and presuming that a plaintiff has not suffered irreparable harm merely because monetary damages are available. 547 U.S. at 393-94 (criticizing categorical rule that a showing that plaintiff had been willing to license its patents "would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue"). In particular, Chief Justice Roberts noted in his concurrence in *eBay* that:

> From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases. This "long tradition of equity practice" is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies. . . . This historical practice, as the Court holds, does not *entitle* a patentee to [an] . . . injunction or justify a *general rule* that such injunctions should issue. . . . At the same time, there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate. . . . When it comes to discerning and applying those standards, in this area as others, a page of history is worth a volume of logic.

*Id.* at 395 (Roberts, C.J., concurring) (quotation marks omitted). The Second Circuit made the same point in *Salinger*, emphasizing that that it "may well be the case" that most copyright plaintiffs who have shown a likelihood of success on the merits would be irreparably harmed absent preliminary injunctive relief. *See* 607 F.3d at 82 (noting that "the historical tendency to issue preliminary injunctions readily in copyright cases may reflect [that irreparable injury usually occurs]" (citation omitted)). Therefore, although the Court cannot presume irreparable

8

harm, there is a strong basis—both historically and logically—for continuing to find that injunctive relief should be readily granted where there is a strong likelihood of the copyright holder prevailing on his claim of infringement.

Although this Court has not considered the issue directly, other courts have held that "there may exist an inverse relationship approach to the irreparable harm issue, requiring a balancing of the strength of the showing of irreparable injury as it varies inversely with the strength of plaintiff's showing of a likelihood of success on the merits." *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 574 (E.D. Pa. 2005) (citing *Kontes Glass Co. v. Lab Glass, Inc.*, 373 F.2d 319, 320-21 (3d Cir. 1967)); *Apple Computer, Inc., v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983); *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 141-42 (D.N.J. 1982).

Under this approach, the stronger the infringement case, the lower the irreparable injury bar. This "inverse relationship" analysis accommodates both of the Court of Appeals' concerns in *Salinger* and embraces the sentiments expressed by Chief Justice Roberts in *eBay*. This approach also reflects and comports with Congress' decision to vest copyright owners with "exclusive" control over the use of their creative works, *see* 17 U.S.C. § 106, because denying injunctive relief in the face of an admitted and ongoing infringement would eviscerate this protection.

In this case, the strength of Plaintiff's infringement claims is so certain that a finding of irreparable injury is a necessity.

    **2.**    <u>**Difficulties in Calculating Monetary Damages Will Cause Irreparable Harm.**</u>

Even if the Court does not apply this "inverse relationship" analysis, Plaintiff can readily demonstrate significant irreparable injury that warrants immediate injunctive relief. In

9

particular, Plaintiff will suffer irreparable harm due to difficulties in assessing damages and specifically profits that should be disgorged.

Courts broadly construe the term "profits" to include even indirect benefits that result from the infringements. Indeed, all courts agree that Section 504(b) "does not differentiate between 'direct profits'—those that are generated by selling an infringing product—and 'indirect profits'—revenue that has a more attenuated nexus to the infringement." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). The only requirement is that the plaintiff establish "the existence of a causal link" to financial benefits to establish that profits may be recovered. *Id. accord Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711-12 (9th Cir. 2004); *On Davis*, 246 F.3d at 160.

Under this standard, financial benefits that resulted from the tourism and publicity campaign are recoverable. In the *Polar Bear* case, for instance, the Ninth Circuit upheld the award of "indirect profits" to the copyright owner based on "circumstantial evidence" and expert testimony that "approximately 10% to 25% of trade show sales are the result of excitement created by the booth promotion[.]" *Id.* at 712. Courts around the country confronting this same question routinely apply this approach. *See, e.g., Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 798 (8th Cir. 2003) (awarding plaintiff 10% of all sales of Audi TT coupe during period when infringing commercial aired); *William A. Graham Co. v. Haughey*, 568 F.3d 425, 443 (3d Cir. 2009) (finding causal connection satisfied for all commissions earned from clients to which defendant provided infringing proposals).

That there will be a disgorgement here also follows from the guiding principle that any doubt as to the computation of costs or profits is to be resolved in favor of the copyright owner. *Shapiro, Bernstein & Co. v. Remington Records, Inc.*, 265 F.2d 263 (2d Cir. 1959). Thus, once

Plaintiff shows merely that there is a "nexus" between the infringements and financial benefits, "[a]ny doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985).

The difficulty in this case thus is not *whether* Plaintiff will be entitled to a disgorgement of direct and indirect profits, but how that amount is calculated. Because the use at issue in this case involves a broad publicity and tourism campaign – rather than the advertisement of a particular product as in the *Andreas* case – there will be significant disputes as to how the "profits" to Wales are calculated, *e.g.*, whether the "profits" should focus on only tax revenue generated from businesses that benefited from the increased tourism.

Even though damages from lost licensing revenue and "profits" can be monetized, the difficulty calculating such damages has been held to represent an irreparable harm. *See, e.g.*, *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96-97 (2d Cir. 2002) (holding potential lost sales due to market confusion are "irreparable harm" even though there was monetary remedy available); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) (finding irreparable harm because, "[w]hile an injured plaintiff would be entitled to recover the profits on the infringing items, this is often difficult to determine"); *Cassidy v. Bowlin*, 540 F. Supp. 901, 904 (W.D. Mo. 1982) (finding clear threat of irreparable harm in part because "[i]t may be impossible for [plaintiff] to gather sufficient proof of the precise measure of his damages since it may be impossible to ascertain to what extent the public has come to associate the plaintiff's name with the inferior works").

