**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PABLO STAR LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 15-CV-1167 |
| THE WELSH GOVERNMENT; GRACENOTE (d/b/a TRIBUNE MEDIA SERVICE); PITTSBURGH POST-GAZETTE; E.W. SCRIPPS, CO.; COLORADO NEWS FEED; TRAVEL SQUIRE; RICHMOND TIMES DISPATCH; and MIAMI HERALD MEDIA CO., | |
| Defendants. | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Of Counsel:

Kevin M. Bell
Caroline C. Maxwell
PORZIO, BROMBERG & NEWMAN P.C.
1200 New Hampshire Ave. NW
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)

Richard J. Oparil (RO9269)
PORZIO, BROMBERG & NEWMAN P.C.
1200 New Hampshire Ave. NW
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)

Attorneys for Defendants
Welsh Government, Gracenote (d/b/a
Tribune Media Service), Pittsburgh Post-
Gazette, E.W. Scripps Co., Richmond Times
Dispatch, and Miami Herald Media Co.

Dated: April 27, 2015

3053142

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................4

I.  THE CLAIMS AGAINST THE WELSH GOVERNMENT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS ON A POLITICAL SUBDIVISION OF THE UNITED KINGDOM. ..........................................4

II.  THE SUIT AGAINST THE WELSH GOVERNMENT SHOULD BE DISMISSED FOR IMPROPER VENUE. ............................................................8

III.  THE WELSH GOVERNMENT IS IMMUNE FROM SUIT UNDER THE FSIA. ...........9

IV.  THE COURT LACKS PERSONAL JURISDICTION OVER THE MIAMI HERALD, RICHMOND TIMES-DISPATCH, SCRIPPS (TREASURE COAST) AND PITTSBURGH POST-GAZETTE AND VENUE IS IMPROPER. ........................11

V.  PABLO STAR DOES NOT HAVE STANDING TO SUE THE DEFENDANTS. .........20

CONCLUSION......................................................................................................................25

3053142

## TABLE OF AUTHORITIES

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
   944 F.2d 971 (2d Cir. 1991).........................................................................................22

*Accurate Grading Quality Assurance, Inc. v. Khothari*,
   2014 WL 507356 (S.D.N.Y. Sept. 30, 2014).................................................................12

*AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*,
   326 F. Supp. 2d 525 (S.D.N.Y. 2004)...........................................................................20

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003)..........................................................................................10

*Aqua Prods. Inc. v. Smartpool, Inc.*,
   2005 WL 1994013 (S.D.N.Y. Aug. 18, 2005)...........................................................15, 16

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989).........................................................................................................9

*Audio Enterprises, Inc. v. B&W Loudspeakers of Am.*,
   957 F.2d 406 (7th Cir. 1992) ...........................................................................................7

*Avelar v. J. Cotois Constr., Inc.*,
   2011 WL 5245206 (E.D.N.Y. Nov. 2, 2011)................................................................5, 6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002)..........................................................................................12

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*,
   533 F.3d 1183 (10th Cir. 2008) .......................................................................................5

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
   991 F.2d 1012 (2d Cir. 1993).........................................................................................10

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
   2015 WL 539460 (S.D.N.Y. Feb. 6, 2015)....................................................................13

*Chettri v. Nepal Bangladesh Bank, Ltd.*,
   2014 WL 4354668 (S.D.N.Y. Sept. 2, 2014)........................................................ *passim*

*Childs v. Gov't of Canada*,
   2010 WL 1981066 (E.D. Mich. Apr. 23, 2010).............................................................5

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000)........................................................16, 17

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)........................................................................12, 13

*Decesare v. McClatchy Co.*,
  No. 13-cv-4429 (E.D. Pa. Apr. 8, 2014)...............................................13, 16

*DH Servs., LLC v. Positive Impact, Inc.*,
  2014 WL 496875 (S.D.N.Y. Feb. 5, 2014)......................................11, 18, 19

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
  697 F.2d 27 (2d Cir. 1982)......................................................................21

*Erickson Prods., Inc. v. Atherton Trust*,
  2013 WL 1163346 (S.D.N.Y. Mar. 20, 2013) .......................................12, 15, 16

*Ermini v. Vittori*,
  758 F.3d 153 (2d Cir. 2014)......................................................................22

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)...............................................................................21

*Filetech S.A. v. France Telecom S.A.*,
  157 F.3d 922 (2d Cir. 1998)......................................................................11

*Fly Brazil Group, Inc. v. Gov't of Gabon*,
  709 F. Supp. 2d 1274 (S.D. Fla. Jan. 29, 2010).........................................6, 7

*Freund v. Republic of France*,
  592 F. Supp. 2d 540 (S.D.N.Y. 2008)........................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011)............................................................................13

*Gucci America, Inc. v. Li*,
  768 F.3d 122 (2d Cir. 2014)......................................................................13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)...............................................................................15

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
  763 F.2d 55 (2d Cir. 1985)......................................................................13

*ISI Brands, Inc. v. KCC Int'l, Inc.*,
  458 F. Supp. 2d 81 (E.D.N.Y. 2006) .........................................................16

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998)............................................................................11, 12

*Johnson v. United Kingdom*,
   608 F. Supp. 2d 291 (D. Conn. 2009).........................................................9, 10, 11

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*,
   536 U.S. 88 (2002).......................................................................................................5

*Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.*,
   668 F.2d 699 (2d Cir. 1982)....................................................................................21

*Land v. Dollar*,
   330 U.S. 731 (1947)..................................................................................................21

*Lewis & Kennedy, Inc. v. Permanent Mission of the Rep. of Botswanna to the
   United Nations*,
   2005 WL 1621342 (S.D.N.Y. July 12, 2005) ...................................................6, 7, 8

*McNutt v. Gen. Motors Acceptance Corp.*,
   298 U.S. 178 (1936)..................................................................................................20

*MOL, Inc. v. People's Republic of Bangladesh*,
   736 F.2d 1326 (9th Cir. 1984) ...............................................................................10

*Ocasek v. Flintkote Co.*,
   796 F. Supp. 362 (N.D. Ill. 1992) .............................................................................5

*Penguin Group (USA) Inc. v. American Buddha*,
   16 N.Y.3d 295, 921 N.Y.S.2d 171, 946 N.E.2d 159 (2011)...................................19

*Penguin Group (USA) Inc. v. American Buddha*,
   640 F.3d 497 (2d Cir. 2011).....................................................................................19

*PG Pub. Co. v. Aichele*,
   705 F.3d 91 (3d Cir. 2013)..........................................................................................1

*Phoenix Consulting, Inc. v. Republic of Angola*,
   216 F.3d 36 (D.C. Cir. 2000) ...................................................................................10

*Prince v. Poulos*,
   876 F.2d 30 (5th Cir. 1989) .......................................................................................7

*Richardson v. Attorney General of the British Virgin Islands*,
   2010 WL 2949438 (D.V.I. July 23, 2010)..................................................................5

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo*,
   971 F.2d 244 (9th Cir. 1992) ...................................................................................22

*Roth v. Pritikin*,
   710 F. 2d 934 (2d Cir. 1983)..................................................................................21

