Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street, 3rd Floor
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PABLO STAR LTD.; PABLO STAR MEDIA LTD., | Case No.: 15-cv-1167 (JPO) |
| *Plaintiffs*, | Hon. J. Paul Oetken |
| v. | |
| THE WELSH GOVERNMENT; VISIT WALES; TRIBUNE CONTENT AGENCY, LLC; PITTSBURGH POST-GAZETTE; E.W. SCRIPPS, CO.; JOURNAL MEDIA GROUP, INC.; TREASURE COAST NEWSPAPERS; COLORADO NEWS FEED; TRAVEL SQUIRE; RICHMOND TIMES DISPATCH; and MIAMI HERALD MEDIA CO., | **FIRST AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| *Defendants*. | |

Plaintiffs Pablo Star Ltd. and Pablo Star Media Ltd., by and through undersigned counsel, pursuant to Rule 8 of the Federal Rules of Civil Procedure and the Local Rules of this Court, hereby demand a trial by jury of all claims and issues so triable and, for their First Amended Complaint against Defendants The Welsh Government; Visit Wales; Tribune Content Agency, LLC; Pittsburgh Post-Gazette; E.W. Scripps, Co.; Journal Media Group, Inc.; Treasure Coast Newspapers; Colorado News Feed; Travel Squire; Richmond Times Dispatch; and Miami Herald Media Co. state as follows:

**PLAINTIFFS AND THE SUBJECT WORKS**

1.      Plaintiffs Pablo Star Ltd. and Pablo Star Media Ltd. ("Plaintiffs" or "Pablo Star") are related companies organized and registered under the laws of Ireland and the United Kingdom.

2.      Plaintiffs own all copyrights in and to the two photographic works featuring the iconic poet Dylan Thomas that are the subject of this action.

3.      Plaintiffs own the copyrights in the following photo identified as "Just Married Dylan Thomas" (referred to herein as "*Just Married*"):



4.      Plaintiffs own the copyrights in the following photo identified as "Dylan and Caitlin at Penard" (referred to herein as "*Penard*"):



5.      Together *Just Married* and *Penard* are referred to herein as the "Photos."

2

6.     The Photos were originally created by photographer Vernon Watkins.

7.     By written agreement dated August 25, 2011, Pablo Star Ltd. acquired all rights, title, and interest in the photographs, including all copyrights therein.

8.     Pablo Star Ltd. registered its copyrights in and to the Photos with the United States Copyright Office and was issued certificates of registration for both works.

9.     By written agreement dated May 21, 2014, Pablo Star Ltd. transferred certain aspects of its copyrights in the Photos to Pablo Star Media Ltd.   The transfer agreement expressly provided that Pablo Star Ltd. retained the rights and authority to pursue accrued claims against Visit Wales relating to any unauthorized uses of the Photos.    Plaintiffs intended and understood their agreement to authorize Pablo Star Ltd. to retain all rights to pursue claims related to the misconduct of Visit Wales and thus intended and understood that agreement to permit Pablo Star Ltd. to pursue all claims at issue in this action.

10.     To the extent that Pablo Star Ltd. did not retain the rights to pursue any claims against any Defendants in this action, Pablo Star Media Ltd owns such copyrights and has standing to pursue such claims.

11.     Together, Plaintiffs own all copyrights in the Photos and have standing to pursue all claims at issue in this action against all Defendants.

## JURISDICTION AND VENUE

12.     This is an action for copyright infringement brought by Plaintiffs against Defendants for unauthorized uses of Plaintiffs' copyrighted Photos.

13.     This Court has jurisdiction over the Defendants, either generally and/or for the specific acts alleged herein.

### The Welsh Government and Visit Wales

14.     As alleged in more detail herein, the Welsh Government published, displayed, distributed, and otherwise used unauthorized copies of Plaintiffs' copyrighted Photos in advertisements, publications, and other promotional materials directed at and specifically targeted towards United States residents generally and New York residents in particular.

15.     Upon information and belief, the Welsh Government operates Visit Wales (also referred to as Visit Wales/Croesco Cymru) ("Visit Wales") as an administrative division or business enterprise to encourage tourism and otherwise publicize and promote Wales as a tourist destination.

