UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                     :

PABLO STAR LTD., *et al.*,               :

                      Plaintiffs,   :

                                    :           15-CV-1167 (JPO)

          -v-                   :

                                    :         <u>OPINION AND ORDER</u>

THE WELSH GOVERNMENT, *et al.*,   :

                      Defendants. :
---------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

    In this case, the Welsh Government, a political subdivision of the United Kingdom, and

various media companies are accused of using two photographs depicting the poet Dylan

Thomas without authorization and in violation of the Copyright Act.  Plaintiffs, owners of the

copyrights in these photos, are Pablo Star Ltd. and Pablo Star Media Ltd. ("Plaintiffs")—two

related companies that are "organized and registered under the laws of Ireland and the United

Kingdom."  (Dkt. No. 26 ¶ 1).  The operative Complaint in this matter was filed on May 11,

2015.  (Dkt. No. 26.)  On June 1, 2015, a motion to dismiss was filed by Defendants the Welsh

Government and Visit Wales ("the Welsh Government"), the Tribune Content Agency, LLC, the

Pittsburgh Post-Gazette, E.W. Scripps, Co., the Journal Media Group, Inc., Treasure Coast

Newspapers, the Richmond Times Dispatch, and the Miami Herald Media Co. (the "Publisher

Defendants") (collectively, "Defendants").  (Dkt. No. 39.)

    Defendants move to dismiss on multiple grounds, including: (1) insufficient service of

process under Federal Rule of Civil Procedure 12(b)(5); (2) improper venue under Rule 12(b)(3);

(3) lack of personal jurisdiction over the Publisher Defendants under Rule 12(b)(2); and (4) lack

of subject-matter jurisdiction under Rule 12(b)(1) because the Welsh Government is immune

from suit under the Foreign Sovereign Immunities Act ("FSIA"),  *see* 28 U.S.C. § 1604.

Because the Welsh Government was not properly served under the FSIA, venue is improper, and the Court lacks personal jurisdiction over all but one of the Publisher Defendants, the motion is, with certain limited exceptions, granted.

## I.    Background[1]

Dylan Thomas, a Welsh-born poet who lived from 1914 to 1953, is best known for his troubled and chaotic personal life and for penning the poem "Do not go gentle into that good night."  *See Dylan Thomas*, The Poetry Foundation, http://www.poetryfoundation.org/bio/dylan-thomas (last viewed March 1, 2016).  Plaintiffs, related media companies "organized and registered under the laws of Ireland and the United Kingdom," own copyrights in two photographs depicting Thomas: "Just Married Dylan Thomas" and "Dylan and Caitlin at Penard" ("the Photos").  (Dkt. No. 26 ¶¶ 1-4.)

Plaintiffs allege that the Welsh Government operates "Visit Wales" as "an administrative division or business enterprise to encourage tourism and otherwise publicize and promote Wales as a tourist destination."  (*Id.* ¶ 15.)  As a part of its effort to promote tourism in Wales, the Welsh Government, "acting through Visit Wales," has "published, displayed, distributed, and otherwise used copies of [the Photos] in advertisements, publications, and other promotional materials directed at and specifically targeted towards the United States generally and New York residents in particular."  (*Id.* ¶¶ 14-16.)  Specifically, Visit Wales operates a website that is accessible in the United States and which has displayed the Photos without authorization.  (*Id.* ¶ 26; Dkt. No. 26-12.)  Visit Wales also created a downloadable map and guide depicting a "Dylan Thomas Walking Tour of Greenwich Village, New York" that included one of the Photos.  (Dkt. Nos. 26-1, 26-2.)

---

[1] All facts in this Section of the Opinion are, unless otherwise noted, drawn from the First Amended Complaint.  (Dkt. No. 26.)

Moreover, Plaintiffs allege that the "Welsh Government provided unauthorized copies of [the Photos] to the [] Publisher Defendants, either directly or by making copies of the [P]hotos available on its various websites." (Dkt. No. 17 at 1.) In turn, the Publisher Defendants "published and displayed [the Photos] on their respective websites and/or print publications." (Dkt. No. 26 ¶ 87.)

The First Amended Complaint asserts claims for copyright infringement against all Defendants, as well as claims for contributory and vicarious infringement against the Welsh Government. (*Id.* ¶¶ 107-129.)

