UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PABLO STAR LTD., *et al.*,

                Plaintiffs,

-v-

THE WELSH GOVERNMENT, *et al.*,

                Defendants.

15-CV-1167 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiffs Pablo Star Ltd. and Pablo Star Media Ltd., two related companies organized and registered under the laws of Ireland and the United Kingdom, own the copyrights to two photographs depicting the poet Dylan Thomas. Plaintiffs sued the Welsh Government and various media companies for infringement of their copyrights in these two photographs under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* By an Opinion and Order dated March 16, 2016, this Court dismissed all claims against Defendant the Welsh Government for improper service and improper venue. (Dkt. No. 53.) Plaintiffs moved for reconsideration of that decision, which the Court denied. (Dkt. No. 65.) Further familiarity with the facts and procedural history of this case is presumed. Plaintiffs now move for leave to file a second amended complaint ("SAC") against the Welsh Government.

    Federal Rule of Civil Procedure 15(a)(2) provides that, absent circumstances inapplicable to this case, "'a party may amend its pleading only with the opposing party's written consent or the court's leave' and instructs that '[t]he court should freely give leave when justice so requires.'" *McKethan v. N.Y. State Dep't of Corr. Servs.*, No. 10 Civ. 3826, 2012 WL 2333415, at *1 (S.D.N.Y. June 19, 2012) (alteration in original) (quoting Fed. R. Civ. P. 15(a)(2)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Id.* (alteration

1

in original) (quoting *Barbata v. Latamie*, No. 11 Civ. 7381, 2012 WL 1986981, at *1 (S.D.N.Y. June 4, 2012)). "Leave to amend may be denied for 'good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Id.* (quoting *Barbata*, 2012 WL 1986981, at *1).

Defendant Tribune Content Agency, LLC contends that leave to file the proposed SAC should be denied as futile. Amendment is futile "where the proposed amended complaint would not withstand a motion to dismiss." *Itakura v. Primavera Galleries Inc.*, No. 08 Civ. 9027, 2009 WL 1873530, at *2 (S.D.N.Y. June 30, 2009) (alterations omitted) (quoting *Howard v. City of New York*, No. 02 Civ. 1731, 2006 WL 2597857, *8 (S.D.N.Y. Sept. 6, 2006)). "As when considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor." *Artists Rights Enf't Corp. v. Estate of King*, No. 16 Civ. 1121, 2017 WL 2062988, at *3 (S.D.N.Y. May 15, 2017) (quoting *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016)). Therefore, the question is whether the proposed SAC would survive a motion to dismiss by the Welsh Government for improper venue.

As the Court has previously explained, *see Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 608–10 (S.D.N.Y. 2016), in a civil action against a foreign state, venue is proper:

> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . . .
>
> (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or
>
> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).

Plaintiffs contend that, based on the allegations in the proposed SAC, venue is proper under § 1391(f)(1), the "substantial-part-of-the-claim" subsection of the venue statute.[1] "'Substantiality' in the venue context is a more qualitative than quantitative inquiry, 'determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.'" *Rankel v. Kabateck*, No. 12 Civ. 216, 2013 WL 7161687, at *4 (S.D.N.Y. Dec. 9, 2013) (quoting *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 432–33 (2d Cir. 2005)).

To assess whether "a substantial part of the events or omissions giving rise to the claim occurred" in this district, courts apply a two-part test:

> First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether "significant events or omissions material to [those] claim[s] . . . have occurred in the district in question."

*Daniel*, 428 F.3d at 432 (alterations in original) (citation omitted) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).[2]

As to the first prong, the essence of Plaintiffs' claims for copyright infringement consists of the Welsh Government's unauthorized use of the two photographs as part of its campaign to

---

[1] Plaintiffs also attempt to establish venue under the Copyright Act's venue provision, 28 U.S.C. § 1400(a). (*See* Dkt. No. 81 at 2.) Defendant correctly points out that the Court has already held in this case that § 1400(a) does not provide a basis for venue against the Welsh Government. (Dkt. No. 78 at 6.) The Court sees no reason to conclude otherwise now.

