Kevin P. McCulloch (KM0530)
Nate A. Kleinman (NK3168)
The McCulloch Law Firm, PLLC
501 Fifth Avenue, Suite 1809
New York, New York 10017
T: (212) 355-6050
F: (206) 219-6358
*Counsel for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PABLO STAR LTD.; PABLO STAR MEDIA LTD., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE WELSH GOVERNMENT; TRIBUNE CONTENT AGENCY, LLC; and JOHN DOE'S 1-10, <br><br> *Defendants*. | Case No.: 15-cv-1167 (JPO) <br><br> Hon. J. Paul Oetken <br><br> **SECOND AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL** |

Plaintiffs Pablo Star Ltd. and Pablo Star Media Ltd., by and through undersigned counsel, pursuant to Rules 8 and 15(a) of the Federal Rules of Civil Procedure and the Local Rules of this Court, hereby demand a trial by jury of all claims and issues so triable and, for their Second Amended Complaint against Defendants The Welsh Government; Tribune Content Agency, LLC; and John Doe's 1-10, state as follows:

### PLAINTIFFS AND THE SUBJECT WORKS

1. Plaintiffs Pablo Star Ltd. and Pablo Star Media Ltd. ("Plaintiffs" or "Pablo Star") are related companies organized and registered under the laws of the United Kingdom.

2. Plaintiffs own all copyrights in and to the two photographic works featuring the iconic poet Dylan Thomas that are the subject of this action.

1

3. Plaintiffs own the copyrights in the following photo identified as "Just Married Dylan Thomas" (referred to herein as "*Just Married*"):



4. Plaintiffs own the copyrights in the following photo identified as "Dylan and Caitlin at Penard" (referred to herein as "*Penard*"):



5. Together *Just Married* and *Penard* are referred to herein as the "Photos."

6. The Photos were originally created by photographer Vernon Watkins.

7. By written agreement dated August 25, 2011, Pablo Star Ltd. acquired all rights, title, and interest in the photographs, including all copyrights therein.

8. Pablo Star Ltd. registered its copyrights in and to the Photos with the United States Copyright Office and was issued certificates of registration for both works.

9. By written agreement dated May 21, 2014, Pablo Star Ltd. transferred certain aspects of its copyrights in the Photos to Pablo Star Media Ltd. The transfer agreement

2

expressly provided that Pablo Star Ltd. retained the rights and authority to pursue accrued claims against Visit Wales relating to any unauthorized uses of the Photos in the United States. Plaintiffs intended and understood their agreement to authorize Pablo Star Ltd. to retain all rights to pursue claims related to the misconduct of Visit Wales and thus intended and understood that agreement to permit Pablo Star Ltd. to pursue all claims at issue in this action.

10. To the extent that Pablo Star Ltd. did not retain the rights to pursue any claims against any Defendants in this action, Pablo Star Media Ltd. owns such copyrights and has standing to pursue such claims.

11. Together, Plaintiffs own all copyrights in the Photos and have standing to pursue all claims at issue in this action against all Defendants.

## JURISDICTION AND VENUE

12. This is an action for copyright infringement brought by Plaintiffs against Defendants for unauthorized uses of Plaintiffs' copyrighted Photos.

13. This Court has jurisdiction over the Defendants, either generally and/or for the specific acts alleged herein.

### *The Welsh Government and Visit Wales*

14. As alleged in more detail herein, the Welsh Government published, displayed, distributed, and otherwise used unauthorized copies of Plaintiffs' copyrighted Photos in advertisements, publications, and other promotional materials directed at and specifically targeted towards United States residents generally and New York residents in particular.

15. Upon information and belief, the Welsh Government operates Visit Wales (also referred to as Visit Wales/Croesco Cymru) ("Visit Wales") as an administrative agency or division, a business enterprise, and/or uses "Visit Wales" as a tradename.

16. The Welsh Government has established a permanent presence in New York in the form of an administrative division or business enterprise and/or tradename "Welsh Government in America."

17. The Welsh Government and the Welsh Government in America are jointly referred to herein as the Welsh Government.

18. The Welsh Government owns or maintains offices located in the Chrysler Building in New York City and has employees and agents operating in New York City, including from these offices.

19. The Welsh Government carried out the infringing acts alleged herein (either acting through or doing business as the Welsh Government in America) from its offices located in New York City.