### 3. **Harm to Plaintiff's "Exclusive Rights" To Control The Photographs Is Irreparable.**

Copyrights are primarily property interests over which Congress has granted "*exclusive*" control to the copyright owner. *See* 17 U.S.C. § 106 (emphasis added); *Fox Film Corp. v. Doyal*,

11

286 U.S. 123, 127 (1932) (holding that a copyright holder also possesses "the right to exclude others from using his property"); *Warner Bros. Entm't, Inc. v. RDR Books,* 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) ("If an injunction is not issued, Defendant is likely to continue infringing Plaintiffs' copyright in the future."); *Cassidy*, 540 F. Supp. 901 at 904 ("The irreparable harm to plaintiff is clear. The copyright infringements have automatically divested him of the exclusive control over his unique intellectual property. [Plaintiff]'s business reputation and goodwill have been placed in jeopardy because he has been unable to exercise control over the quality of his copyrighted work.").

Defendants' unauthorized use of Plaintiff's copyrights infringes this exclusive right to control the use of the creative works; and it is this ongoing lack of control that constitutes irreparable harm. *See Mortgage Market Guide, LLC v. Freedman Report, LLC*, No. 06-cv-140-FLW, 2008 WL 2991570, at *43 (D.N.J. July 28, 2008) (holding plaintiff showed "irreparable harm" warranting injunctive relief "because [the plaintiff's] valid copyright . . . will be eviscerated by the [defendant's] continued use of its copyrighted work").

A denial of injunctive relief under these circumstances would negate the statutory grant of exclusive rights to Plaintiff as the copyright holder under Section 106 and make a mockery of the protections afforded under the Copyright Act. *See, e.g.*, *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) ("In the copyright realm, it has been said that an injunction should be granted if denial would amount to a forced license to use the creative work of another."); *Nat'l Football League v. Primetime 24 Joint Venture*, No. 98 Civ. 3778, 1999 WL 760130, at *4 (S.D.N.Y. Sept. 27, 1999) (recognizing that "the failure to issue a final injunction" would "be tantamount to the creation of a compulsory license, future damages then becoming a sort of royalty," which "is not, absent compelling reason, a desirable practice or consistent with the

objectives of the Copyright Act." (citations omitted)); *Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329, 338 (S.D.N.Y. 1998) (recognizing denial of injunction would render the "copyright holder an involuntary licensor of the copyright to any entity that could be relied on to pay damages"). Denying Plaintiff's request for injunctive relief would create a mandatory licensing scenario contrary to the statutory rights recognized in Section 106.

Even after *eBay*, numerous courts have found irreparable harm where "there is continued threat that [the] Defendant will continue to engage in this unlawful conduct [and thus the] Plaintiff's injury cannot be remedied by monetary compensation alone." *Microsoft Corp. v. Marturano*, No. 06-cv-1747, 2009 WL 1530040, *8 (E.D. Cal. May 27, 2009); *accord Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540-41 (S.D.N.Y. May 13, 2011) (finding, post-*eBay*, that loss of control over trademark constitutes irreparable injury) (quoting *New York City Triathlon LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'").

As another district court reasoned: "Failing to issue an injunction under the circumstances of this case would be tantamount to forcing [the plaintiff] to license its copyrighted images . . . thus rendering its right to exclude others from using its images illusory. [The plaintiff] has established irreparable harm." *Designer Skin, LLC v. S & L Vitamins, Inc.*, No. 05-cv- 3699, 2008 WL 4174882, at *4-5 (D. Ariz. Sept. 5, 2008).

The loss of control in this case is egregious; Defendants have made unauthorized of the photos in questions without seeking or obtaining any license whatsoever. Such wanton, intentional, and ongoing infringements certainly are causing irreparable harm to Plaintiff's rights

13

under Section 106 and thus must be enjoined. Defendants should not be allowed to steal and pillage Plaintiff's creative works.

### C.      The Balance of Hardships Favors Granting Plaintiff's Motion.

In considering whether to issue an injunction "a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger*, 607 F.3d at 80 (quoting *Winter*, 555 U.S. at 20). The hardships to Plaintiff already have been enumerated here. Among other considerations, the Court must evaluate that allowing Defendants to continue using Plaintiff's works will cause (1) the loss of licensing revenue, which may never be adequately calculated and the loss of exclusive control over the works and (2) loss of control over the "exclusive rights" guaranteed to Plaintiff under the Copyright Act.

Against these unquestioned hardships, Defendants cannot offer any serious burden or demonstrate any irreparable harm.

### D.      Public Interest Considerations Favor Granting Plaintiff's Motion.

"Finally, the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (quoting *eBay*, 547 U.S. at 391). In defining the contours of this question, the Second Circuit has made clear that the public interest should stop an injunction from issuing only "where great public injury would be worked by an injunction." *Silverstein*, 368 F.3d at 84 (quoting 4 *Nimmer on Copyright* § 14.06).

The public interest clearly favors granting this motion as it is fundamentally unjust to permit Defendants to continue to reap profits from its infringing use of Plaintiff's copyrighted works, while Plaintiff is forced to expend significant resources to enforce its rights. *See, e.g.*, *Apple Computer*, 714 F.2d at 1254-55 ("Since Congress has elected to grant certain exclusive

rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."). Moreover, while many of the Defendants in this case published the infringing copies of Plaintiff's works in newspapers, those articles do not represent editorial stories related to important or historical events. Instead, most of the stories in question are "puff" pieces related to the tourism campaign being promoted by the Welsh Government.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court GRANT Plaintiff's Motion for Preliminary Injunction.

Dated: April 27, 2015

                                                 Respectfully submitted,

                                                 NELSON & McCULLOCH LLP

_____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178

*Attorneys for Plaintiff*