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000).....................................................................................22

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993).............................................................................................10

*Schultz v. Safra Nat'l Bank of New York*,
   377 F. App'x 101 (2d Cir. 2010) ..........................................................................12

*Semi Conductor Materials, Inc. v. Agriculture Inputs Corp.*,
   No. 96-cv-7902, 1998 WL 388503 (S.D.N.Y. June 23, 1998) ............................7, 8

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991)..................................................................................20

*Skrodzki v. Marcello*,
   810 F. Supp. 2d 501 (E.D.N.Y. 2011) ..................................................................13

*Smith v. Gnassingbe*,
   2009 WL 300037 (D. Minn. Oct. 13, 2009) ......................................................5, 6, 7

*Soeken v. Herman*,
   35 F. Supp. 2d 99 (D.D.C. 1999) ..........................................................................20

*Southern New England Tel. Co. v. Global NAPS Inc.*,
   624 F.3d 123 (2d Cir. 2010).................................................................................11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................................20

*Swarna v. Al–Awadi*,
   622 F.3d 123 (2d Cir. 2010).................................................................................10

*Tannenbaum v. Rabin*,
   1996 WL 75283 (E.D.N.Y. Feb. 13, 1996).....................................................5, 9, 11

*United States v. Hays*,
   515 U.S. 737 (1995).............................................................................................20

*Valley Forge Christian College v. Americans United for Separation of Church
   and State, Inc.*,
   454 U.S. 464 (1982).............................................................................................20

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
   917 F.2d 1574 (Fed. Cir. 1990)............................................................................19

- vi -

*Verlinden B.V. v. Central Bank of Nigeria*,
   461 U.S. 480 (1983) ..........................................................................................................10

*Vianix Delaware LLC v. Nuance Communications, Inc.*,
   2009 WL 1364346 (D. Del. May 12, 2009) ......................................................................20, 21

*Virtual Countries, Inc. v. Republic of S. Africa*,
   300 F.3d 230 (2d Cir. 2002) ..............................................................................................10

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001) ..............................................................................................11

*Zhang v. Baidu.com, Inc.*,
   932 F. Supp. 2d 561 (S.D.N.Y. 2013) ............................................................................4, 5

*Zibiz Corp. v. FCN Tech. Solutions*,
   777 F. Supp. 2d 408 (E.D.N.Y. 2011) ............................................................................16

**Statutes**

17 U.S.C. § 101 ....................................................................................................................21, 22

17 U.S.C. § 201(d) ....................................................................................................................22

17 U.S.C. § 501(a) ....................................................................................................................21

17 U.S.C. § 501(b) ....................................................................................................................21

28 U.S.C. § 1391(b) ..................................................................................................................8

28 U.S.C. § 1391(c) ..............................................................................................................19, 20

28 U.S.C. § 1391(f) ..................................................................................................................9

28 U.S.C. § 1400 ......................................................................................................................20

28 U.S.C. § 1400(a) ..............................................................................................................8, 19

28 U.S.C. § 1603(a) ..............................................................................................................9, 10

28 U.S.C. § 1604 ......................................................................................................................10

28 U.S.C. § 1608 ......................................................................................................................4

28 U.S.C. § 1608(a) ..............................................................................................................6, 7

28 U.S.C. § 1608(a)(3) ..........................................................................................................6

28 U.S.C. § 1608(c)(2) ..........................................................................................................8

Copyright Act of 1909, 35 Stat. 1075 ...................................................................11, 21

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330- 1332, 1391, 1441, 1602-
    11 (1982) ................................................................................................... *passim*

U.K. Crown Proceedings Act 1947 (available at
    http://www.legislation.gov.uk/ukpga/Geo6/10-11/44?view=plain) ..........................6

U.K. Government of Wales Act 2006 (available at
    http://www.legislation.gov.uk/ukpga/2006/32/contents).........................................2

**Rules**

CPLR § 301 ................................................................................................................12

CPLR § 302 ................................................................................................................12

CPLR § 302(a) ...........................................................................................................15

CPLR § 302(a)(1) ...........................................................................................15, 16, 17

CPLR § 302(a)(2) ................................................................................................17, 18

CPLR § 302(a)(3) .....................................................................................................18

CPLR § 302(a)(3)(i) ..................................................................................................18

CPLR § 302(a)(3)(ii) ...........................................................................................18, 19

CPLR § 302(a)(4) .....................................................................................................19

Fed. R. Civ. P. 4(f)(2) .................................................................................................8

Fed. R. Civ. P. 4(f)(2)(C)(ii) .......................................................................................8

Fed. R. Civ. P. 4(j) ..................................................................................................4, 8

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 20, 21

Fed. R. Civ. P. 12(b)(2)........................................................................................1, 11

Fed. R. Civ. P. 12(b)(3)....................................................................................1, 8, 19

Fed. R. Civ. P. 12(b)(5)........................................................................................1, 4

Fed. R. Civ. P. § 12(b)(6)............................................................................................1

Fed. R. Evid. § 201 ....................................................................................................22

**Regulations**

21 C.F.R. § 93.2 ........................................................................................................7

**Constitutional Provisions**

U.S. Constitution, Article III ..................................................................................20

**Other Authorities**

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604 ...........................................7

WEBSTER'S NEW COLLEGIATE DICTIONARY (1973) ........................................................8

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1987) ............................................8

3053142

## INTRODUCTION

Defendants Welsh Government (appearing specially to contest jurisdiction and assert immunity), Gracenote (d/b/a Tribune Media Service), the Pittsburgh Post-Gazette, E.W. Scripps, Co. ("Scripps" or "Treasure Coast  Newspapers"), Richmond Times-Dispatch, and Miami Herald Media Co. ("Miami Herald") (collectively "Defendants") move to dismiss the complaint filed by plaintiff Pablo Star Ltd. ("Pablo Star"). The complaint should be dismissed for six reasons: (1) Pablo Star sued the wrong defendants[1]; (2) its method attempted service of process on the Welsh Government, a political subdivision of the United Kingdom, violates the Foreign Sovereign Immunities Act ("FSIA") and is improper under Fed. R. Civ. P. 12(b)(5); (3) venue as to that Government is improper under the FSIA and Fed. R. Civ. P. 12(b)(3); (4) the Government is immune from suit under the FSIA and the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); (5) the Court lacks personal jurisdiction and venue over the Miami Herald, Richmond-Times Dispatch, Treasure Coast Newspapers, and Pittsburgh Post-Gazette under Fed. R. Civ. P. 12(b)(2), (3); and (6) Pablo Star does not have standing to sue for copyright infringement and the Court lacks subject matter jurisdiction.