16.     Since at least 2013, the Welsh Government, acting through Visit Wales, has engaged in substantial commercial activities, including activities conducted in partnership with private businesses, to promote tourism to Wales and market Wales as a tourist destination.

17.     The Welsh Government and Visit Wales have engaged in and undertaken such commercial activities in the United States.

18.     Such commercial activities include, but are not limited to, creating advertisements, brochures, pamphlets, walking tour maps, and other similar tourism and promotional materials and publications ("promotional materials") and contracting with private businesses to create, copy, publish, and distribute such promotional materials.

19.     Prior to undertaking the infringing activities alleged herein, the Welsh Government released a report entitled "The Welsh Government Strategy for Tourism 2013-2020: Partnership for Growth" (attached as Exhibit 13) (the "Tourism Strategy Report").

20.     The Tourism Strategy Report set forth strategies and action plans for developing, encouraging, marketing, and otherwise promoting tourism to Wales.  Among other things, such

strategies included engaging in partnerships and joint tourism-related ventures with local hotels, restaurants, and other tourism-related private businesses.

21.    In the Tourism Strategy Report, the Welsh Government and Visit Wales identified the United States as one of the key foreign markets to be targeted for its tourism campaign.

22.    Following the release of the Tourism Strategy Report, the Welsh Government and Visit Wales developed and published a document entitled "The Welsh Government Strategy for Tourism 2013-2020:  Framework Action Plan Years 1-3" (attached as Exhibit 14) (the "Action Plan").

23.    The Action Plan identified means for implementing and carrying out the overarching strategies proposed by the Welsh Government and Visit Wales in the Tourism Strategy Report for promoting tourism to Wales.

24.    The strategies and undertakings identified in the Action Plan include numerous commercial activities to be carried out by the Welsh Government and Visit Wales and include numerous such activities to be carried out in the United States or that were directly aimed at the United States.

25.    One of the strategies identified in the Action Plan was "grow[ing] the sales of Wales holidays through the leisure travel trade and other key intermediaries."  The Action Plan specifically identified including "North America" as a target for such activities.  The methods identified in the Action Plan for implementing this strategy included the following activities:

- Re-launch the travel trade approach with industry in conjunction with VisitBritain, offer financial support for overseas travel trade events and provide appropriate platforms for business development.
- Proactive approach including: travel trade exhibitions/events; key account management and marketing campaigns (with best 40 prospects); familiarization trips; e-news; training, and; maximising VisitBritain opportunities.

26.     Other strategies identified in the Action Plan, also directed at North America (or even the United States in particular) were "develop[ing] the use of multiple on-line marketing channels, to effectively promote Wales in key target markets" and "distribut[ng] relevant and useful content that inspires visitors to choose specific product experiences in Wales."   The Action Plan identified numerous methods for implementing these strategies, including:

- Develop[ing] digital/content marketing plans for key target markets, reflecting revised branding, iconic product priorities and specific market requirements.
- Work[ing] with partners and content network to create, share and distribute content, that presents clear reasons to visit Wales and is presented in ways that make it easier to discover and access specific products, packages and offers.
- Re-launch websites for US and German markets providing tailored content and incorporating new iconic product led and branding approaches.
- Support the industry in realising the opportunities for digital marketing.

27.     Upon information and belief, the Welsh Government and Visit Wales did implement and are continuing to carry out such commercial activities in an effort to achieve the goals set forth in the Tourism Strategy Report and Action Plan.

28.     The Welsh Government and Visit Wales carried out such commercial activities in the United States, including in New York and this District.

29.     Among other things, the Welsh Government and Visit Wales purposefully directed tourism-related advertisements, publications, brochures, solicitations, and other such promotional materials toward residents of the State of New York and published and/or distributed such promotional materials in the State of New York and this District.

30.     Upon information and belief, the Welsh Government and Visit Wales purposefully used Dylan Thomas' legacy, likeness, and international appeal to promote their agendas, including by using images of Dylan Thomas and promoting Dylan Thomas-related tours and holidays in products, publications, and promotional materials.

31.     The Welsh Government and Visit Wales utilized unauthorized copies of Plaintiffs' Photos in such products, publications, and promotional materials.