## II.   Discussion

Defendants move to dismiss on several bases, including insufficient service of process, improper venue, lack of personal jurisdiction, and lack of subject-matter jurisdiction. (Dkt. No. 39.) As to subject-matter jurisdiction, the Welsh Government argues that it is immune from suit under the FSIA, which provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Rogers v. Petroleo Brasilero, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Under the FSIA, "a foreign state [is] immune from the jurisdiction of the courts of the United States and of the States except as provided" by certain statutory exceptions. 28 U.S.C. § 1604. The parties do not dispute that the Welsh Government is a "political subdivision" of the United Kingdom and thus that jurisdiction over it can be obtained only in accordance with the requirements of the FSIA. Rather, they contest the applicability of three statutory exceptions to the general rule of foreign sovereign immunity: the commercial activity exception, 28 U.S.C. § 1605(a)(2); the expropriation exception, 28 U.S.C. § 1605(a)(3); and the noncommercial tort exception, 28 U.S.C. § 1605(a)(5).

Determining whether this Court possesses subject-matter jurisdiction over the Welsh Government would require it to reach difficult questions at the frontiers of both copyright law and the law of foreign sovereign immunity.[2]  Because the claims against the Welsh Government in this case must be dismissed on independent grounds, the Court declines to reach the issue of immunity under the FSIA.  *See Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 720 n.6 (2d Cir. 2013) ("We need not consider whether this Court lacks subject-matter jurisdiction by virtue of the Vatican State having immunity under the Foreign Sovereign Immunities Act because in appropriate circumstances, . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction.") (citation and internal quotation marks omitted).

Although "jurisdictional questions ordinarily must precede merits determinations in dispositional order . . . . [subject-matter] [j]urisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem Int'l Co. v. Malasya Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation omitted).  In turn, "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" in the interests of judicial restraint and judicial economy.  *Id.*  For example, when "the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).  So too, courts may decide a "challenge to venue before addressing the challenge to subject-matter jurisdiction" in the interests of adjudicative efficiency.  *Brodt v. Cty of Hartford*, 10 F. Supp. 3d 198, 200 (D.D.C. 2014).  *See Magi XXI*, 714 F.2d at 720 n.6.  Prudential concerns, including the

---

[2] Those questions include whether, and under what circumstances, a foreign corporation can subject a foreign state to suit in the United States for instances of online copyright infringement on the grounds that the infringing content is accessible in the United States via the internet.

interests of judicial restraint and economy, caution against venturing into the subject-matter

jurisdiction terrain in this case when it can be resolved on more familiar territory.  Defendants'

arguments for dismissal based on improper service, lack of personal jurisdiction, and improper

venue are discussed in turn.

A.      **Service of Process**

"The FSIA provides the sole means for effecting service of process on a foreign state."

*Harrison v. Republic of Sudan*, 802 F.3d 399, 403 (2d Cir. 2015).  *See* 28 U.S.C. § 1608(a).  The

statute prescribes four methods of service.  "Plaintiffs must attempt service by the first method,

or determine that it is unavailable, before attempting subsequent methods in the order in which

they are laid out."  *Harrison*, 802 F.3d at 403.  The methods of service offered in the statute are:

> (1) by delivery of a copy of the summons and complaint in accordance
>     with any special arrangement for service . . .
> (2) if no special arrangement exists, by delivery of a copy of the summons
>     and complaint in accordance with an applicable international
>     convention on serve of judicial documents . . .
> (3) if service cannot be made under paragraphs (1) or (2), by sending a
>     copy of the summons and complaint and a notice of suit . . . by any
>     form of mail required a signed receipt, to be addressed and dispatched
>     by the clerk of the court to the head of the ministry of foreign affairs of
>     the foreign state . . .
> (4) if service cannot be made within 30 days under paragraph (3), by
>     sending two copies of the summons and complaint . . . to the Secretary
>     of State in Washington . . . and the Secretary shall transmit one copy
>     of the papers through diplomatic channels to the foreign state . . . .

28 U.S.C. § 1608(a).  "[S]trict adherence to the terms of [§] 1608(a) is required."  *Transaero,*

*Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).  The plaintiff carries the

burden of demonstrating that service on the defendant was proper.  *See Zhang v. Baidu.com Inc.*,

932 F. Supp. 2d 561, 564 (S.D.N.Y. 2013); *Lewis & Kennedy, Inc. v. Permanent Mission of the*

*Republic of Botswana to the United Nations*, No. 05-CV-2591, 2005 WL 1621342, at *2

(S.D.N.Y. July 12, 2005) (collecting cases).