[2] The plaintiff in *Daniel* was attempting to establish venue under § 1391(b)(2), which uses the same substantiality language as § 1391(f). Therefore, the Court applies the same two-part test under both subsections of the venue statute. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993) ("[L]anguage used in one portion of a statute . . . should be deemed to have the same meaning as the same language used elsewhere in the statute . . . .").

3

promote tourism to Wales.  A claim under the Copyright Act has two elements: (1) valid copyright ownership and (2) unauthorized copying.  *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  "'The word copying is shorthand for the infringing of any of the copyright owner's five exclusive rights' enumerated in 17 U.S.C. § 106," *Pearson Educ., Inc. v. Ishayev*, 963 F. Supp. 2d 239, 246 (S.D.N.Y. 2013) (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 117 (2d Cir. 2010)), including the rights "(1) to reproduce the copyrighted work . . . ; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; . . . [and] (5) . . . to display the copyrighted work publicly."  17 U.S.C. § 106.

Having identified the nature of Plaintiffs' claims, the Court must next determine whether significant events or omissions material to the Welsh government's alleged unauthorized copying plausibly occurred in this district.  If so, then venue is adequately alleged under § 1391(f).

Plaintiffs' factual allegations include the following: The Welsh Government has a permanent presence in New York and maintains offices in New York City.  (Dkt. No. 75-1 ("SAC") ¶¶ 16, 18.)  The Welsh Government created infringing "promotional materials" such as "advertisements, brochures, pamphlets, [and] New York City walking tour maps," which included unauthorized copies of Plaintiffs' photographs.  (SAC ¶ 22; *see also* Dkt. No. 75-2 ("Dylan Thomas Walking Tour of Greenwich Village, New York," which uses one of Plaintiffs' photographs).)  In addition, the Welsh Government created display panels for an exhibition called "*Welsh in America*," which made unauthorized use of Plaintiffs' photographs.  (SAC ¶ 23; Dkt. No. 75-3 at 6 ("A 14-panel exhibition on the history of the Welsh in America is available for loan at no charge from the Welsh Assembly Government in New York.").)  Prior to creating

4

these materials, the Welsh Government drafted a report detailing its strategies to promote tourism to Wales, and identified the United States as one of its key target markets. (SAC ¶¶ 32–34.)

Moreover, Plaintiffs allege, on information and belief,[3] that "the Welsh Government distributed and loaned out copies" of the infringing promotional materials from its offices in New York City, and loaned out and "publicly displayed the infringing panels of the *Welsh in America* exhibition in New York City." (SAC ¶¶ 27–29.)

These allegations, taken as true, plausibly establish that the Welsh Government undertook significant actions in this district that are material to its allegedly unauthorized copying of Plaintiffs' photographs. For example, to the extent that the Welsh Government distributed or loaned out its infringing *Welsh in America* exhibit from its New York office, or

---

[3] Defendant challenges the propriety of Plaintiffs' information-and-belief allegations. This challenge, however, is unavailing.

The law of the Second Circuit is clear on this matter: "The *Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC*, 604 F.3d at 120 (internal citations omitted) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)).

Here, both of the *Arista Records* rationales support the appropriateness of Plaintiffs' information-and-belief pleading. First, Plaintiffs' allegations about the Welsh Government's conduct in this district are plausible in light of the other factual allegations in the SAC and the attached exhibits. The Welsh Government has offices in New York City (SAC ¶ 18) and created promotional materials aimed at encouraging residents of this district to travel to Wales (SAC ¶ 42). Moreover, the *Welsh in America* exhibit expressly states that it is available for loan. (Dkt. No. 75-3 at 6.) Drawing inferences from these facts in the light most favorable to Plaintiffs, it is plausible that the Welsh government distributed, displayed, or lent out infringing materials, including the *Welsh in America* exhibit, from its offices in this district.