20. Upon information and belief, the Welsh Government also carried out the acts alleged herein through or acting as Visit Wales, or used Visit Wales as a tradename to conduct the acts alleged herein, which included various commercial acts and ventures directed toward encouraging tourism and otherwise publicizing and promoting Wales as a tourist destination.

21. Since at least 2013, the Welsh Government has engaged in substantial commercial activities in New York, including activities conducted in partnership with private businesses located in New York, to promote tourism to Wales and market Wales as a tourist destination.

22. The Welsh Government has engaged in and undertaken commercial activities in this District, including but not limited to creating advertisements, brochures, pamphlets, New York City walking tour maps, and other similar tourism and promotional materials and publications that included unauthorized copies of Plaintiffs' Photos (hereinafter the "Infringing Promotional Materials").

23. The Infringing Promotional Materials also include the design and creation of display panels for an exhibition titled *Welsh in America*.

24. Upon information and belief, the Welsh Government designed and created the Infringing Promotional Materials in its offices in New York City.

25. Upon information and belief, the Welsh Government contracted with private businesses located in New York City to publish, print, display, and distribute the Infringing Promotional Materials, including the infringing walk tour maps and infringing *Welsh in America* display panels. The identities of these businesses and/or individuals are currently unknown, and thus have been pleaded as John Doe's 1-10 (the "John Doe Defendants").

26. Upon information and belief, the Welsh Government received copies of the Infringing Promotional Materials from its vendors at its offices in New York City and housed/stored any hard copies of the Infringing Promotional Materials at its offices in New York City.

27. Upon information and belief, the Welsh Government distributed and loaned out copies of the Infringing Promotional Materials from its offices in New York City.

28. Upon information and belief, the Welsh Government publicly displayed the infringing panels of the *Welsh in America* exhibition in New York City.

29. Upon information and belief, the Welsh Government, from its offices in New York City, distributed copies of the Infringing Promotional Materials and the infringing panels of the *Welsh in America* exhibition to the John Doe Defendants and others for the purpose of printing and displaying the exhibition panels to the public in New York and elsewhere.

30. Upon information and belief, the Welsh Government maintained physical and digital copies of Plaintiffs' photographs at its New York City office that were unauthorized and infringing.

31. These infringing acts, carried out here in New York City by the Welsh Government in America acting out of its offices in New York City, and through the John Doe Defendants, reflect intentional commercial activities directed toward the United States, and New York City in particular.

32. Prior to undertaking the infringing activities alleged herein, the Welsh Government released a report entitled "The Welsh Government Strategy for Tourism 2013-2020: Partnership for Growth" (attached as Exhibit 13) (the "Tourism Strategy Report").

33. The Tourism Strategy Report set forth strategies and action plans for developing, encouraging, marketing, and otherwise promoting tourism to Wales. Among other things, such strategies included engaging in partnerships and joint tourism-related ventures with local hotels, restaurants, and other tourism-related private businesses.

34. In the Tourism Strategy Report, the Welsh Government and Visit Wales identified the United States as one of the key foreign markets to be targeted for its tourism campaign.

35. Following the release of the Tourism Strategy Report, the Welsh Government and Visit Wales developed and published a document entitled "The Welsh Government Strategy for Tourism 2013-2020: Framework Action Plan Years 1-3" (attached as Exhibit 14) (the "Action Plan").

36. The Action Plan identified means for implementing and carrying out the overarching strategies proposed by the Welsh Government and Visit Wales in the Tourism Strategy Report for promoting tourism to Wales.

37. The strategies and undertakings identified in the Action Plan include numerous commercial activities to be carried out by the Welsh Government and Visit Wales and include numerous such activities to be carried out in the United States or that were directly aimed at the United States.

38. One of the strategies identified in the Action Plan was "grow[ing] the sales of Wales holidays through the leisure travel trade and other key intermediaries." The Action Plan specifically identified including "North America" as a target for such activities. The methods identified in the Action Plan for implementing this strategy included the following activities:

- Re-launch the travel trade approach with industry in conjunction with VisitBritain, offer financial support for overseas travel trade events and provide appropriate platforms for business development.
- Proactive approach including: travel trade exhibitions/events; key account management and marketing campaigns (with best 40 prospects); familiarization trips; e-news; training, and; maximising VisitBritain opportunities.