---

[1] Pablo Star's lack of an adequate pre-suit investigation is reflected in the fact that it sued the wrong defendants. The Pittsburgh Post-Gazette is owned by PG Publishing Co. *See PG Pub. Co. v. Aichele*, 705 F.3d 91 (3d Cir. 2013). The complaint names Scripps as a defendant because it allegedly owned and operated the TCPalm.com website (¶ 3). Prior to April 1, 2015, Scripps owned Treasure Coast Newspapers in Stuart, Florida. On April 1, Treasure Coast Newspapers merged into the Journal Media Group, Inc., a Wisconsin corporation with an office in Florida. Decl. of Mark A. Tomasik, attached as Ex. 1, ¶¶ 3-5 ("Tomasik Decl."). The Richmond Times-Dispatch, a Virginia newspaper, is not a separate legal entity, but is owned by BH Media Group Holdings, Inc. Decl. of Thomas A. Silvestri, attached as Ex. 2, ¶¶ 3-4 ("Silvestri Decl."). In February 2014, Gracenote, Inc. became a subsidiary of the Tribune Co. (http://www.gracenote.com/press/2/03/2014). Pablo Star thus failed to state a claim against the Pittsburgh Post-Gazette, Scripps, and the Richmond Times-Dispatch under Fed. R. 12(b)(6).

The complaint also names as defendants Travel Squire and Colorado News Feed. The undersigned does not represent these defendants and they are not parties to the motion to dismiss.

## BACKGROUND

This copyright infringement case relates to two photographs featuring the poet Dylan Thomas, "Just Married" and "Penard." Complaint ¶¶ 3-4. Both photographs were originally created and any copyright owned by photographer Vernon Watkins. *Id.* ¶ 5.

Pablo Star is a company registered under the laws of Ireland and the United Kingdom. *Id.* ¶ 1. It is not registered to do business in New York. Decl. of Richard J. Oparil, attached as Ex. 3 ¶ 3 ("Oparil Decl.") & Ex. 4. Pablo Star alleges that as of August 25, 2011, it acquired all rights, title, and interest in the photographs, including all copyrights, by written agreement. Complaint ¶¶ 6. The company had been dissolved and then revived by a U.K. Court. Oparil Decl. ¶¶ 5, 8-10 & Exs. 5, 7.  The complaint repeatedly states that Pablo Star "owns all American copyrights" and is the "sole and exclusive owner" of the copyrights to the two photographs. Complaint ¶¶ 3, 4, 8, 46. It allegedly registered its copyrights in both Just Married and Penard with the U.S. Copyright Office and was issued certificates of registration for both works. *Id.* ¶¶ 7, 47 As explained below, based on documents that the Court should judicially notice, Pablo Star does not own the copyrights. In May 2014, it assigned the copyrights to a third-party, Pablo Star Media Ltd. ("Pablo Media") and Pablo Media later filed cases in an Ireland court that asserted its ownership rights. *See* Oparil Decl. ¶ 11; Exs. 8-10.

The complaint admits in ¶ 12 that the Welsh Government is the "devolved Government of Wales." In the United Kingdom, devolution refers to the statutory granting of certain limited powers from the Parliament and Government of the United Kingdom to the National Assembly for Wales and to the executive body, the Welsh Government. Legislation creating devolved governments and legislatures can be repealed or amended by the U.K. Parliament in the same way as any statute. *See* U.K. Government of Wales Act 2006 (available at

http://www.legislation.gov.uk/ukpga/2006/32/contents). A report of the Commission on Devolution in Wales explained that:

> Within the United Kingdom, the UK Parliament is sovereign and because of this the National Assembly (like the Scottish Parliament and Northern Ireland Assembly) is a subordinate body. This means that the UK Parliament can legislate on any area it wishes, whether it is devolved or not. However, a convention has arisen whereby the UK Parliament seeks the consent of the National Assembly before legislating in a devolved area. The UK Parliament does not have to abide by any decision of the National Assembly not to give consent, but can legislate regardless.
>
> The legislation that created the National Assembly and Welsh Government (and all other devolved administrations), like all other legislation, can be repealed or amended by the UK Parliament.

Ex. 11 ¶ 2.2.21-.22 (Mar. 2014); *see also* Ex. 12.

The complaint conclusory alleges that Gracenote, Scripps, Pittsburgh Post-Gazette, Richmond Times-Dispatch and Miami Herald (collectively "Publisher Defendants") "conduct substantial ongoing business in New York, including providing ongoing goods and services primarily in the form of news, entertainment, and other publications, including but not limited to online publications, to numerous residents of the State of New York and this District." Complaint ¶¶ 16-17. Three of the Publisher Defendants have an online presence that provides news, weather, and entertainment stories to visitors. *Id.* ¶¶ 23-25.

The complaint asserts that the Welsh Government allegedly published, displayed, distributed, and otherwise used unauthorized copies of Pablo Star's copyrighted photographs in advertisements, publications, and other promotional materials to promote tourism. *Id.* ¶¶ 11-13, 33, 34, & Exs. 1-2. The Welsh Government allegedly provided unauthorized copies of the Just Married photograph to the other Defendants for purposes of promoting tourism in Wales. *Id.* ¶ 15. Pablo Star asserts, on information and belief, that the Publisher Defendants obtained unauthorized copies from the Welsh Government (or one of its administrative divisions or

websites) and then published and displayed them on their websites. The Government also allegedly created or acquired an unauthorized derivative copy of Pablo Stars Just Married photo that it subsequently displayed, published, sold, and otherwise used. *Id.* ¶¶ 36-39 & Exs. 3-4. The Welsh Government allegedly provided this unauthorized derivative copy of the Just Married photograph to the Publisher Defendants to use to promote Wales tourism and the Visit Wales campaign in the United States. *Id.* ¶ 40. Exhibits 5-12 of the Complaint are alleged copies of documents showing that the Publisher Defendants published and displayed copies of Pablo Star's photos or derivatives. *Id.* ¶ 43.[2]

Count I of the Complaint alleges copyright infringement against all of the defendants. Count II alleges a claim for contributory and vicarious copyright infringement against the Welsh Government. Pablo Star seeks injunctive relief and an award for damages.

**ARGUMENT**

## I.   THE CLAIMS AGAINST THE WELSH GOVERNMENT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS ON A POLITICAL SUBDIVISION OF THE UNITED KINGDOM.

Pablo Star purported to serve the Welsh Government by Federal Express. Dkt. No. 3. That is not good service and the complaint should be dismissed under Fed. R. Civ. P. 12(b)(5) for insufficient service of process. As the plaintiff, Pablo Star bears the burden of proving proper service. *See, e.g.*, *Zhang v. Baidu.com, Inc.*, 932 F. Supp. 2d 561, 564 (S.D.N.Y. 2013).

"A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j). "The exclusive method for service of

---

[2] The Complaint further alleges the Welsh Government used the Penard photograph. *Id*. ¶¶ 41, 44. There is no allegation that the Publisher Defendants used that photograph.

process upon a foreign state or its political subdivision is prescribed by 28 U.S.C. § 1608(a)…."[3]

As discussed above, there is no doubt that the Welsh Government is a political subdivision of the

United Kingdom.[4]

The service provisions of FSIA provide that:

Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1)      by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2)      if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3)      if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of *mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned*, or

(4)      if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services – and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state

---

[3] *Tannenbaum v. Rabin*, No. 95- CV-4357, 1996 WL 75283, *6 (E.D.N.Y. Feb. 13, 1996); *see also Chettri v. Nepal Bangladesh Bank, Ltd.*, No. 10-CV-8470, 2014 WL 4354668, *5 (S.D.N.Y. Sept. 2, 2014); *Zhang*, 932 F. Supp. 2d at 564; *Avelar v. J. Cotois Constr., Inc.*, 2011 WL 5245206, *3 (E.D.N.Y. Nov. 2, 2011); *Childs v. Gov't of Canada*, 2010 WL 1981066 (E.D. Mich. Apr. 23, 2010); *Smith v. Gnassingbe*, 2009 WL 300037, *1 (D. Minn. Oct. 13, 2009).