32.     The Welsh Government and Visit Wales published and distributed unauthorized copies of Plaintiffs' Photos in New York and this District.

33.     The activities of the Welsh Government and Visit Wales have had a direct effect in the United States, including by encouraging Unites States residents to travel to Wales.

34.     The activities of the Welsh Government and Visit Wales also have had a direct effect on Plaintiffs' potential opportunity to license and publish the Photos in the United States and have deprived Plaintiffs of exclusive control of the right to copy, publish, and distribute the Photos in the United States market.

35.     The Welsh Government maintains offices, employees, and agents in New York and also conducts substantial, ongoing business in the State of New York and this District.

### *The Publisher Defendants*

36.      Defendants Tribune Content Agency, LLC ("TCA"); the Pittsburgh Post-Gazette; E.W. Scripps, Co. ("Scripps"); Journal Media Group, Inc.; Treasure Coast Newspapers ("TCN"); Colorado News Feed ("CNF"); Travel Squire; Richmond Times Dispatch ("RTD"); and Miami Herald Media Co. ("Miami Herald") are collectively referred to hereinafter as the "Publisher Defendants."

37.     Upon information and belief, as part of their efforts to promote tourism to Wales, the Welsh Government and Visit Wales provided unauthorized copies of Plaintiffs' copyrighted works to the Publisher Defendants.

38.      Upon information and belief, the Publisher Defendants conduct substantial and ongoing business in New York, including providing goods and services primarily in the form of

news, entertainment, and other publications, including but not limited to online publications, to numerous residents of the State of New York and this District.

39. All Defendants conduct substantial business in the State of New York, are subject to personal jurisdiction in the State of New York, and have infringed Plaintiffs' copyrights in the State of New York and in this District.

40. Upon information and belief, Defendants TCA; Scripps; and Travel Squire maintain employees, agents and/or offices in New York.

41. Upon information and belief, each of the Publisher Defendants receives news stories, images, and other content from The Associated Press ("AP").

42. AP describes itself as a not-for-profit news "cooperative" that is owned by and made up of over 1,400 "member" newspapers and media organizations.

43. Upon information and belief, newspaper publishers generally receive content from AP and use material written by AP's journalists and staff pursuant to one of two arrangements, either (i) the newspaper, subject to a cooperative agreement with AP, is an owner and member of the cooperative and receives content from AP and grants permission to AP to distribute its own content through AP's international distribution network; or (ii) the newspaper subscribes to AP's news feed and other services subject to a licensing agreement with AP.

44. Upon information and belief, each of the Publisher Defendants either is a member/owner of AP's news cooperative or has entered into a licensing agreement with AP.

45. AP's headquarters is located at 450 West 33rd St., New York, New York 10001.

46. Upon information and belief, AP's primary news bureau is located in New York, New York.

47.    Upon information and belief, AP maintains offices, employees, agents, reporters and other journalists, and substantial staff in New York.

48.    In addition to other services and products, AP also acts a licensor for stock photography collections, including content licensed through AP Images.

49.    Upon information and belief, Defendant TCA operates the "Tribune News Service" which, according to its website, "delivers more than 250 stories and images daily for use on all platforms," including stories and other content selected from the "Los Angeles Times, Chicago Tribune, Miami Herald, The Dallas Morning News, The Seattle Times, The Philadelphia Inquirer and hundreds of other contributors."

50.    Upon information and belief, Defendant TCA owns and/or operates www.mctdirect.com as the website for its Tribune News Service.  This is a fully interactive website that allows visitors to "Login" and access their "Myaccount" page where visitors can review saved searches and select and save custom content, including their "customized feeds" created using TCA's "Tribune SmartContent" feature.  TCA also offers content "By State," including content specifically regarding and directed at New York.  TCA's website also permits visitors to directly purchase or license content, including stories and photos, that are sorted and downloaded directly from the website.  The TCA website also permits visitors to preview their selected photo content through its "Lightbox" feature.

51.    Upon information and belief, TCA has contractual agreements or other arrangements with news agencies and publishers located in New York related to the use and delivery of the New York publishers' content to TCA subscribers.