Plaintiffs contend that they served the Welsh Government in accordance with a "special arrangement for service," the first method under the statute, and then—"out of an abundance of caution"—also served the government under the third method by effecting service on the head of the Ministry of Foreign Affairs of the United Kingdom.  28 USC §§ 1608(a)(1)-(3).  (Dkt. No. 45 at 5-6.)

Plaintiffs' attempt to effect service according to the strictures of § 1608(a)(3) is irrelevant.  Service by this method is proper only "if service cannot be made under" either the first or second methods prescribed by the statute.  28 U.S.C. § 1608(a)(3).  Thus, before attempting service under § 1608(a)(3), Plaintiffs needed to exhaust § 1608(a)(2) service, which mandates compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  (Dkt. No. 39 at 6.)  The United Kingdom, of which the Welsh Government is a political subdivision, is a state party to the Hague Service Convention.  *See Caytas v. Maruszak*, No. 06-CV-985, 2009 WL 666768, at *1 (S.D.N.Y. Mar. 6, 2009).  Plaintiffs do not, however, contend that service could not be made under § 1608(a)(1), nor do Plaintiffs explain their failure to comply with, or attempt compliance with, the requirements of § 1608(a)(2).  Therefore, even if service was effected under § 1608(a)(3), Plaintiffs' failure to exhaust service under § 1608(a)(2) renders the attempted § 1608(a)(3) service improper.

The question, then, is whether Plaintiffs effected service "in accordance with any special arrangement for service" under § 1608(a)(1).  Plaintiffs contend that "arrangements for service were made prior to suit with counsel for the Welsh Government."  (Dkt. No. 45 at 5.)  In support, Plaintiffs submit an email exchange between counsel for the Welsh Government and Plaintiffs' counsel, in which Plaintiffs contend that "the Welsh Government instructed Plaintiffs to effect service according to the requirements of the 1947 UK Crown Proceedings Act."  (Dkt. No. 47-1;

Dkt. No. 45 at 5.)  In the email exchange, Plaintiffs' counsel asks "if [opposing counsel] [is] authorized to accept service on behalf of [his] client and if [he would] be willing to do so electronically."  (Dkt. No. 7-1 at 3.)  In response, the Welsh Government's counsel states: "We are not authorized to accept service.  Proceedings should be served upon the Welsh Ministers, addressed to the Director of Legal Services, Mr[.] Jeffrey Godfrey. This is in line with the provisions of the Crown Proceedings Act 1947."  The best reading of this exchange is that counsel for the Welsh Government directed Plaintiffs' counsel to comply with the rules of service under the laws of the United Kingdom, not that counsel for the parties came to an agreement as to a special arrangement for service.  Indeed, because the Welsh Government's counsel disclaimed that it was authorized to accept service, the most natural construction of this communication is neither that counsel had power to agree to a special arrangement on his client's behalf, nor that he did so.

Courts require a more definite manifestation of agreement when determining that a special arrangement has been made, such as a contract provision specifying a method of service in the event of suit.  *See Matter of Arbitration Between Space Systems/Loral, Inc. v. Yuzhnoye Design Office*, 164 F. Supp. 2d 397, 402-403 (S.D.N.Y. 2001) (collecting cases); *Matter of Arbitration Between Trans Chemical Ltd. and China Nat. Mach. Import and Export Corp.*, 978 F. Supp. 266, 298-299 (S.D. Tex. 1997); *Copelco Capital, Inc. v. General Consul of Bolivia*, 940 F. Supp. 93, 95 (S.D.N.Y. 1996).  Here, the record does not support the conclusion that there was a special arrangement for service between the parties.  *See Angellino v. Royal House Al-Saud*, No. 10-519, 2011 WL 9933485, at *2 (D.D.C. Apr. 29, 2011) (holding that the record evidence did not demonstrate the existence of a special arrangement for service), *rev'd on other grounds sub nom. Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 776-777 (D.C. Cir. 2012); *see also*

*Smith v. Gnassingbe*, No. 07-4167, 2009 WL 3300037, at *2 (D. Minn. Oct. 13, 2009) (finding that the existence of a special arrangement was not supported by the record).

Because service in "strict adherence to the terms of [§] 1608(a) is required" and Plaintiffs did not effect service in accordance with the statute, Plaintiffs' claims against the Welsh Government are dismissed for improper service.