Second, without the benefit of discovery, it is likely that, as Plaintiffs allege, "information regarding the scope of the [infringing] use of Plaintiffs' photographs by the Welsh Government . . . remains in their sole possession." (SAC ¶ 84.) The Court concludes that the information-and-belief pleading in the SAC is permissible.

displayed that exhibit publicly in New York City, the Welsh Government committed infringing acts in this district. *See* 17 U.S.C. § 106(3), (5).[4] The same is true for any hard-copy distribution of the map of the "Dylan Thomas Walking Tour of Greenwich Village, New York." (*See* Dkt. No. 75-2.)[5] The Court concludes that leave to amend would not be futile.[6]

---

[4] Moreover, Plaintiffs also allege, on information and belief, that the Welsh Government designed and created the infringing materials at its offices in this district. (SAC ¶ 24.) In a previously filed declaration, Rob Holt, Deputy Director of Tourism Development, Major Events and Sports Policy for the Welsh Government, averred that "strategic and action plans for tourism were developed by the [Welsh] Government in Wales, not the [U]nited States." (Dkt. No. 49 ¶ 5.) *See Rankel*, 2013 WL 7161687, at *2 (explain that on a motion to dismiss for improper venue, "the Court may rely on materials outside of the pleadings, such as affidavits.").

But Holt said nothing about where the Welsh Government created its promotional materials. It is therefore plausible that promotional materials like the Greenwich Village walking tour map and the *Welsh in America* exhibit, which explicitly reference New York City, were created in the Welsh Government's New York City offices. Creation of these materials also constitutes significant action material to Plaintiffs' claims. *See* 17 U.S.C. § 106(2).

[5] Defendant correctly points out that the exhibits to the SAC appear to be documents accessed via the internet. (Dkt. No. 78 at 10.) It is also true that on Plaintiffs' motion for reconsideration, the Court concluded that "venue in this district remain[ed] improper" because the "gravamen of Plaintiffs' claims for which any evidence has been presented still concerns online materials." *Pablo Star Ltd. v. Welsh Gov't*, No. 15 Civ. 1167, 2016 WL 2745849, at *2 (S.D.N.Y. May 11, 2016). The aforementioned Holt Declaration states that "[t]he computer servers for the Welsh Government, including those used for its tourism promotion activities, are created and maintained in the United Kingdom." (Dkt. No. 49 ¶ 6.) And therefore, any alleged online infringement "was committed in [the United Kingdom] where the website was created and is maintained." *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 362 (S.D.N.Y. 2009).

Nonetheless, the Court concludes that the SAC remedies the exclusive reliance upon online documents which previously doomed the first amended complaint and motion for reconsideration. First, although Plaintiffs may have accessed the allegedly infringing materials online, it is certainly plausible to infer that hard copies exist in this district—especially copies of the walking tour map and the *Welsh in America* exhibit. Second, reconsideration was not warranted where Plaintiffs could not show, based on any new evidence, that the *Welsh in America* display was "ever exhibited in, or distributed from, this district." *Pablo Star Ltd.*, 2016 WL 2745849, at *2. But unlike at the motion-for-reconsideration stage, the Court now must draw all inferences in favor of Plaintiffs. As explained above, the deficiencies addressed in the Court's opinion on reconsideration have been remedied by the plausible information-and-belief allegations of the SAC.

[6] In one sentence, Defendants argue that leave to amend is futile in light of the Welsh Government's previously raised argument for immunity under the Foreign Sovereign

None of Defendants' other arguments against leave to amend are persuasive. There is no evidence that the motion is brought in bad faith, nor can the Court conclude that Plaintiffs unduly delayed in filing it. (*See* Dkt. No. 78 at 12.) In fact, this case was stayed for nearly a year at the request of Defendant Tribune Content Agency, LLC. (*See* Dkt. No. 86.)

For the foregoing reasons, Plaintiffs' motion for leave to file a Second Amended Complaint is GRANTED. Plaintiffs shall file their second amended complaint within two weeks of the date of this order. Defendants are directed to answer or otherwise respond to the Second Amended Complaint within three weeks after it is filed.

For substantially similar reasons, Plaintiffs' request to add individual John Doe Defendants to their second amended complaint (Dkt. No. 95) is also granted. The Clerk of Court is directed to close the motion at Docket Number 95.

SO ORDERED.

Dated: May 1, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

Immunities Act. (*See* Dkt. No. 78 at 11–12.) At this stage, the Court cannot conclude that the immunity defense is certain to prevail, especially on the basis of one conclusory sentence. The Welsh Government will be free to raise any immunity defense on its own behalf in response to the SAC.