39. Other strategies identified in the Action Plan, also directed at North America (or even the United States in particular) were "develop[ing] the use of multiple on-line marketing channels, to effectively promote Wales in key target markets" and "distribut[ng] relevant and useful content that inspires visitors to choose specific product experiences in Wales." The Action Plan identified numerous methods for implementing these strategies, including:

- Develop[ing] digital/content marketing plans for key target markets, reflecting revised branding, iconic product priorities and specific market requirements.
- Work[ing] with partners and content network to create, share and distribute content, that presents clear reasons to visit Wales and is presented in ways that make it easier to discover and access specific products, packages and offers.
- Re-launch websites for US and German markets providing tailored content and incorporating new iconic product led and branding approaches.
- Support the industry in realising the opportunities for digital marketing.

40. Upon information and belief, the Welsh Government did implement and is continuing to carry out such commercial activities in an effort to achieve the goals set forth in the Tourism Strategy Report and Action Plan.

41. The Welsh Government carried out such commercial activities through the Welsh Government in America and such conduct was carried out from the Welsh Government's offices in New York City.

42. Among other things, the Welsh Government purposefully directed the tourism-related Infringing Promotional Materials toward residents of the State of New York and published and/or distributed such promotional materials in the State of New York and this District.

43. Upon information and belief, the Welsh Government purposefully used unauthorized copies of Plaintiffs' Photos in the Infringing Promotional Materials to capitalize and take advantage of Dylan Thomas' legacy and appeal in New York City.

44. The activities of the Welsh Government and Visit Wales have had a direct effect in the United States, including by encouraging Unites States residents to travel to Wales.

45. The activities of the Welsh Government and Visit Wales also have had a direct effect on Plaintiffs' potential opportunity to license and publish the Photos in the United States and have deprived Plaintiffs of exclusive control of the right to copy, publish, and distribute the Photos in the United States market.

46. The Welsh Government has employees and other agents located in New York who were responsible for carrying out and overseeing the infringing conduct alleged herein.

### *The Infringing Publishers*

47. Defendant Tribune Content Agency, LLC ("TCA") is one of several publishers who received unauthorized copies of Plaintiffs' Photos from the Welsh Government, along with the Pittsburgh Post-Gazette; E.W. Scripps, Co. ("Scripps"); Journal Media Group, Inc.; Treasure Coast Newspapers ("TCN"); Colorado News Feed ("CNF"); Travel Squire; Richmond Times Dispatch ("RTD"); and Miami Herald Media Co. ("Miami Herald"). These entities are collectively referred to hereinafter as the "Infringing Publishers" and TCA is named as a Defendant.

48. Upon information and belief, as part of their efforts to promote tourism to Wales, the Welsh Government provided unauthorized copies of Plaintiffs' copyrighted works to the Infringing Publishers.

49. Upon information and belief, the Infringing Publishers conduct substantial and ongoing business in New York, including providing goods and services primarily in the form of news, entertainment, and other publications, including but not limited to online publications, to numerous residents of the State of New York and this District.

50. All Defendants conduct substantial business in the State of New York, are subject to personal jurisdiction in the State of New York, and have infringed Plaintiffs' copyrights in the State of New York and in this District.

51. Upon information and belief, Defendant TCA maintains employees, agents and/or offices in New York.

52. Upon information and belief, each of the Infringing Publishers receives news stories, images, and other content from The Associated Press ("AP").

53. AP describes itself as a not-for-profit news "cooperative" that is owned by and made up of over 1,400 "member" newspapers and media organizations.

54. Upon information and belief, newspaper publishers generally receive content from AP and use material written by AP's journalists and staff pursuant to one of two arrangements, either (i) the newspaper, subject to a cooperative agreement with AP, is an owner and member of the cooperative and receives content from AP and grants permission to AP to distribute its own content through AP's international distribution network; or (ii) the newspaper subscribes to AP's news feed and other services subject to a licensing agreement with AP.

55. Upon information and belief, each of the Infringing Publishers either is a member/owner of AP's news cooperative or has entered into a licensing agreement with AP.

56. AP's headquarters is located at 450 West 33rd St., New York, New York 10001.

57. Upon information and belief, AP's primary news bureau is located in New York, New York.

58. Upon information and belief, AP maintains offices, employees, agents, reporters and other journalists, and substantial staff in New York.

59. In addition to other services and products, AP also acts a licensor for stock photography collections, including content licensed through AP Images.