[4] *See, e.g.*, *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88 (2002) (British Virgin Islands are an overseas territory of the United Kingdom); *Richardson v. Attorney General of the British Virgin Islands*, 2010 WL 2949438, *1 (D.V.I. July 23, 2010) (accord); *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1189 (10th Cir. 2008) (Sichuan Province and Qingyang District are political subdivisions of the People's Republic of China); *Ocasek v. Flintkote Co.*, 796 F. Supp. 362, 365 (N.D. Ill. 1992) ("There is no question that the Province of Quebec is a political subdivision of the foreign state of Canada.").

and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a) (emphasis added).

The four methods of service are listed in descending order of preference – meaning that a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on. *Smith*, 2009 WL 300037, *1. Strict adherence to the to the requirements is required.[5] Consequently, whether or not a defendant received actual notice of the case is irrelevant. *See, e.g.*, *Chettri*, 2014 WL 4354668, *8.

Pablo Star did not attempt to effectuate service by using the first, second or fourth methods or show they were unavailable. Pablo Star will be forced to argue that it made mail service under the third method. However, it did not comply with the statutory requirements of § 1608(a)(3). It did not send a copy of the summons and complaint and a notice of suit by mail requiring a signed receipt addressed and sent by the Court Clerk to the head of the United Kingdom's ministry of foreign affairs. Instead, an employee of Pablo Star's law firm used Federal Express to courier the summons and complaint to the Welsh Government's Director of Legal Services. Dkt. Nos. 3, 3-1. That attempted method of alleged service violates every requirement of § 1608(a)(3).[6]

---

[5] *See, e.g.*, *Avelar*, 2011 WL 5245206, *3; *Fly Brazil Group, Inc. v. Gov't of Gabon*, 709 F. Supp. 2d 1274, 1280, 1282 (S.D. Fla. Jan. 29, 2010) (a plaintiff must "comply strictly with the requirements of 28 U.S.C. § 1608(a)"; "strict adherence" is necessary); *Lewis & Kennedy, Inc. v. Permanent Mission of the Rep. of Botswanna to the United Nations*, No. 05-CV-2591, 2005 WL 1621342, *3 (S.D.N.Y. July 12, 2005) (§ 1608(a) requires strict, not substantial, compliance, and "defective service is rarely, if ever, excused.").

[6] The return of service states that it served the Welsh Government pursuant to the method of service prescribed in the "Wales' Crown Proceedings Act 1947" (Dkt. No. 3). However, there is no such statute. Oparil Decl. ¶ 13. There is a U.K. Crown Proceedings Act 1947 (available at http://www.legislation.gov.uk/ukpga/Geo6/10-11/44?view=plain). But in any event, Pablo Star was required to serve the Government by the methods set forth in the FSIA.

First, no notice of suit was sent along with the summons and complaint. Section 1608(a) defines "notice of suit" to "mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation." The Secretary of State promulgated such regulations, which require, among other things, that a copy of the FSIA be part of the notice. 21 C.F.R. § 93.2. The failure to provide the required notice is fatal to a claim of valid service under the FSIA. *See, e.g.*, *Lewis & Kennedy*, 2005 WL 1621342, *5; *Fly Brazil Group*, 709 F. Supp. 2d at 1281-82.[7]

Second, Pablo Star's counsel addressed and dispatched the Federal Express package, not the Clerk of this Court, which violates the FSIA:

> By the plain words of the statute, the clerk's action of addressing alone does not suffice; the clerk must also dispatch the package to the head of the ministry of foreign affairs. "Dispatch" means "to send off or away; -- particularly applied to sending off messengers, messages, letters, etc., on special business, and implying haste." http://www.dictionary.net/dispatch (citing Webster). In other words, the statute charges the clerk with the physical action of sending the service package to the head of the ministry of foreign affairs.

*Fly Brazil Group*, 709 F. Supp. 2d at 1283 (granting motion to quash service based on a party's involvement in the actual dispatch of the service package).[8]

Third, service by Federal Express is not service by *mail*. *See Audio Enterprises, Inc. v. B&W Loudspeakers of Am.*, 957 F.2d 406, 409 (7th Cir. 1992); *Prince v. Poulos*, 876 F.2d 30, 32 n.1 (5th Cir. 1989). "Mail" means letters "conveyed under public authority." *Prince*, 876 F.2d at

---

[7] The FSIA's legislative history emphasized the importance of the notice requirement. "A `notice of suit' . . . would advise a foreign state of the legal proceeding, it would explain the legal significance of the summons, complaint and service, and it would indicate what steps are available under or required by U.S. law in order to defend the action. In short, it would provide an introductory explanation to a foreign state that may be unfamiliar with U.S. law or procedures." H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6623.

[8] *See also Chettri*, 2014 WL 4354668, *7 (plaintiffs did not the Clerk of the Court to mail the summons and complaint to the country's foreign minister); *Smith*, 2009 WL 300037, *2 (Clerk must address and dispatch summons, complaint and notice of suit); *Semi Conductor Materials, Inc. v. Agriculture Inputs Corp.*, No. 96-cv-7902, 1998 WL 388503, *7 (S.D.N.Y. June 23, 1998) (mail service by the Clerk required).

32 n.1 (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY (1973)); *see also* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY at 717 (1987). "Since Federal Express is not a public authority, they are not a form of 'mail'…." *Id*. Accordingly, delivering a package by Federal Express was not proper mail service under the FSIA.[9]

Finally, Pablo Star sent the summons and complaint to an official of the Welsh Government, not to the United Kingdom's foreign ministry. The foreign minister is the *only* person eligible to receive service. *See, e.g*., *Chettri*, 2014 WL 4354668, *7; *Lewis & Kennedy*, 2005 WL 1621342, *4. The Government's Director of Legal Services is not foreign minister.

Thus, delivery of a Federal Express package to the Welsh Government's that omitted a notice of suit and that was sent directly by Pablo Star to the Welsh Government's Director of Legal Services did not comply with Rule 4(j) and FSIA's service requirements.[10] The case against the Government should be dismissed.

## II.     THE SUIT AGAINST THE WELSH GOVERNMENT SHOULD BE DISMISSED FOR IMPROPER VENUE.

Pablo Star's complaint alleges that venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants reside in this District, have infringed the copyrights here or a substantial part of the acts or omissions giving rise to the claims occurred here. Complaint ¶ 28. It goes on to allege that venue is proper under 28 U.S.C. § 1400(a) since defendants reside or may be found here. *Id*. ¶ 29. Venue in this Court, however, is not proper as to the Welsh Government and the case against it should be dismissed under Rule 12(b)(3).