52.    Upon information and belief, TCA licenses rights to photos, stories, and other content created in the State of New York.

53.     Upon information and belief, receives advertising revenue from companies located in New York and that do substantial business in New York.

54.     Upon information and belief, TCA is either a member/owner or a subscriber to AP and publishes substantial content from AP.

55.     Upon information and belief, TCA also licenses or otherwise acquires image content from AP's stock photography division.

56.     Upon information and belief, TCA acquired the infringing copy of Plaintiffs' Photos at issue here from the Welsh Government's office in New York or an as-of-yet unascertained third party who did so.

57.     Upon information and belief, Defendant Travel Squire owns and operates the website www.travelsquire.com which is an online digital magazine and travel itinerary planning service.

58.     Travel Squire's website is fully interactive and requests visitors "sign up for travel news and deals" by entering their first and last name and e-mail accounts.  The website also allows visitors to submit comments to articles and add content from its website to their Twitter, Facebook, and other social media sites.  By default, the visitor's Facebook profile picture appears next to all comments and all comments are automatically posted to the visitor's personal Facebook page.

59.     Upon information and belief, Defendant CNF owns and operates the website www.conewsfeed.com which supplies updated news and information articles online to viewers and supplies through its "feed" various content and articles to subscribers.  This a fully interactive website that allows visitors to submit comments to articles and place donations through the Paypal service linked directly to its website.

60.     Upon information and belief, Defendant CNF has subscribers and customers who reside in New York, and CNF otherwise provides content and articles to individuals who reside in New York through its "feed."

61.     Upon information and belief, CNF is either a member/owner or a subscriber to AP and publishes substantial content from AP.

62.     Upon information and belief, CNF also licenses or otherwise acquires significant image content from AP's stock photography unit.

63.     Upon information and belief, CNF acquired the infringing copy of Plaintiffs' Photos at issue here from the Welsh Government's office in New York or from an as-of-yet unidentified third party that did so.

64.     Upon information and belief, Defendant Scripps owned and operated Defendant Treasure Coast Newspapers at all times relevant to the conduct at issue here.

65.     Upon information and belief, Defendant Journal Media Group now owns or operates Treasure Coast Newspapers.

66.     Upon information and belief, Defendant TCN owns and/or operates the website www.TCPalm.com.

67.     Upon information and belief, TCN has website subscribers who reside in New York and this District.

68.     Upon information and belief, TCN has print subscribers who reside in New York and this District.

69.     TCN's website describes itself as an "interactive online service" that provides news, weather, and entertainment stories to visitors.

70.     TCN's website is a fully interactive website that allows visitors to "Login" and access their "account" page.  Visitors are also able to subscribe to Treasure Coast Newspapers directly through the website, add content from the website to their Twitter, Facebook, and other social media sites.  The website also permits visitors to directly sign up for "Daily Newsbreaks" and "Breaking News" reports and TCPalm's "Social Newsletter."   The website also permits visitors to post comments to stories and respond to other commenters and, by default, the visitors Facebook profile picture appears next to all comment and all comments are automatically posted to the visitor's personal Facebook page.  The website also tracks "Reader Rewards" and posts messages from the newspaper to the visitors regarding such rewards.

71.     Upon information and belief, in addition to having paying subscribers who reside in New York, TCN's website also is accessed by New York residents who consume the available content, including the infringing content at issue here.

72.     Upon information and belief, TCN receives advertising revenue from companies located in New York and that do substantial business in New York.

73.     Upon information and belief, TCN is either a member/owner or a subscriber to AP and publishes substantial content from AP in both its print newspaper and website.

74.     Upon information and belief, TCN also licenses or otherwise acquires significant image content from AP's stock photography unit for both its print newspaper and website.

75.     Upon information and belief, TCN acquired the infringing copy of Plaintiffs' Photos at issue here from the Welsh Government's office in New York or from an as-of-yet unidentified third-party that did so.

76.     Upon information and belief, Defendant RTD owns and operates the website www.richmond.com (to which www.timesdispatch.com is automatically routed) which is an online publication that provides news, weather, and entertainment stories to visitors.