### B.   Personal Jurisdiction over the Publisher Defendants

Defendants also argue that the Court lacks personal jurisdiction over Publisher Defendants the Miami Herald Media Co., the Richmond Times Dispatch, Treasure Coast Newspapers, E.W. Scripps, Co., Journal Media Group, and the Pittsburgh Post-Gazette.[3]

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing of personal jurisdiction over all defendants. *Cortlandt Street Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-CV-01568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (Oetken, J.) (quoting *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). A *prima facie* case for personal jurisdiction involves three elements: "(1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles." *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014) (Oetken, J.) (citations and internal quotation marks omitted).

---

[3] Because the Complaint contains no specific allegations related to the Pittsburgh Post-Gazette, Plaintiffs have failed to make a *prima facie* showing that this Court has personal jurisdiction over it. Accordingly, the motion to dismiss for lack of personal jurisdiction as to the Pittsburgh Post-Gazette is granted. (See Dkt. No. 39 at 14 n.15.)

Plaintiffs can make such a showing through the submission of affidavits and supporting materials that contain "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Cortlandt*, 2015 WL 5091170, at *2 (quoting *S.N. Eng. Tel. Co. v. Glob. NAPS, Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). "[A]ll factual doubts or disputes are to be resolved in the plaintiff's favor." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015). However, the Court need not accept as true allegations controverted by the defendant's affidavits, *MacDermid*, 702 F.3d at 727, nor need it accept "a legal conclusion couched as a factual allegation." *Cortlandt*, 2015 WL 5091170, at *2 (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). *See Allojet PLC v. Vantage Associates*, No. 04-CV-5223, 2005 WL 612848, at *3 (S.D.N.Y. Mar. 15, 2005) (Where a defendant "rebuts a plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation may be deemed refuted.") (citation, alterations and internal quotation marks omitted).

Courts may exercise either specific or general jurisdiction over a defendant. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). "General jurisdiction renders a defendant amendable to suit on all claims." *Cortlandt*, 2015 WL 5091170, at *2 (citations omitted). Specific jurisdiction subjects a defendant to suit only on claims that "arise from conduct related to the forum." *Id.* In diversity cases, "the breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Reich*, 38 F. Supp. 3d at 454 (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) (alterations omitted)). "In litigation arising under federal statutes that do not contain their own jurisdictional provisions, such as the Copyright Act under which suit is brought in the case at bar, federal courts are to apply the personal jurisdiction rules of the forum state." *Penguin Grp.*, 609 F.3d at 35. Thus, to determine whether it has personal jurisdiction, the Court looks to the laws of the State of New York. The Court then

9

considers whether the exercise of personal jurisdiction is consistent with due process. *See Daimler*, 134 S. Ct. at 751.

### 1.    General Jurisdiction

Under New York law, "a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F. 3d 88, 95 (2d Cir. 2000) (citation omitted). A corporation is "doing business" in New York when it conducts business in the state "not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (citation omitted). Plaintiffs who make a showing of such sustained business activity satisfy the requirements of New York law. *Cortlandt*, 2015 WL 5091170, at *3.

However, to establish general jurisdiction, a plaintiff must also satisfy the requirements of the Due Process Clause. *Daimler*, 134 S. Ct. at 751. As this Court and others have noted, "it is uncertain if New York's 'doing business' jurisdiction remains viable in light of *Daimler*." *Cortlandt*, 2015 WL 5091170, at *3 (citing *Reich*, 38 F. Supp. 3d at 454-55 (collecting cases)); *see also Sonera Holding B.V. v. Cukorova Holding A.S.*, 750 F.3d 221, 224 n.2 (2d Cir. 2014); *SPV OSUS Ltd. v. UBS AG*, No. 14-CV-9744, 2015 WL 4394955, at *4 (S.D.N.Y. 2015) (Rakoff, J.). "[G]eneral jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in that state." *Sonera Holding*, 750 F.3d at 223. After *Daimler*, there are "very limited circumstances" in which a corporation's contacts with a state are sufficient to satisfy this test. *Cortlandt*, 2015 WL 5091170, at *3 (noting that a cabined conception of general jurisdiction "protect[s] the liberty interests of defendants [and] provid[es] them with 'fair warning'").

10

Plaintiffs have not alleged facts that, if true, would be sufficient to confer general jurisdiction over the Defendants.  The Complaint does not allege that any of the Publisher Defendants are incorporated in, or have a principal place of business in, New York.  (See Dkt. No. 26 ¶¶ 36-87.)  Nor have Plaintiffs alleged contacts with New York so substantial that this is the "'exceptional case' in which a corporation is 'essentially at home' in a foreign forum."[4] *SPV OSUS*, 2015 WL 4394955, at *4 (citing *Daimler*, 134 S. Ct. at 761 n.19).