60. Upon information and belief, Defendant TCA operates the "Tribune News Service" which, according to its website, "delivers more than 250 stories and images daily for use on all platforms," including stories and other content selected from the "Los Angeles Times, Chicago Tribune, Miami Herald, The Dallas Morning News, The Seattle Times, The Philadelphia Inquirer and hundreds of other contributors."

61. Upon information and belief, Defendant TCA owns and/or operates www.mctdirect.com as the website for its Tribune News Service. This is a fully interactive website that allows visitors to "Login" and access their "Myaccount" page where visitors can review saved searches and select and save custom content, including their "customized feeds" created using TCA's "Tribune SmartContent" feature. TCA also offers content "By State," including content specifically regarding and directed at New York. TCA's website also permits visitors to directly purchase or license content, including stories and photos, that are sorted and downloaded directly from the website. The TCA website also permits visitors to preview their selected photo content through its "Lightbox" feature.

62. Upon information and belief, TCA has contractual agreements or other arrangements with news agencies and publishers located in New York related to the use and delivery of the New York publishers' content to TCA subscribers.

63. Upon information and belief, TCA licenses rights to photos, stories, and other content created in the State of New York.

64. Upon information and belief, receives advertising revenue from companies located in New York and that do substantial business in New York.

65. Upon information and belief, TCA is either a member/owner or a subscriber to AP and publishes substantial content from AP.

66. Upon information and belief, TCA also licenses or otherwise acquires image content from AP's stock photography division.

67. Upon information and belief, TCA acquired the infringing copy of Plaintiffs' Photos at issue here from the Welsh Government's employees or agents in New York.

11

68. Plaintiffs previously alleged claims against the other Infringing Publishers, but this Court found those publishers were not subject to jurisdiction in this District.

### *Jurisdiction and Venue*

69. Jurisdiction for Plaintiffs' claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*; 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

70. This Court also has jurisdiction over the Welsh Government pursuant to 28 U.S.C. § 1605(a)(2) because Plaintiffs' claims are based upon a commercial activity carried on in the United States, or upon an act performed in the United States in connection with a commercial activity elsewhere; or upon an act outside the United States in connection with a commercial activity elsewhere that caused a direct effect in the United States; and 28 U.S.C. § 1605(a)(3) because Plaintiffs' rights in property taken in violation of international law are in issue and Plaintiffs' property is now present in the United States in connection with a commercial activity carried on in the United States by the Welsh Government and Visit Wales; and 28 U.S.C. § 1605(a)(5) because Plaintiffs seek money damages against the Welsh Government and Visit Wales for damage to their property occurring in the United States and caused by the tortious acts of the Welsh Government and Visit Wales.

71. Venue is proper in this Court under 28 U.S.C. § 1400(a) since Defendants reside or may be found in this District; and under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**FACTUAL ALLEGATIONS**

72. In March of 2012, Plaintiff Pablo Star Ltd. discovered that the Welsh Government, acting through Visit Wales, was using the *Just Married* photo without permission. Plaintiff Pablo Star Ltd. contacted Visit Wales to advise that it owned the copyrights in the photo and demanded in writing that Visit Wales cease and desist using the *Just Married* photo.

73. On or about March 30, 2012, a representative of Visit Wales acknowledged Plaintiff's notice of copyright and claimed that Visit Wales would comply with Plaintiff's cease and desist demand.

74. Despite acknowledging Plaintiff's written copyright notice and demand, the Welsh Government subsequently began new unauthorized uses of the *Just Married* photo.

75. Beginning in 2013 or early 2014, the Welsh Government began using unauthorized copies of Plaintiffs' Photos in the Infringing Promotional Materials (which included advertisements, marketing materials, travel maps, websites, brochures, materials associated with a New York City walking tour, panels of the *Welsh in America* exhibit, and other promotional materials).

76. Upon information and belief, at least certain of the Infringing Promotional Materials, including the infringing New York City walking tour materials and the infringing panels of the *Welsh in America* exhibit, were designed, created, printed, loaned out, and distributed from the Welsh Government's offices in New York.

77. Upon information and belief, at least certain of the Infringing Promotional Materials, including the infringing New York City walking tour materials and the infringing panels of the *Welsh in America* exhibit, were displayed and published in New York and directed specifically at residents of New York and intended to lure American tourists to Wales.

78. Attached hereto as Exhibits 1 and 2 are true and correct copies of examples of publications and promotional materials created, published, and distributed by the Welsh Government, including materials related to the *Welsh in America* exhibition, that feature unauthorized and infringing copies of Plaintiffs' *Just Married* photo.