---

[9] In addition, under 28 U.S.C. § 1608(c)(2), mail service is not complete until the Clerk receives a signed return receipt. *Semi Conductor Materials*, 1998 WL 388503, *8. The Clerk did not receive such a receipt in this case.

[10] Pablo Star's return of service asserts that it relied on Fed. R. Civ. P. 4(f)(2) in purportedly serving the Welsh Government. However, under Rule 4(f)(2)(C)(ii), effective mail service requires the Clerk of the Court to send the summons and complaint directly to the foreign defendant by registered mail.

- 8 -

The FSIA has its own venue provision as set out in 28 U.S.C. § 1391(f), which provides:

A civil action against a foreign state as defined in section 1603(a) of this title may be brought –

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

As discussed above, the Welsh Government is a political subdivision of the United Kingdom under 28 U.S.C. § 1603(a). Pablo Star's complaint does not plead any facts supporting a conclusory allegation that a substantial part of the acts or omissions giving rise to the alleged copyright infringement claim occurred in New York. The facts pleaded do not fall within any subparagraph of § 1391(f). It follows, therefore, that this judicial district is an improper venue. *Tannenbaum*, 1996 WL 75283, *3.

## III.   THE WELSH GOVERNMENT IS IMMUNE FROM SUIT UNDER THE FSIA.

As a political subdivision of a foreign state, the Welsh Government is immune from suit under the FSIA unless a specified exception applies. Here, Pablo Star's complaint does not even mention the FSIA, let alone plead that an exception applies. Consequently, the complaint against the Government must be dismissed.

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in federal court[.]" *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989); *see also Tannenbaum*, 1996 WL 75283, *5; *Johnson v. United Kingdom*, 608 F. Supp. 2d 291, 295

- 9 -

(D. Conn. 2009). Under the FISA, a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. As demonstrated above, "foreign state" is defined to include a "political subdivision" of that state. 28 U.S.C. § 1603(a). Accordingly, "if none of the exceptions to immunity applies, the court lacks both subject matter jurisdiction and personal jurisdiction."[11] Unlike most statutes that make immunity a defense to an action, the absence of immunity is a jurisdictional requirement under the FSIA. *See, e.g.*, *MOL, Inc. v. People's Republic of Bangladesh*, 736 F.2d 1326, 1328 (9th Cir. 1984).

In a motion to dismiss for lack of subject matter jurisdiction under the FSIA, "the defendant must present a 'prima facie case that it is a foreign sovereign,' after which the plaintiff 'has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted.'" *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 241 (2d Cir. 2002) (quoting *Cargill*, 991 F.2d at 1016). "Where the plaintiff satisfies her burden that an FSIA exception applies, the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." *Swarna v. Al–Awadi*, 622 F.3d 123, 143 (2d Cir. 2010). In considering such a motion, the "district court 'retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). "This discretion includes the ability to 'resolve

---

[11] *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 485 n.5 (1983)); *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless an exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." (citing *Verlinden*, 461 U.S. at 488-89)); *Chettri*, 2014 WL 4354668, *12; *Johnson*, 608 F. Supp. 2d at 295 ("the U.K. Government is presumptively immune from suit in the courts of the United States.").

disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'" *Freund v. Republic of France*, 592 F. Supp. 2d 540, 553 (S.D.N.Y. 2008) (quoting *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998)).

The Welsh Government, a political subdivision of the United Kingdom, is presumptively immune from suit under the FSIA. Pablo Star's complaint is silent on the legally required basis for this Court to exercise jurisdiction. And without any allegation that an exception applies (and none does), the complaint should be dismissed for lack of subject matter jurisdiction. *Tannenbaum*, 1996 WL 75283, *5; *Johnson*, 608 F. Supp. 2d at 295.

## IV.  THE COURT LACKS PERSONAL JURISDICTION OVER THE MIAMI HERALD, RICHMOND TIMES-DISPATCH, SCRIPPS (TREASURE COAST) AND PITTSBURGH POST-GAZETTE AND VENUE IS IMPROPER.

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(2) if the court does not have personal jurisdiction over Miami Herald, Richmond Times-Dispatch, Treasure Coast Newspapers, and Pittsburgh Post-Gazette. "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Prior to the holding of an evidentiary hearing, the plaintiff is required to make a "*prima facie* showing" of personal jurisdiction from the pleadings and affidavits. *Id.* (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998)). "Conclusory allegations will not suffice to meet this burden; plaintiff must make a 'specific averment' of facts that are 'sufficiently supported.'" *DH Servs., LLC v. Positive Impact, Inc.*, 2014 WL 496875, *2 (S.D.N.Y. Feb. 5, 2014) (citing *Southern New England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).

The Court should engage in a two-step inquiry to determine whether it has personal jurisdiction over a defendant. First, because this is a case arising under the Copyright Act, a federal statute that does not contain its own jurisdictional provision, the court should apply the

forum state's personal jurisdiction rules. *See Erickson Prods., Inc. v. Atherton Trust*, 2013 WL 1163346, *3 (S.D.N.Y. Mar. 20, 2013). Thus, New York law applies here. To establish personal jurisdiction over a defendant under New York law, the "plaintiff must 'demonstrate either that [the defendant] was present and doing business in New York within the meaning of [CPLR] § 301, or that [the defendant] committed acts within the scope of New York's long-arm statute, CPLR § 302.'" *Accurate Grading Quality Assurance, Inc. v. Khothari*, 2014 WL 507356, *6 (S.D.N.Y. Sept. 30, 2014) (citing *Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010)). Next, the Court will determine whether the exercise of jurisdiction under New York's rules is "consistent with the requirements of Due Process." *Erickson Prods.,* 2013 WL 1163346, *3. The due process analysis consists of "two components: the 'minimum contacts' test and the 'resonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

## A.    The Court Lacks General Jurisdiction Over Defendants.

Under CPLR § 301, a New York court "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." New York case law historically permitted the exercise of personal jurisdiction over a foreign defendant who is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the state." *Jazini,* 148 F.3d at 184.  In *Daimler AG*, the Supreme Court clarified whether the exercise of general jurisdiction over a foreign defendant comports with the Due Process Clause by holding that, other than in an "exceptional case", a defendant corporation is only subject to general jurisdiction in its place of incorporation and where it has its principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014). The inquiry then "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous

and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 796 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). The Second Circuit applied *Daimler* in holding that the existence of a New York office did not constitute an "exceptional case" when a defendant's contacts were "so continuous and systematic as to render it essentially at home in the forum." *Gucci America, Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 134 S. Ct. at 761); *see also Decesare v. McClatchy Co.*, Order at 6, No. 13-cv-4429 (E.D. Pa. Apr. 8, 2014) (Ex. 15). Prior to *Daimler* and *Gucci*, New York courts considered the following factors in determining general jurisdiction, including "(1) 'the existence of an office in New York'; (2) 'the solicitation of business in the state' (3) 'the presence of bank accounts and other property in the state'; and (4) 'the presences of employees of the foreign defendant in the state.'" *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 507 (E.D.N.Y. 2011) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985)). This Court has held that these factors are now "relevant only if they exist to such a degree in comparison to the corporation's overall national and international presence that would render the corporation an "exceptional case" where it is at home in additional forum." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 2015 WL 539460, at *4 (S.D.N.Y. Feb. 6, 2015).