77.     The RTD's website is fully interactive and allows visitors to "Login" and access their "account" page.  Visitors also are able to add content from the website to their Twitter, Facebook, and other social media sites.  The website also permits visitors to directly sign up for "E-mail newsletters."

78.     Upon information and belief, in addition to having paying subscribers who reside in New York, RTD's website also is accessed by New York residents who consume the available content, including the infringing content at issue here.

79.     Upon information and belief, RTD receives advertising revenue from companies located in New York and that do substantial business in New York.

80.     Upon information and belief, RTD is either a member/owner or a subscriber to AP and publishes substantial content from AP in both its print newspaper and website.

81.     Upon information and belief, RTD also licenses or otherwise acquires significant image content from AP's stock photography unit for both its print newspaper and website.

82.     Upon information and belief, RTD acquired the infringing copy of Plaintiffs' Photos at issue here from the Welsh Government's office in New York or from an as-of-yet unidentified third-party that did so.

83.     Upon information and belief, Defendant Miami Herald owns and operates the website www.miamiherald.com which is an online publication that provides news, weather, and entertainment stories to visitors.  This is a fully interactive website that allows visitors to "Login" and access their "account" page.  Visitors are also able to subscribe to Miami Herald Newspapers

directly through the website, add content from the website to their Twitter, Facebook, and other social media sites.  The website also permits visitors to post comments to stories and respond to other commenters.

84.     Upon information and belief, the Miami Herald is either a member/owner or a subscriber to AP and publishes substantial content from AP in both its print newspaper and website.

85.     Upon information and belief, the Miami Herald also licenses or otherwise acquires significant image content from AP's stock photography unit for both its print newspaper and website.

86.     Upon information and belief, the Miami Herald acquired the infringing copy of Plaintiffs' Photos at issue here from the Welsh Government's office in New York or from an as-of-yet unidentified third-party that did so.

87.     Upon information and belief, each of the Publisher Defendants obtained unauthorized copies of Plaintiffs' photos from the Welsh Government and/or Visit Wales (either directly or from an as-of-yet unidentified third-party intermediary) and the Publisher Defendants then published and displayed Plaintiffs' on their respective websites and/or print publications.

### *Jurisdiction*

88.     Jurisdiction for Plaintiffs' claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*; 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

89.     This Court also has jurisdiction over the Welsh Government and Visit Wales pursuant to 28 U.S.C. § 1605(a)(2) because Plaintiffs' claims are based upon a commercial

activity carried on in the United States, or upon an act performed in the United States in connection with a commercial activity elsewhere; or upon an act outside the United States in connection with a commercial activity elsewhere that caused a direct effect in the United States; and 28 U.S.C. § 1605(a)(3) because Plaintiffs' rights in property taken in violation of international law are in issue and Plaintiffs' property is now present in the United States in connection with a commercial activity carried on in the United States by the Welsh Government and Visit Wales; and 28 U.S.C. § 1605(a)(5) because Plaintiffs seek money damages against the Welsh Government and Visit Wales for damage to their property occurring in the United States and caused by the tortious acts of the Welsh Government and Visit Wales.

90.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) because Defendants either reside in this District, have infringed Plaintiffs' copyrights within this District, and or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

91.     Venue also is proper in this Court under 28 U.S.C. § 1400(a) since Defendants reside or may be found in this District.

92.     Venue also is proper in this Court under 28 U.S.C. § 1391(f) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District; Defendants are doing business in this District; and, upon information and belief, the Welsh Government and Visit Wales are licensed to do business in New York.

## FACTUAL ALLEGATIONS

93.     In March of 2012, Plaintiff Pablo Star Ltd. discovered that the Welsh Government, acting through Visit Wales, was using the *Just Married* photo without permission.

Plaintiff Pablo Star Ltd. contacted Visit Wales to advise that it owned the copyrights in the photo and demanded in writing that Visit Wales cease and desist using the *Just Married* photo.

94.     On or about March 30, 2012, a representative of Visit Wales acknowledged Plaintiff's notice of copyright and claimed that Visit Wales would comply with Plaintiff's cease and desist demand.

95.     Despite acknowledging Plaintiff's written copyright notice and demand, the Welsh Government and Visit Wales subsequently began new unauthorized uses of the *Just Married* photo.