### 2.      Specific Jurisdiction

"Specific jurisdiction requires a connection between the forum and the underlying controversy, most often 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Cortlandt*, 2015 WL 5091170, at *5 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  Plaintiffs contend that the Publisher Defendants are subject to specific jurisdiction under subsection (a)(3) of New York's long-arm statute, N.Y. C.P.L.R. ("CPLR") § 302.[5]

CPLR § 302(a)(3) permits a court to exercise personal jurisdiction in cases where a non-domiciliary "commits a tortious act [outside] the state causing injury to person or property within the state," but only where the party "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  CPLR § 302(a)(3).

---

[4] Moreover, Plaintiffs have waived any argument rooted in general jurisdiction by failing to advance such a theory in their papers.

[5] In their Opposition, Plaintiffs also cite language from a separate provision of New York's long-arm statute, CPLR § 302(a)(1), but neither provide a theory as to this provision's applicability nor cite facts that could support such a theory.  (*See* Dkt. No. 45 at 21-22.)  Absent such assertions, Plaintiffs have offered no basis on which to conclude that CPLR § 302(a)(1) applies.

Defendants do not contest that the acts of copyright infringement alleged would constitute "tortious acts" performed by the Publisher Defendants outside New York.  *See Royalty Network Inc. v. Dischant.com, LLC*, 638 F. Supp. 2d 410, 423 (S.D.N.Y. 2009).  (Dkt. No. 39 at 21-22.)  Rather, the parties dispute whether that tort "caus[ed] injury to person or property within the state," CLPR § 302(a)(3), and whether the requirements of §§ 302(a)(3)(i) or 302(a)(3)(ii) have been met.

Defendants argue that "no injury was caused to a person within New York" because Plaintiffs "are admittedly foreign companies and not New York copyright owners."  (Dkt. No. 39 at 22.)  To be sure, Plaintiffs have "levied allegations of a form of infringement that works an injury that is virtually impossible to localize—the uploading and making available of copyrighted materials, free of charge, to anyone with an Internet connection."  *Troma Entm't, Inc. v. Centennial Pictures Inc.,* 729 F.3d 215, 220 (2d Cir. 2013).  Despite this difficulty, Plaintiffs are not relieved of "the obligation . . . to allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights."  *Id.* at 220.  It is now established that "[a] *New York copyright owner* alleging infringement sustains an in-state injury pursuant to CPLR [§] 302(a)(3)(ii) when its [copyrighted work] is uploaded without permission onto the Internet for public access."  *Penguin Grp.*, 640 F.3d at 500 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddah*, 946 N.E.2d 159, 163 (N.Y. 2011) (emphasis added)).  But Plaintiffs are companies "organized and registered under the laws of Ireland the United Kingdom," (Dkt. No. 26 ¶ 1), and they do not allege that they "reside" in New York, even if they conduct some business here.  (*See* Dkt. No. 46).  The question is whether, in a copyright infringement case, a copyright owner who neither resides in New York nor has its principal place of business in New York, may assert that New York is the situs of injury for purposes of determining long-arm jurisdiction under CPLR § 302(a)(3).

There is considerable authority for the proposition that "[t]he torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held."  *McGraw-Hill Co. v. Ingenium Tech. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005); *see Capitol Records, LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d 349, 363 (S.D.N.Y. 2009); *Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.*, No. 04-CV-5002, 2005 WL 357125, at *1 (S.D.N.Y. Feb. 14, 2005); *see also* 3-12 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 12.01 (2015) ("Nimmer") ("Because a copyright is an intangible, incorporeal right, it has no *situs* apart from the domicile of the proprietor."); *cf. Lewis v. Madej*, No. 15-CV-2676, 2015 WL 6442255, at *4 (S.D.N.Y. Oct. 23, 2015) (collecting cases standing for the proposition that "the tort of trademark infringement causes injury in the state where the allegedly infringed intellectual property is held.").  Plaintiffs contend that a "copyright owner [also] suffers a cognizable injury in the market where the infringement occurred in the form of lost potential sales."  (Dkt. No. 45 at 12.)  If follows, they argue, that the "injury [in this case] occurred in . . . New York specifically due to lost or threatened business" as Plaintiffs were "deprived [of] the potential opportunity to license and publish their copyrighted photos here." (Dkt. No. 45 at 13.)