79. Upon information and belief, the infringing materials identified in Exhibits 1 and 2 and the other Infringing Promotional Materials were designed and created by the Welsh Government in America from its offices located in New York City.

80. Upon information and belief, any hard copies of the infringing materials identified in Exhibits 1 and 2 and the other Infringing Promotional Materials were printed by John Doe Defendants in New York City and delivered to the Welsh Government in America's offices located in New York City.

81. Upon information and belief, hard copies of the infringing materials identified in Exhibits 1 and 2, including the infringing walking tour materials and infringing *Welsh in America* exhibition were distributed, displayed, and published in New York City by and through the acts of the Welsh Government in America, and such acts were carried out from the Welsh Government's offices located in New York City.

82. As the materials in Exhibit 2 state and demonstrate, the materials associated with the *Welsh in America* exhibition that feature infringing copies of Plaintiffs' Photos also were "loaned" out by the Welsh Government in America from its offices located in New York City.

83. Upon information and belief, the Welsh Government in America, acting from its offices in New York City, loaned out the materials associated with the *Welsh in America* exhibition that feature infringing copies of Plaintiffs' Photos to persons or entities located in

14

New York and these infringing materials also were displayed and/or published by these third parties in New York.

84. Because information regarding the scope of the illegal use of Plaintiffs' photographs by the Welsh Government and Visit Wales remains in their sole possession, the full and complete scope of their infringing uses of the *Just Married* work has not yet been ascertained.

85. In addition to making new unauthorized uses of the *Just Married* photo, the Welsh Government also created or acquired an unauthorized derivative copy of the *Just Married* photo that it subsequently displayed, published, offered for sale, and otherwise used without permission despite knowing that Plaintiffs claimed copyright in the underlying photographic work.

86. Attached hereto as Exhibit 3 is a true and correct uncropped copy of the unauthorized derivative work created or acquired by Defendant. Exhibit 3 shows a photograph, taken from Visit Wales' website, of an old and tattered print copy of the *Just Married* photo that was being displayed at the time on the mantle of a fireplace at the Birthplace of Dylan Thomas.

87. Despite previously acknowledging Plaintiffs' copyrights in this photo, the Welsh Government subsequently published, displayed, and offered for sale the unauthorized derivative of Plaintiffs' *Just Married* photo.

88. Attached hereto as Exhibit 4 is a true and correct copy of a screen capture from the Visit Wales website (www.walesonview.com) showing the unauthorized derivative copy being offered for sale as image "SVW-C53-1213-0171.JPG."

89. The Welsh Government also provided this unauthorized derivative copy of the *Just Married* photo to the Infringing Publishers as well as to John Doe Defendants in order to be

published and distributed to the American market to promote Wales tourism and as part of Visit Wales' tourism campaign here in the United States.

90. The Welsh Government and Visit Wales also used Plaintiffs' *Penard* photo as part of their advertising, tourism, and promotional campaign.

91. Attached hereto as Exhibits 5-12 are true and correct copies of various publications and other documents showing that the Infringing Publishers published and displayed unlicensed copies of Plaintiffs' Photos or unauthorized derivatives of Plaintiffs' Photos.

92. Because information regarding the scope of the Publisher Defendants' use of Plaintiffs' Photos remains in the Publisher Defendants' sole possession, the full and complete scope of the Publisher Defendants' infringing uses of the Photos has not yet been ascertained.

## COUNT I
## COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS

93. Plaintiffs repeat and re-allege each allegation set forth in paragraphs above as if set forth fully herein.

94. Plaintiffs own all copyrights in the photographs that are the subject of this action.

95. Plaintiffs registered their copyrights in and to the Photos with the U.S. Copyright Office.

96. As alleged herein, Defendants used, published, distributed, displayed, sold, and otherwise exploited Plaintiffs' copyrighted works without a license and without permission, including in the *Welsh in America* exhibition, New York City walking tour materials, and on various web pages.

97. Upon information and belief, the Welsh Government and TCA never had permission or a license to use either the *Just Married* or *Penard* photos, particularly in a commercial manner such as in advertisements and promotional materials.

16

98. In the event that the Welsh Government contends that it did have permission or a license, Plaintiffs allege that Defendants' use of the Photos exceeded the scope of any alleged license.