The Complaint contains no allegation which, if true, would support a finding that this Court has general jurisdiction over Miami Herald, Richmond Times-Dispatch, Scripps or Pittsburgh Post-Gazette. None of the defendants are incorporated in New York and none has a its principal place of business in New York. Miami Herald is a company organized and existing under the laws of the State of Delaware with its principal place of business in Doral, Florida. Decl. of Reina Ponce, attached as Ex. 13 ¶ 3 ("Ponce Decl."). The Miami Herald is a newspaper

- 13 -

with circulation in Miami-Dade, Broward and Monroe counties in South Florida. *Id*. ¶ 4. Richmond Times-Dispatch is owned by BH Media Group Holdings, Inc., a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Omaha, Nebraska. Silvestri Decl. ¶ 3. The Richmond Times-Dispatch is a newspaper with circulation in the Commonwealth of Virginia. *Id*. ¶ 4. Scripps is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Tomasik Decl. ¶ 3.[12] Treasure Coast Newspapers distributes its print publications in counties in Martin, St. Lucie and Indian River, Florida. *Id*. ¶ 6. Pittsburgh Post-Gazette is owned by PB Publishing Company, a corporation organized and existing under the laws of the State of Pennyslvania with its principal place of business in Pittsburgh, Pennsylvania.  Decl. of Randy Waugaman, attached as Ex. 14 ¶ 3 ("Waugaman Decl."). Pittsburgh Post-Gazette is a daily newspaper with circulation in six counties in western Pennsylvania. *Id*. ¶ 4.

Nor can Pablo Star establish that this is an "exceptional case" justifying exercise of jurisdiction over the Defendants. These Defendants do not maintain offices in New York, do not solicit business targeting New York consumers, do not maintain any bank accounts in New York, do not own, use or possess any real property in New York, and do not have employees or agents in New York. Ponce Decl. ¶ 6; Silvestri Decl. ¶ 6; Tomasik Decl. ¶ 8; Waugaman Decl. ¶ 6. Pablo Star does not allege any facts to the contrary in the Complaint. Accordingly, the Court lacks general jurisdiction over Miami Herald, Richmond Times-Herald, Scripps and Pittsburgh Post-Gazette.

---

[12] Prior to April 1, 2015, as noted above, the Treasure Coast Newspapers was owned by Scripps. Tomasik Decl. ¶ 3. On April 1, 2015, Treasure Coast Newspapers, along with other newspapers then owned by Scripps, was merged into Journal Media Group, Inc., a company organized and existing under the laws of the State of Wisconsin, with an office in Stuart, Florida. *Id*. ¶ 4. Treasure Coast Newspapers is now owned by Journal Media Group, Inc. *Id*. ¶ 5.

**B.      The Court Lacks Specific Jurisdiction Over Defendants.**

Courts may exercise specific jurisdiction over a non-domiciliary who satisfies any of the

following acts enumerated by New York long-arm statute, CPLR § 302(a):

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his
> executor or administrator, who . . . 1. transacts any business within the state or
> contracts anywhere to supply goods or services in the state; or 2. commits a
> tortious act within the state . . . ; or 3. commits a tortious act without the state
> causing injury to person or property within the state . . . if he (i) regularly does or
> solicits business, or engages in any other persistent course of conduct, or derives
> substantial revenue from goods used or consumed or services rendered, in the
> state, or (ii) expects or should reasonably expect the act to have consequences in
> the state and derives substantial revenue from interstate or international
> commerce; or 4. owns, uses or possesses any real property situated within the
> state.

Although Pablo Star does not specify a jurisdictional theory in the complaint, it does not, and

cannot, demonstrate specific jurisdiction over Miami Herald, Richmond Times-Dispatch, Scripps

(Treasure Coast Newspapers), or Pittsburgh Post-Gazette under any subpart of § 302(a).

**1.      The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(1).**

To establish personal jurisdiction under § 302(a)(1), the plaintiff must demonstrate that

"(1) defendant purposefully availed himself of the privilege of doing business in the forum state

such that the defendant could foresee being brought into court there; and (2) plaintiff's claim

arises out of or is related to the defendant's contacts with the forum state." *Aqua Prods. Inc. v.

Smartpool, Inc.*, 2005 WL 1994013, *5 (S.D.N.Y. Aug. 18, 2005) (citing *Helicopteros

Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "[I]t is now well established

that one does not subject himself to the jurisdiction of the courts in another state simply because

he maintains a web site which residents of that state visit." *Erickson Prods.,* 2013 WL 1163346,

*3 (internal citations omitted). "When analyzing whether a defendant's internet activity rises to

the level of purposeful activity sufficient to satisfy § 302(a)(1), courts apply a 'sliding scale' test

- 15 -

based on the level of a website's interactivity." *Id.* (internal citations omitted). "A website that merely passively provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction." *Id.* (internal citations omitted); *see also Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) ("[A passive website] has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over a defendant.").

Pablo Star failed to allege that the Defendants "transacted business" in New York sufficient to support the exercise of personal jurisdiction. Pablo Star only alleged that the Defendants "own and operate[]" websites "which provide[] news, weather, and entertainment stories to visitors" and that "[u]pon information and belief, each of the Publisher Defendants obtained unauthorized copies of Plaintiff's photos from the Welsh Government . . . that the Publisher Defendants then published and displayed on the websites that they each respectively own and operate." Dkt. No. 1 at 5. These Publisher Defendants' websites are "passive" websites that only provide information, and are therefore "insufficient to demonstrate that the website operator has purposefully availed itself of the privilege of conducting activities within New York."[13]

Not only do these Defendants maintain passive websites that strictly makes information available to viewers, but each has extremely few New York subscribers. Miami Herald's website,

---

[13] *See Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408, 423 (E.D.N.Y. 2011); *see also ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 86 (E.D.N.Y. 2006) ("Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1)."); *Aqua Prods. Inc.*, 2005 WL 1994013, *5 ("Passive websites which primarily make information available to viewers, but do not permit an exchange of information, fail to justify the exercise of specific jurisdiction over a non-domiciliary."); *Decesare*, *supra*, Order at 6 (no specific jurisdiction where Kansas City Star did not purposefully direct itself to Pennsylvania residents by targeting them with its website or seeking subscribers in the state).

- 16 -

www.miamiherald.com, has only 26 subscribers from New York. Ponce Decl. ¶ 5. The Richmond Times-Dispatch website, www.richmond.com, only has three New York subscribers. Silvestri Decl. ¶ 5. Treasure Coast Newspapers' website, www.TCPalm.com, has more than 63,000 subscribers, only 56 of whom reside in New York. Tomaski Decl. ¶ 7. While not alleged by Pablo Star, Pittsburgh Post-Gazette owns and operates a website at www.post-gazette.com, which has a mere 126 New York subscribers. Waugaman Decl. ¶¶ 5, 8. Pablo Star's bare-bones allegations directed to these Defendants' internet activity fall woefully short of demonstrating that any of them transacted business in New York, and thus fail to establish personal jurisdiction under § 302(a)(1).