96.     Beginning in 2013 or early 2014, the Welsh Government and Visit Wales began using unauthorized copies of Plaintiffs' *Just Married* photo in advertisements, marketing materials, travel maps, websites, brochures, and other promotional materials, including such promotional materials that were directed specifically at residents of New York and intended to lure American tourists to Wales.

97.     Attached hereto as Exhibits 1 and 2 are true and correct copies of examples of publications and promotional materials created, published, and distributed by the Welsh Government and Visit Wales that feature unauthorized and infringing copies of Plaintiffs' *Just Married* photo.

98.     Because information regarding the scope of the illegal use of Plaintiffs' photographs by the Welsh Government and Visit Wales remains in their sole possession, the full and complete scope of their infringing uses of the *Just Married* work has not yet been ascertained.

99.     In addition to making new unauthorized uses of the *Just Married* photo, the Welsh Government and Visit Wales also created or acquired an unauthorized derivative copy of

the *Just Married* photo that they subsequently displayed, published, sold, and otherwise used without permission despite knowing that Plaintiffs claimed copyright in the underlying photographic work.

100.    Attached hereto as Exhibit 3 is a true and correct uncropped copy of the unauthorized derivative work created or acquired by Defendant.  Exhibit 3 shows a photograph, taken from Visit Wales' website, of an old and tattered print copy of the *Just Married* photo that was being displayed at the time on the mantle of a fireplace at the Birthplace of Dylan Thomas.

101.    Despite previously acknowledging Plaintiffs' copyrights in this photo, the Welsh Government and Visit Wales subsequently published, displayed, and offered for sale the unauthorized derivative of Plaintiffs' *Just Married* photo.

102.    Attached hereto as Exhibit 4 is a true and correct copy of a screen capture from the Visit Wales website (www.walesonview.com) showing the unauthorized derivative copy being offered for sale as image "SVW-C53-1213-0171.JPG."

103.    The Welsh Government and Visit Wales also provided this unauthorized derivative copy of the *Just Married* photo to the Publisher Defendants (as well as to other, yet-to-be-ascertained third parties) in order to be published and distributed to the American market to promote Wales tourism and as part of Visit Wales' tourism campaign here in the United States.

104.    The Welsh Government and Visit Wales also used Plaintiffs' *Penard* photo as part of their advertising, tourism, and promotional campaign.

105.    Attached hereto as Exhibits 5-12 are true and correct copies of various publications and other documents showing that the Publisher Defendants published and displayed unlicensed copies of Plaintiffs' Photos or unauthorized derivatives of Plaintiffs' Photos.

17

106.   Because information regarding the scope of the Publisher Defendants' use of Plaintiffs' Photos remains in the Publisher Defendants' sole possession, the full and complete scope of the Publisher Defendants' infringing uses of the Photos has not yet been ascertained.

## <u>COUNT I</u>
## COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS

107.   Plaintiffs repeat and re-allege each allegation set forth in paragraphs above as if set forth fully herein.

108.   Plaintiffs own all copyrights in the photographs that are the subject of this action.

109.   Plaintiffs registered their copyrights in and to the Photos with the U.S. Copyright Office prior to filing this lawsuit and prior to the infringing acts described and alleged herein.

110.   As alleged herein, Defendants used, published, distributed, displayed, sold, and otherwise exploited Plaintiffs' copyrighted works without a license and without permission.

111.   Upon information and belief, the Welsh Government and Visit Wales never had permission or a license to use either the *Just Married* or *Penard* photos, particularly in a commercial manner such as in advertisements and promotional materials.

112.   In the event that the Welsh Government contends that it did have permission or a license, Plaintiffs allege that Defendants' use of the Photos exceeded the scope of any alleged license.

113.   Plaintiffs' March 2012 correspondence provided sufficient notice to the Welsh Government and Visit Wales that any purported license had been rescinded or revoked and that no additional uses of the photo were permitted.

114.    By infringing Plaintiffs' copyrights, Defendants misappropriated Plaintiffs' intellectual property for their own profit, causing Plaintiffs significant injuries, damages, and losses in amounts to be determined at trial.