Plaintiffs' argument fails for two reasons. First, as a general matter, when a defendant is accused of posting copyrighted material on a website accessible to anyone with an internet connection, Plaintiffs' theory of "market harm" would define the "market" as anywhere that the internet is accessible.  Online copyright infringement would thus *always* cause injury in New York, no matter how thin a plaintiff's connection to the forum.  Such a rule is not consonant with a plaintiff's obligation under New York law to "allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property."  *Troma*, 729 F.3d at 220.  Moreover,

the New York Court of Appeals has itself cast doubt on the viability of a market-based approach

to locating injury in the context of online infringement:

> In cases of this nature, identifying the situs of injury is not as simple as
> turning to "the place where plaintiff lost business," because there is no
> singular location that fits that description. . . . As a result, although it may
> make sense in traditional commercial tort cases to equate a plaintiff's
> injury with the place where its business is lost or threatened, it is illogical
> to extend that concept to online copyright infringement cases where the
> place of uploading is inconsequential and it is difficult, if not impossible,
> to correlate lost sales to a particular geographic area.

*Penguin Grp.*, 946 N.E.2d at 164 (citation omitted).  Second, on the facts of this case, even if the

Court were to try to identify a single location where this alleged injury is felt, that location would

not be New York.  The most concrete "lost potential sales" identified by Plaintiffs are the fees

that the Publisher Defendants would have paid Plaintiffs for the right to use the Photos—not

foregone sales to New York consumers who merely viewed the Photos online.  To the extent that

this harm causes injury in any single place—a dubious proposition—the location of that injury is

not New York.

For these reasons, a copyright owner that neither resides in New York nor has its

principal place of business in New York may not assert that New York is the situs of injury in an

online copyright infringement case where, as here, the basis for locating the injury in New York

is simply that New Yorkers can access the infringing content online.  Because Plaintiffs have not

alleged that a tort "caus[ed] injury to person or property within the state" under CLPR

§ 302(a)(3), this Court does not have personal jurisdiction over the Miami Herald Media Co.,

Richmond Times Dispatch, Treasure Coast Newspapers, E.W. Scripps, Co., or the Journal Media

Group, Inc.[6]  Accordingly, the motion to dismiss for lack of personal jurisdiction is granted as to

---

[6] Because the Court determines it does not have personal jurisdiction over these defendants
pursuant to New York's long-arm statute, it need not decide whether the assertion of jurisdiction
would otherwise comport with due process.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239,

these defendants.  But because the Tribune Content Agency has not joined in the motion to

dismiss for lack of personal jurisdiction, claims against it are not dismissed.

> ### C.    Venue

Defendants also move pursuant to Rule 12(b)(3) to dismiss claims against the Welsh

Government for improper venue.  *See* Fed. R. Civ. P. 12(b)(3).  As relevant here, a civil action

against a foreign state may be brought:

> (1) in any judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated . . . .
> (3) in any judicial district in which the agency or instrumentality is
> licensed to do business or is doing business, if the action is brought
> against an agency or instrumentality of a foreign state as defined in
> section 1603(b) of this title; or
> (4) in the United States District Court for the District of Columbia if the
> action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).  Plaintiffs claim that venue is proper under both §§ 1391(f)(1) and

1391(f)(3).  "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts

outside the complaint to determine whether venue is proper.  The Court must draw all reasonable

inferences and resolve all factual conflicts in favor of plaintiff.'"  *Concesionaria DHM, S.A. v.

Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *E.P.A. ex rel. McKeown v.

Port Authority*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

First, Plaintiffs argue that venue is proper because a "substantial part of the events or

omissions giving rise to the claim occurred" in this judicial district.  (Dkt. No. 45 at 20-21.)  As

the Second Circuit has noted, the court must "take seriously the adjective 'substantial.'"  *Gulf

Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir. 2005) (interpreting the identical provision of

---

242 (2d Cir. 2007) (a court conducts the due process analysis "if, but only if," it has concluded
that jurisdiction is appropriate under New York law.)

28 U.S.C. § 1391(b)(2)); *see Comm'ns Import Export S.A. v. Republic of the Congo*, No. 11-CV-6176, 2012 WL 1468486, at *2 (S.D.N.Y. Apr. 27, 2012) (applying *Gulf* in the context of 28 U.S.C. § 1391(f)).  "That means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  *Gulf*, 417 F.3d at 357 (emphasis in original).