99. Plaintiffs' March 2012 correspondence provided sufficient notice to the Welsh Government that any purported license had been rescinded or revoked and that no additional uses of the photo were permitted.

100. By infringing Plaintiffs' copyrights, Defendants misappropriated Plaintiffs' intellectual property for their own profit, causing Plaintiffs significant injuries, damages, and losses in amounts to be determined at trial.

101. Defendants' unauthorized uses of Plaintiffs' copyrighted images were knowing and willful.

102. The conduct of the Welsh Government violates the protections of the Berne Convention, which the United Kingdom has ratified, including the right to make adaptions of the Photos; the right to publish the Photos (or communicate/broadcast them to the public); and Plaintiffs' moral rights.

103. Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including each Defendant's profits attributable to the infringing use of Plaintiffs' Photos and the damages suffered as a result of the lack of compensation, credit, and attribution.

104. Plaintiffs also seek a declaration that the Welsh Government lacks a license to use Plaintiffs' photos identified herein

105. Plaintiffs also seek a preliminary and permanent injunction against Defendants precluding any ongoing or future use of Plaintiffs' Photos, or unauthorized derivative copies of Plaintiffs' Photos.

106. Plaintiffs also seek all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

## COUNT II
## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST THE WELSH GOVERNMENT

107. Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

108. Without permission, the Welsh Government distributed copies of or otherwise allowed access to Plaintiffs' copyrighted Photos to numerous third parties, including the Infringing Publishers, John Doe Defendants, and others who directly copied and/or displayed the infringing *Welsh in America* exhibit.

109. Through such actions, the Welsh Government materially contributed to, facilitated, induced, or otherwise is responsible for the directly infringing acts carried out by these other parties.

110. The Welsh Government exercised control over the content of its own websites and publications that included copies of Plaintiffs' Photos.

111. The Welsh Government had the ability to prevent the Infringing Publishers and John Doe Defendants from copying and publishing Plaintiffs' Photos (or unauthorized derivative copies of the Photos) by not distributing such copies to third parties.

112. When the Infringing Publishers and John Doe Defendants copied, displayed, published, or sold unauthorized copies of Plaintiffs' Photos to promote Wales tourism they were

acting at the direction, behest, on behalf of, for, and/or under the control of the Welsh Government or were encouraged and induced by the Welsh Government to publish and distribute Plaintiffs' Photos.

113.   The Welsh Government obtained direct financial benefits from the infringements of these other parties that published or displayed the Infringing Promotional Materials, including through the promotion of the tourism industry and businesses and achievement of their tourism-related goals.

114.   By copying, distributing, displaying, publishing, and otherwise exploiting Plaintiffs' copyrighted Photos, each of the Defendants infringed Plaintiffs' copyrights and caused Plaintiffs significant injuries, damages, and losses in amounts to be determined at trial.

115.   Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendants' profits attributable to the infringements, and damages suffered as a result of the lack of compensation, credit, and attribution and from any diminution in the value of Plaintiffs' copyrighted works.  Plaintiffs also seek all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

**WHEREFORE,** Plaintiffs respectfully pray for judgment on their behalf and for the following relief:

1.   A preliminary and permanent injunction against Defendants precluding Defendants from copying, displaying, distributing, publishing, selling, or in any way using Plaintiffs' works or any publications, advertisements, brochures, or other promotional materials that include unauthorized uses of Plaintiffs' creative works, and requiring Defendants to deliver to the Court for destruction or other appropriate disposition all relevant materials, including

digital files of Plaintiffs' photographs and all copies of the infringing materials described in this complaint, that are in the control or possession or custody of Defendants;

    2.    All allowable damages under the Copyright Act, including but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiffs' loss of licensing revenue, Defendants' lack of attribution, and Defendants' profits attributable to infringement;

    3.    Plaintiffs' full costs, including litigation expenses, expert witness fees, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

    4.    Any other relief authorized by law, including punitive and/or exemplary damages; and

    5.    For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**
Dated: May 8, 2018
    New York, New York.

    Respectfully submitted,

    THE MCCULLOCH LAW FIRM PLLC

By: _____
    Kevin P. McCulloch (KM0530)
    Nate A. Kleinman (NK3168)
    501 Fifth Avenue, Suite 1809
    New York, New York 10017
    T: (212) 355-6050
    F: (206) 219-6358
    Kevin@McCullochIPLaw.com
    Nate@McCullochIPLaw.com

    *Attorneys for Plaintiffs*