### 2.     The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(2).

Under § 302(a)(2), courts have jurisdiction over a defendant who "commits a tortious act within the state." This basis for jurisdiction over Miami Herald, Richmond Times-Dispatch, and Treasure Coast Newspapers is equally unavailing. As this Court has held, "in the case of web sites displaying infringing marks the tort is deemed to be committed where the web site is created and/or maintained." *Citigroup Inc.*, 97 F. Supp. 2d at 567. Here, Pablo Star alleges that the tortious act the Defendants committed in New York was the use of "unauthorized copies of Plaintiff's photos" on their websites. Dkt. No. 1 at 5. Miami Herald's website was created and is maintained in Florida and hosted on servers in North Carolina. Ponce Decl. ¶ 5. Richmond Times-Dispatch's website was created and is maintained in Virginia. Silvestri Decl. ¶ 5. Treasure Coast Newspapers' website was created and is maintained in Florida and hosted on servers in northern Virginia. Tomaski Decl. ¶ 7. Pittsburgh Post-Gazette's website was created and is maintained in Pittsburgh, Pennsylvania and also hosted on servers in Pittsburgh, Pennsylvania.

Waugaman Decl. ¶ 5. Pablo Star cannot, therefore, demonstrate that jurisdiction over these Defendants is proper under § 302(a)(2).

**3.      The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(3).**

The Court lacks jurisdiction over Miami Herald, Richmond Times-Dispatch, and Treasure Coast Newspapers under both prongs of § 302(a)(3). First, the Defendants do not regularly do or solicit business, or engage "in any other persistent course of conduct" in New York. "That individuals in New York can continuously access – and, in a limited way, interact with – Defendant's website is insufficient to establish § 302(a)(3)(i) jurisdiction." *DH Servs.,* 2014 WL 496875, *12. Nor do any of these Defendants derive "substantial revenue" from New York-based individuals and entities. In fact, these Defendants have only a small number of subscribers located in New York (33 for Miami Herald, 13 for Richmond Times-Dispatch, and 629 for Pittsburgh Post-Gazette). The amount of revenue Miami Herald, Richmond Times-Dispatch and Treasure Coast Newspapers receive from such sales is *de minimis*. Ponce Decl. ¶ 7; Silvestri Decl. ¶ 7; Tomaski Decl. ¶ 9. Pittsburgh Post-Gazette only receives annual gross income of $38,714 (print) and $10,584 (website) from its New York sales and subscribers. Waugaman Decl. ¶¶ 7-8. Thus, personal jurisdiction over these Defendants under § 302(a)(3)(i) is not appropriate.

Pablo Star cannot demonstrate that any of these Defendants expected or should have reasonably expected their actions to have consequences in the state, such that they would be subject to jurisdiction under § 302(a)(3)(ii). "Applying this provision in the context of trademark and copyright infringement claims, courts have examined whether defendant knew (or should have known) that a New York company or individual held the intellectual property rights . . . and whether defendant made a discernible effort to directly or indirectly serve the New York

- 18 -

market." *DH Servs.,* 2014 WL 496875, *13 (internal quotations and citations omitted). "'[A] *New York copyright owner* alleging infringement sustains an *in-state injury* pursuant to CPLR 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the Internet for public access.'" *Penguin Group (USA) Inc. v. American Buddha*, 640 F.3d 497, 501 (2d Cir. 2011) (quoting *Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295, 301, 921 N.Y.S.2d 171, 173, 946 N.E.2d 159, 161 (2011) (emphasis added).

Pablo Star is foreign company and not a New York copyright owner. *See* Complaint ¶¶ 1, 4, 6, 8; Oparil Decl. ¶ 3 & Ex. 4. Thus, no injury was caused to a person within this State. Moreover, Pablo Star has not, and cannot, demonstrate that the Defendants' display of the photographs on their websites evidence active solicitation of New York individuals. Thus, the use of alleged copyrighted works on websites cannot sustain personal jurisdiction against the Defendants, who could not possibly have expected consequences in New York. Jurisdiction under § 302(a)(3)(ii) is therefore not appropriate.

**4.    The Court Lacks Specific Jurisdiction Under CPLR § 302(a)(4).**

Miami Herald, Richmond Times-Dispatch, and Treasure Coast Newspapers do not own, use or possess any real property in New York. Ponce Decl. ¶ 6; Silvestri Decl. ¶ 6; Tomaski Decl. ¶ 8; Waugaman Decl. ¶ 6. Pablo Star does not allege otherwise and thus specific jurisdiction over these Defendants does not exist under § 302(a)(4). The case against them should be dismissed.[14]

---

[14] Because personal jurisdiction is lacking in New York, the case against these defendants should also be dismissed for lack of proper venue under Fed. R. Civ. P. 12(b)(3). Venue in a copyright infringement suit is governed exclusively by 28 U.S.C. § 1400(a), which provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights ... may be instituted in the district in which the defendant or his agent resides or may be found." A corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *see also VE Holding*

- 19 -

## V.      PABLO STAR DOES NOT HAVE STANDING TO SUE THE DEFENDANTS.

Pablo Star alleges that it owns the two copyrights at issue. The complaint repeatedly states that Pablo Star "owns all American copyrights" and is the "sole and exclusive owner" of the copyrights to the two photographs. Complaint ¶¶ 3, 4, 8, 46. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Pablo Star no longer owns the two alleged copyrights at issue; they were assigned to third-party Pablo Media in 2014. Pablo Star also transferred all rights to sue for copyright infringement, except as to certain unidentified parties. Pablo Star thus has no standing to sue for infringement and this Court lacks subject matter jurisdiction.

Standing is a threshold issue in every federal case.[15] Federal courts are under an independent obligation to examine their own jurisdiction. *See, e.g.*, *United States v. Hays*, 515 U.S. 737, 742 (1995). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may raise by motion the threshold defense of lack of subject matter jurisdiction. Once subject matter jurisdiction is challenged, the plaintiff has the burden of establishing the jurisdictional facts by competent proof. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Soeken v. Herman*, 35 F. Supp. 2d 99, 102 (D.D.C. 1999). The submission of matters

---

*Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578-79 (Fed. Cir. 1990) (holding that § 1391(c) applies to § 1400); *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004). None of these media defendants are New York corporations and all are located elsewhere. Thus, venue does not exist here.

[15] *See, e.g.*, *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991) ("Because standing is jurisdictional under Article III of the United States Constitution, *see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–76, 102 S. Ct. 752, 757–61, 70 L.Ed.2d 700 (1982), it is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court."); *Vianix Delaware LLC v. Nuance Communications, Inc.*, 2009 WL 1364346, *1 (D. Del. May 12, 2009) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.").

outside the pleadings does not convert a Rule 12(b)(1) motion to one for summary judgment but, rather, permits the court to conduct an independent review of the evidence to resolve factual disputes concerning whether subject matter jurisdiction exists. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

Under the U.S. copyright statute[16], the owner of a copyright may sue for infringement. 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner … or of the author … is an infringer of the copyright or right of the author, as the case may be."). "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the [registration] requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." *Id*. § 501(b). The term "'Copyright owner', with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of the particular right." *Id*. § 101.  "The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."[17]

To be sure, a copyright owner may transfer all rights to a copyrighted work:

(1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

---

[16]    Dylan Thomas married Caitlin Macnamara in 1937. *See, e.g.*, http://en.wikipedia.org/wiki/Dylan_Thomas. The two photographs at issue were taken before the Copyright Act of 1909 was amended in 1976. Thus, the 1909 statute would apply to certain issues on the merits if the case is not dismissed. *See, e.g.*, *Roth v. Pritikin*, 710 F. 2d 934, 937 (2d Cir. 1983).