115.    Defendants' unauthorized uses of Plaintiffs' copyrighted images were knowing and willful.

116.    The conduct of the Welsh Government and Visit Wales violates the protections of the Berne Convention, which the United Kingdom has ratified, including the right to make adaptions of the Photos; the right to publish the Photos (or communicate/broadcast them to the public); and Plaintiffs' moral rights.

117.    Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including each Defendant's profits attributable to the infringing use of Plaintiffs' Photos and the damages suffered as a result of the lack of compensation, credit, and attribution.

118.    Plaintiffs also seek a declaration that the Welsh Government lacks a license to use Plaintiffs' photos identified herein

119.    Plaintiffs also seek a preliminary and permanent injunction against Defendants precluding any ongoing or future use of Plaintiffs' Photos, or unauthorized derivative copies of Plaintiffs' Photos.

120.    Plaintiffs also seek all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

## COUNT II
## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
## AGAINST THE WELSH GOVERNMENT

121.    Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

122.    Without permission, the Welsh Government and Visit Wales distributed copies of or otherwise allowed access to Plaintiffs' copyrighted Photos to numerous third parties, including the Publisher Defendants.

123.    Through their actions, the Welsh Government and Visit Wales materially contributed to, facilitated, induced, or otherwise are responsible for the directly infringing acts carried out by the other defendants and yet-to-be-ascertained third parties.

124.    The Welsh Government and Visit Wales exercised control over the content of their own websites and publications that included copies of Plaintiffs' Photos.

125.    The Welsh Government and Visit Wales had the ability to prevent the Publisher Defendants and other third parties from copying and publishing Plaintiffs' Photos (or unauthorized derivative copies of the Photos) by not distributing such copies to third parties.

126.    When the Publisher Defendants copied, displayed, published, or sold unauthorized copies of Plaintiffs' Photos to promote Wales tourism they were acting at the direction, behest, on behalf of, for, and/or under the control of the Welsh Government and Visit Wales or were encouraged and induced by the Welsh Government and Visit Wales to publish and distribute Plaintiffs' Photos.

127.    The Welsh Government and Visit Wales obtained direct financial benefits from the infringements of the Publisher Defendants, including the promotion of the tourism industry and businesses and achievement of their tourism-related goals.

128.   By copying, distributing, displaying, publishing, and otherwise exploiting Plaintiffs' copyrighted Photos, each of the Defendants infringed Plaintiffs' copyrights and caused Plaintiffs significant injuries, damages, and losses in amounts to be determined at trial.

129.   Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendants' profits attributable to the infringements, and damages suffered as a result of the lack of compensation, credit, and attribution and from any diminution in the value of Plaintiffs' copyrighted works.  Plaintiffs also seek all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

**WHEREFORE,** Plaintiffs respectfully prays for judgment on their behalf and for the following relief:

1.   A preliminary and permanent injunction against Defendants precluding Defendants from copying, displaying, distributing, publishing, selling, or in any way using Plaintiffs' works or any publications, advertisements, brochures, or other promotional materials that include unauthorized uses of Plaintiffs' creative works, and requiring Defendants to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of Plaintiffs' photographs and all copies of the infringing materials described in this complaint, that are in the control or possession or custody of Defendants;

2.   All allowable damages under the Copyright Act, including but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiffs' loss of licensing revenue, Defendants' lack of attribution, and Defendants' profits attributable to infringement;

3.      Plaintiffs' full costs, including litigation expenses, expert witness fees, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

4.      Any other relief authorized by law, including punitive and/or exemplary damages; and

5.      For such other and further relief as the Court deems just and proper.


**JURY TRIAL DEMANDED**
Dated: May 11, 2015
        New York, New York.


                                    Respectfully submitted,


                                    NELSON & McCULLOCH LLP



                        By:_____
                            Danial A. Nelson (DN4940)
                            Kevin P. McCulloch (KM0530)
                            NELSON & McCULLOCH LLP
                            155 East 56th Street, 3rd Floor
                            New York, New York 10022
                            T: (212) 355-6050
                            F: (646) 308-1178
                            dnelson@nelsonmcculloch.com
                            kmcculloch@nelsonmcculloch.com

                            *Attorneys for Plaintiff*