Conclusory statements aside, Plaintiffs have not alleged that *any* of the specific conduct at issue occurred in this district, let alone a "substantial part" of it.  Neither Plaintiffs nor the Welsh Government reside in the United States.  The only concrete infringing materials that Plaintiffs can identify are materials that were available online.  (*See* Dkt. Nos. 26-1, 26-2, 26-4, 26-12.)  But the fact that an infringing material is accessible via the internet in a jurisdiction is hardly sufficient to conclude that this infringement *occurred* in this district for the purposes of venue.  Indeed, all of the Welsh Government's relevant conduct—including the creation and maintenance of the websites at issue—appears to have occurred abroad.[7]  On this basis, the Court cannot conclude that a substantial part of the events giving rise to this claim occurred in New York.

---

[7] Although no such allegation is contained the First Amended Complaint, Plaintiffs argue that "visitwales.com was created and is maintained on servers here in the United States."  (Dkt. No. 45 at 18.)  The Holt declaration offered by Defendants avers that the "computer servers for the Welsh Government, including those used for its tourism promotion activities," such as visitwales.com, "are created and maintained in the United Kingdom."  (Dkt. No. 49 ¶ 6.)  So too, "the content of the site has always been created and maintained on servers located in the United Kingdom."  (*Id.*).  In support, Defendants submit a copy of a "domain search" for visitwales.com which lists the "Registrant Contact" and "Admin Contact" as the Welsh Government.  (Dkt. No. 39-5.)  Plaintiffs' response, which is based entirely on the "domain search" document submitted by Defendants, is that it actually establishes that the servers for visitwales.com are located in the United States, in large part because a Delaware company is listed as the "Tech Contact."  (*Id.*)  Even assuming, as Plaintiffs do, that the location of servers is relevant to determining whether the Welsh Government performed an act in the United States, there is no basis on which to conclude that the servers for visitwales.com are maintained in this country, let alone in this judicial district.

Plaintiffs also contend that venue is proper under § 1391(f)(3), which provides for venue "in any judicial district in which the agency or instrumentality [of a foreign state] is licensed to do business or is doing business."  28 U.S.C. § 1391(f).  In turn, Plaintiffs argue that the Welsh Government is an "agency or instrumentality" of the United Kingdom by virtue of being a "political subdivision" of the United Kingdom.  Plaintiffs rely on 28 U.S.C. § 1603(b), which defines an "agency or instrumentality of a foreign state" as, in part, "an organ of a foreign state or political subdivision thereof."  28 U.S.C. § 1603(b).  But this provision means that an "agency or instrumentality" may be *either* the organ of a foreign state *or* the organ of a political subdivision—not that a political subdivision is, itself, an agency or instrumentality.  Indeed, Plaintiffs' reading is foreclosed by the plain text of the statute.  *See Gates v. Victor Fine Foods*, 54 F.3d 1457, 1461-1462 (9th Cir. 1995).  For example, the very next clause of § 1603(b) clarifies that an "agency or instrumentality" includes "an organ . . . a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof."  Under Plaintiffs' construction, this second mention of "or political subdivision" would be entirely redundant.[8]

---

[8] Although Plaintiffs do not cite Visit Wales as a basis for venue, and thus have waived any such argument, Plaintiffs separately seek to assert claims against Visit Wales as an "agency or instrumentality" of the Welsh Government.  (Dkt. No. 45 at 6.)  Under the FSIA, an "agency or instrumentality of a foreign state" means, as relevant here, any entity that (1) "is a separate legal person, corporate or otherwise" and (2) "is an organ of a foreign state or political subdivision thereof."  28 U.S.C. § 1603(b).  Whether a foreign entity is a "separate legal person" under the statute depends on "whether the core functions of the foreign entity are predominantly governmental or commercial."  *Garb v. Republic of Poland*, 440 F.3d 579, 593-594 (2d Cir. 2006).

    Defendants argue that Visit Wales "is not a proper defendant" because it "is not a separate legal entity" but rather "a trade name used by the Welsh Government."  (Dkt. No. 39-15 ¶ 6.)  Defendants have also submitted a declaration from Rob Holt, the Deputy Director of Tourism Development in the Department for Economy, Science and Transport in the Welsh Government, in which he avers that Visit Wales "is not a separate legal entity" but "merely the name of the administrative division of the Welsh Government charged with carrying out the Government's policy to promote tourism to Wales."  (Dkt. No. 49 ¶ 4.)  Finally, Plaintiffs

Because venue in this judicial district is improper under § 1391(f), the motion to dismiss claims against the Welsh Government for improper venue is granted.