[17] *Eden Toys, Inc. v. Florelee Undergarment Co., Inc*., 697 F.2d 27, 32 (2d Cir. 1982) (citing § 501(b)); *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."); *Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.*, 668 F.2d 699, 702 (2d Cir. 1982); *Vianix Delaware LLC*, 2009 WL 1364346, *2 (without copyright ownership, plaintiff did not have standing to sue for infringement and the court lacks subject matter jurisdiction).

> (2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d). A transfer includes assignments as defined by § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.").

The Second Circuit has held that a copyright owner may only sue for infringement that accrues during the time of ownership unless the assignment explicitly provides otherwise:

> The legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of its ownership. 17 U.S.C. § 501(b). Thus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them. Rather, the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner and the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment. Nimmer, § 12.02 at 12–29–12–30. Finally, the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf. *See Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 n.3 (2d Cir. 1982).

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (citations omitted).

Here, the pled and undisputed facts of which the Court can take judicial notice under FRE 201 (*see* Exs. 5-10[18]), establish that in 2014 Pablo Star assigned ownership of the copyrights at

---

[18] *See, e.g., Ermini v. Vittori*, 758 F.3d 153, 156 (2d Cir. 2014) (court took judicial notice of foreign court decision); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (court took judicial notice of a complaint as a public record); *United States ex rel. Robinson Rancheria Citizens*

- 22 -

issue to Pablo Media and Pablo Star only retained the right to sue for past copyright infringement against certain specific parties (the names of which are redacted). On February 18, 2014, however, Pablo Star had been dissolved. Oparil Decl. ¶ 5; Ex. 5. In discussions with representatives of the Welsh Government, Hayden Price ("Price") represented that he was a managing director of Pablo Star and a managing director of Pablo Media. As part of those discussions, Price provided a redacted copy of a Trademark and Copyright Purchase and Assignment Agreement between Pablo Star and Pablo Media, dated May 21, 2014 ("Assignment"). Oparil Decl. ¶ 6; Ex. 6. The Assignment provides, among other things, that Pablo Star was the registered owner of the copyrights to two photographs of Dylan Thomas and his wife, "Just Married" and "Penard" (U.S. Registration Nos. VA0001134367 and VA0001864304). The Assignment assigns those alleged copyrights and other intellectual property rights from Pablo Star to Pablo Media:

> The Assignee agrees to (1) pay the Assignor [REDACTED] receipt of which is hereby acknowledged and (2) [REDACTED]. In exchange, the Assignor hereby conveys, transfers and assigns to the Assignee all of the Assignor's possible rights, title, and interest of every kind in any country in the above trademarks, copyrights and assets together with; [sic]
>
> 4)    all rights to sue for past, present and future infringement or misappropriation of the marks and/or copyrights. However, this agreement shall not affect the Assignors [sic] potential action *against [REDACTED]* (for which the Assignors [sic] rights, remedies and potential actions are not transferred and its copyright ownership as far as it relates to those actions remains unchanged).

Ex. 6 at 2 (emphasis added).  Price signed the Assignment for both Pablo Star, the assignor, and Pablo Media, the assignee.

---

*Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) ("we `may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (citation omitted).

Consequently, in May 2014, Pablo Media became the copyright owner that had the right to sue for past, present and future infringement, except with respect to certain parties, the names of which have been redacted.

This reading of the Assignment is confirmed by subsequent actions taken by Pablo Star and Pablo Media. Price applied to a court in the United Kingdom to restore Pablo Star's registration. On June 13, 2014, the U.K. High Court of Justice, Companies Court, granted Price's request and restored the company's registration. Oparil Decl. ¶ 8; Ex. 7. The Order, however, was subject to certain conditions, including the following:

> (A) the company will not carry on business or operate in any way other than to take the necessary steps to,
>
> (i)    pursue claims against
> (a)    New Directions Publishing Inc.
> (b)    Vistwales com and
> (c)    Nancy Galbraith
> seeking damages for alleged breach of copyright referred to in paragraph 9 of the Witness Statement of Haydn Price dated the 2 April 1014
> (ii)    receive the proceeds of any awards of the Court arising from those claims
> (iii)    settle its debts to its existing creditors (if any)
> (iv)    distribute the remaining proceeds of any awards of the Court (the actions) according to law[.]

Ex. 7. On June 13, 2014, Price and the Treasury Solicitor representing the Registrar of Companies expressly consented to the terms of the order. Thus, the U.K. Court order expressly granted Pablo Star the right to pursue claims against three persons for copyright infringement and the company consented to those restrictions.

Further, after the Assignment in 2014, Pablo Media initiated three cases in the Dublin Metropolitan District Court, Ireland, against PG Publishing Co. Inc. (the Pittsburgh Post-Gazette), Scripps and Tribune Media Services. In each case, Pablo Media sought damages for

- 24 -

copyright infringement as the alleged owner of the "Just Married" photograph. Oparil Decl. ¶ 11; Exs. 8-10. Pablo Media's suits confirm that it asserted ownership of "Just Married."

Unless one or more of the Defendants are listed in the redacted portion of the Assignment for which Pablo Star retained limited rights, Pablo Star is not the copyright owner with standing to sue them for infringement and the case should be dismissed for lack of subject matter jurisdiction. The fact that Pablo Media sued three defendants in Ireland – PG Publishing, Scripps and Tribune – leads to the strong inference that those defendants were not named in the redacted portion of the Assignment. In addition, because the Publisher Defendants were not named in the U.K. Court Order (Ex. 7), Pablo Star's suit against them is a clear violation of that Order. Dismissal of this case against them should be ordered. While the Welsh Government may be one of the redacted names, Pablo Star must come forward with authentic evidence. Otherwise, the case should be dismissed against all Defendants for lack of standing.

## CONCLUSION

Pablo Star's complaint against the Defendants should be dismissed.

Dated: April 27, 2015

Of Counsel:

Kevin M. Bell
Caroline C. Maxwell
PORZIO, BROMBERG & NEWMAN P.C.
1200 New Hampshire Ave. NW
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)

Respectfully submitted,

/s/ Richard J. Oparil
Richard J. Oparil (RO9269)
PORZIO, BROMBERG & NEWMAN P.C.
1200 New Hampshire Ave. NW
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)

Attorneys for Defendants
Welsh Government, Gracenote (d/b/a Tribune Media Service), Pittsburgh Post-Gazette, E.W. Scripps Co., Richmond Times-Dispatch, and Miami Herald Media Co.

- 25 -

3053142