### D.      Remaining Issues

Having dismissed claims against the Welsh Government and all the other Publisher Defendants, only the Tribune Content Agency remains as a defendant in this matter.    As a result, two lingering issues must be addressed.

First, Defendants charge that Pablo Star Ltd. lacks standing to pursue any copyright claims against Defendants because it "assigned ownership of the copyrights at issue to Pablo Media" and "only retained the right to sue for past copyright infringement against certain specific parties (the names of which are redacted)."  (Dkt. No. 39 at 23.)  Defendants concede that one of the two Plaintiffs—either Pablo Star Ltd. or Pablo Star Media—has standing, and thus that this case may proceed irrespective of the Court's determination on the subject of Pablo Star Ltd.'s standing.  Further discovery and briefing on the subject of Pablo Star Ltd.'s standing to pursue its claims is necessary for the Court to resolve this question.  The motion to dismiss for lack of standing is, therefore, denied without prejudice to renewal of this argument following discovery.

Second, Plaintiffs have also moved for a preliminary injunction against Defendants that would enjoin them from "continuing to publish, display, distribute, and otherwise use Plaintiff's copyrighted photographs" and would "order the impoundment (or quarantine) of any materials in

---

concede that Visit Wales is part of the Department for Economy, Science and Transport.  (Dkt. No. 45 at 6.)  The Court concludes that the "*core function*" of Visit Wales—namely, tourism promotion—is "predominantly governmental" and not "commercial."  *See Garb*, 440 F.3d at 594-597.  It follows that Visit Wales is not a separate legal person and thus not an "agency or instrumentality" under the FSIA and that the proper defendant in this case is the Welsh Government itself.  Even were venue and service of process proper, this conclusion would lead the Court to dismiss all claims against Visit Wales.

Defendants' possession . . . that include copies of the subject photos."  (Dkt. No. 17 at 1.)  The "cardinal principle that the district court is 'powerless to proceed' in the absence of personal jurisdiction applies with no less force when the court is presented with a motion for a preliminary injunction."  *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 24 (D.D.C. 2012) (citing *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).  Therefore, the only question is whether a preliminary injunction against the Tribune Content Agency is appropriate.

A preliminary injunction in a copyright case may issue "upon a finding of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010).  "[C]ourts must not simply presume irreparable harm."  *Id.* at 82 (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006)).  Rather, "plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm."  *Id.*  In this case, Plaintiffs have failed to make such a showing.  The submissions contain no evidence of a connection between concrete harm that Plaintiffs have or might suffer and the Tribune Content Agency's alleged infringing use.  *Esbin & Alter v. Sabharwal, Globus, & Lin, LLP*, 403 F. App'x 591, 593 (2d Cir. 2010).  Moreover, Plaintiffs have not alleged, let alone submitted evidence to show, that the Tribune Content Agency continues to use the Photos.  *Getty Images (US), Inc. v. Microsoft Corp.*, 61 F. Supp. 3d 296, 300 (S.D.N.Y. 2014).  As a result, Plaintiffs "cannot demonstrate that it will suffer any irreparable harm if an injunction is not issued."  *Id.*  For this reason, the motion for a preliminary injunction is denied.

## III.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  All claims against the Welsh Government are dismissed for improper service

and improper venue.  All claims against Publisher Defendants the Miami Herald Media Co., the Richmond Times Dispatch, Treasure Coast Newspapers, E.W. Scripps, Co., Journal Media Group, and the Pittsburgh Post-Gazette are dismissed for lack of personal jurisdiction. Defendants' motion to dismiss the claims of Plaintiff Pablo Star Ltd. for lack of standing is denied without prejudice.

Plaintiffs' motion for a preliminary injunction is DENIED.  As a result, Defendants' motion to stay is DENIED as moot.

Plaintiffs shall, within 10 days of the date of this order, advise the Court in writing why the claims against Defendants Travel Squire and Colorado News Feed should not be dismissed for failure to prosecute.

The sole remaining defendant, Tribune Content Agency, shall file an answer to the First Amended Complaint within 21 days of the date of this Order.

The Clerk of Court is directed to close the motions at docket numbers 16, 22, 25, and 38.


SO ORDERED.


Dated: March 16, 2016
       New York, New York

J. PAUL OETKEN
United States District Judge

20