**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

PABLO STAR LTD.,

          Plaintiff,

     v.

THE WELSH GOVERNMENT, *et al.*,

          Defendants.

Civil Action No. 15-CV-1167

## DECLARATION OF JAMES VAUGHAN

I, James Vaughan, declare as follows:

1.      I have personal knowledge of the facts stated herein and if called upon to do so, I could truthfully and competently testify thereto.

2.      I am a solicitor with the firm Geldards LLP in Cardiff, which has represented the Welsh Government in certain matters. I complete a law degree from the University of Reading (2008) and the Legal Practice Course at Cardiff University (2009). I am a corporate lawyer advising private and public sector clients on mergers and acquisitions, corporate finance, governance issues and banking transactions. I am familiar with the corporate law of the United Kingdom and the Republic of Ireland discussed here.

3.      I have reviewed the Opposition of plaintiffs Pablo Star Ltd. ("Pablo Star") and Pablo Star Media Ltd. ("Pablo Media") to the Defendants' Motion to Dismiss the First Amended Complaint and the Declaration of Haydn Price. Dkt. Nos. 45 and 46.

4.      I have reviewed the relevant records from Companies House in the United Kingdom. Both Pablo Star and Pablo Media are companies organized under the law of England and Wales. True and correct copies of those records are attached as Exhibits A-B. As such

3117259

corporations, they are governed by and subject to the laws of the United Kingdom. For example, they are subject to the requirements of the Companies Act 2006. The legal headquarters of Pablo Star and Pablo Media is its country of incorporation, here England and Wales.

5.      Pablo Star and Pablo Media have "branches" of the U.K. companies in the Republic of Ireland, *i.e.*, they are both registered as external companies in Ireland. *See* Exhibits C-D. This is an administrative requirement of the Irish Companies Registration Office ("CRO") for any foreign company that wishes to establish a branch in Ireland. To establish a branch in Ireland, the foreign company must provide the CRO with its certificate of incorporation and other documents from its country of original registration. *See* Exs. E-H.

6.      The Irish branches are not able to own property in their own right, including intangible intellectual property rights such as copyrights. Pablo Star or Pablo Media's Irish branches could not own the copyrights at issue in this case and there would be no property for a government to expropriate. The only entities with property that could be expropriated are the U.K. registered companies.

7.      I disagree with the assertion in the Opposition that Pablo Star and Pablo Media "cannot be considered 'nationals' of the United Kingdom." *Id*. at 8-9. Under U.K. law, they are considered nationals of that state.

8.      Under United Kingdom law, property owned in the name of the corporation belongs to that corporation and not to the shareholders of that corporation.

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 8, 2015

James Vaughan

3117259
C:4441911v2

FILE COPY



# CERTIFICATE OF INCORPORATION

# OF A PRIVATE LIMITED COMPANY

## Company No. 4865232

The Registrar of Companies for England and Wales hereby certifies that

PABLO STAR LIMITED

is this day incorporated under the Companies Act 1985 as a private

company and that the company is limited.

Given at Companies House, Cardiff, the 13th August 2003



*N04865232H*



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES



*Companies House*
— *for the record* —

EXHIBIT A    HC007B



**Companies House**
—— *for the record* ——

*Please complete in typescript,*
*or in bold black capitals.*

CHFP000

**(NCPack)**

# 12

**Declaration on application for registration**

**Company Name in full**   PABLO STAR LIMITED

I,

of

† Please delete as appropriate.

do solemnly and sincerely declare that I am a † [Solicitor engaged in the formation of the company][person named as director or secretary of the company in the statement delivered to the Registrar under section 10 of the Companies Act 1985] and that all the requirements of the Companies Act 1985 in respect of the registration of the above company and of matters precedent and incidental to it have been complied with.

And I make this solemn Declaration conscientiously believing the same to be true and by virtue of the Statutory Declarations Act 1835.

**Declarant's signature**

**Declared at**   43 TEMPLE ROW, BIRMINGHAM B2 5JT

**On**   Day 0 7   Month 0 8   Year 2 0 0 3

❶ Please print name.

**before me ❶**   LEIGH GANDERTON

**Signed**   **Date** 07-08-03

† A Commissioner for Oaths or Notary Public or Justice of the Peace or Solicitor

Please give the name, address, telephone number and, if available, a DX number and Exchange of the person Companies House should contact if there is any query.

Russell Jones & Walker
43 TEMPLE ROW, BIRMINGHAM B2 5JT
B2 5JT   Tel 0121 - 643-6800
DX number 13028   DX exchange 13028 B'ham 1.

A15   *ADUBRNBH*   0783
COMPANIES HOUSE   08/08/03

Form revised June 1998

When you have completed and signed the form please send it to the Registrar of Companies at:
**Companies House, Crown Way, Cardiff, CF14 3UZ       DX 33050 Cardiff**
for companies registered in England and Wales
**or**
**Companies House, 37 Castle Terrace, Edinburgh, EH1 2EB**
for companies registered in Scotland       DX 235 Edinburgh

EXHIBIT A



**Companies House**
— for the record —

***Please complete in typescript,
or in bold black capitals.***
**CHFP000**

Notes on completion appear on final page

# 10

**First directors and secretary and intended situation of registered office**

| |
|---|

| **Company Name in full** | PABLO STAR LIMITED |
|---|---|

**Proposed Registered Office**

(PO Box numbers only, are not acceptable)

| **Proposed Registered Office** | BRANSTON COURT |
|---|---|
| | BRANSTON STREET |
| Post town | BIRMINGHAM |
| County / Region | WEST MIDLANDS | Postcode | B18 6BA |

If the memorandum is delivered by an agent for the subscriber(s) of the memorandum mark the box opposite and give the agent's name and address.

| Agent's Name | |
|---|---|
| Address | |
| | |
| Post town | |
| County / Region | | Postcode | |

Number of continuation sheets attached

You do not have to give any contact information in the box opposite but if you do, it will help Companies House to contact you if there is a query on the form. The contact information that you give will be visible to searchers of the public record.

| |
|---|
| |
| Tel |
| DX number        DX exchange |

A15   *AOU0SNBIH   0782
COMPANIES HOUSE   08/08/03

TI

Form April 2002

When you have completed and signed the form please send it to the Registrar of Companies at:
**Companies House, Crown Way, Cardiff, CF14 3UZ      DX 33050 Cardiff**
for companies registered in England and Wales
**or**
**Companies House, 37 Castle Terrace, Edinburgh, EH1 2EB**
for companies registered in Scotland         DX 235 Edinburgh

EXHIBIT 5

## Company Secretary (see notes 1-5)

| | |
|---|---|
| Company name | PABLO STAR LIMITED |

**NAME**

| | |
|---|---|
| *Style / Title | MR |
| *Honours etc | |

\* Voluntary details

| | |
|---|---|
| Forename(s) | JULIAN PHILIP |
| Surname | KAHN |
| Previous forename(s) | |
| Previous surname(s) | |

†† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address.

| | |
|---|---|
| Address †† | 9 BROMFORD GARDENS |
| | WESTFIELD ROAD , EDGBASTON |
| Post town | BIRMINGHAM |
| County / Region | WEST MIDLANDS |
| Postcode | B15 3XD |
| Country | UNITED KINGDOM |

I consent to act as secretary of the company named on page 1

**Consent** [signature]   **Date** 7. 3. 03

## Directors (see notes 1-5)

*Please list directors in alphabetical order*

**NAME**

| | |
|---|---|
| *Style / Title | MR |
| *Honours etc | |
| Forename(s) | HAYDN |
| Surname | PRICE |
| Previous forename(s) | |
| Previous surname(s) | |

†† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address.

| | |
|---|---|
| Address †† | 63 HAY GREEN LANE |
| | BOURNVILLE |
| Post town | BIRMINGHAM |
| County / Region | WEST MIDLANDS |
| Postcode | B30 1UP |
| Country | UNITED KINGDOM |

| | Day | Month | Year | | |
|---|---|---|---|---|---|
| Date of birth | 1 2 | 0 3 | 1 9 6 5 | Nationality | BRITISH |

| | |
|---|---|
| Business occupation | JOURNALIST |
| Other directorships | BLUE ROCK MEDIA LIMITED |
| | ECLIPTION LIMITED     CONTINUED... |

I consent to act as director of the company named on page 1

**Consent signature** [signature]   **Date** EXHIBIT [signature]

## Company Secretary (see notes 1-5)

| | | | |
|---|---|---|---|
| **NAME** | *Style / Title | | *Honours etc |

* Voluntary details

Forename(s)

Surname

Previous forename(s)

Previous surname(s)

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

**Address** †

Post town

County / Region                Postcode

Country

I consent to act as secretary of the company named on page 1

**Consent signature**                **Date**

## Directors (see notes 1-5)

*Please list directors in alphabetical order*

| | | | |
|---|---|---|---|
| **NAME** | *Style / Title | MR | *Honours etc |

Forename(s) — HAYON

Surname — Price            (CONTINUED)

Previous forename(s)

Previous surname(s)

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

**Address** †

Post town

County / Region                Postcode

Country

| Day | Month | Year | |
|---|---|---|---|
| | | | |

**Date of birth**                **Nationality**

**Business occupation**

**Other directorships** — SPORTH ISTORY  LIMITED

I consent to act as director of the company named on page 1

**Consent signature**                **Date** 7. 8. OJ

EXHIBIT A

**Company Secretary** (see notes 1-5)          **Form 10 Continuation Sheet**

CHWP000          Company Name          PABLO STAR LIMITED

|                | NAME | *Style / Title |  | *Honours etc |  |
|----------------|------|----------------|--|--------------|--|

\* Voluntary details

Forename(s)

Surname

Previous forename(s)

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

Previous surname(s)

Address †

Post town

County / Region          Postcode

Country

I consent to act as secretary of the company named on page 1

**Consent signature**          **Date**

**Directors** (see notes 1-5)

*Please list directors in alphabetical order*

NAME          *Style / Title          MR          *Honours etc

Forename(s)          HAYON

Surname          PRICE          (CONTINUED)

Previous forename(s)

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

Previous surname(s)

Address †

Post town

County / Region          Postcode

Country

|            | Day | Month | Year |             |  |
|------------|-----|-------|------|-------------|--|
| Date of birth |  |  |  | Nationality |  |

Business occupation

Other directorships          NEW STREET PRODUCTIONS LIMITED

NEW STREET PRODUCTIONS RADIO LIMITED

I consent to act as director of the company named on page 1

**Consent signature**          **Date**          7.8.03

EXHIBIT A

# Directors (see notes 1-5)

*Please list directors in alphabetical order*

**NAME**    \*Style / Title      \*Honours etc

Forename(s)

Surname

Previous forename(s)

Previous surname(s)

**† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address.**

**Address †**

Post town

County / Region     Postcode

Country

**Date of birth**    Day   Month   Year    **Nationality**

**Business occupation**

**Other directorships**

I consent to act as director of the company named on page 1

**Consent signature**     Date

---

**This section must be signed by**
*Either*

an agent on behalf of all subscribers    **Signed**     **Date**

*Or* **the subscribers**    **Signed**     **Date**   7.8.03

**( *i.e those who signed as members on the memorandum of association).***    **Signed**     **Date**

**Signed**     **Date**

**Signed**     **Date**

**Signed**     **Date**

**Signed**     **Date**

EXHIBIT A

# Notes

1. Show for an individual the full forename(s) NOT INITIALS and surname together with any previous forename(s) or surname(s).

   If the director or secretary is a corporation or Scottish firm - show the corporate or firm name on the surname line.

   Give previous forename(s) or surname(s) except that:

   - for a married woman, the name by which she was known before marriage need not be given,

   - names not used since the age of 18 or for at least 20 years need not be given.

   A peer, or an individual known by a title, may state the title instead of or in addition to the forename(s) and surname and need not give the name by which that person was known before he or she adopted the title or succeeded to it.

   Address:

   Give the usual residential address.

   In the case of a corporation or Scottish firm give the registered or principal office.

   Subscribers:

   The form must be signed personally either by the subscriber(s) or by a person or persons authorised to sign on behalf of the subscriber(s).

2. Directors known by another description:

   - A director includes any person who occupies that position even if called by a different name, for example, governor, member of council.

3. Directors details:

   - Show for each individual director the director's date of birth, business occupation and nationality. **The date of birth must be given for every individual director.**

4. Other directorships:

   - Give the name of every company of which the person concerned is a director or has been a director at any time in the past 5 years. You may exclude a company which either **is** or at **all times during the past 5 years,** when the person was a director, **was:**

   - dormant,

   - a parent company which wholly owned the company making the return,

   - a wholly owned subsidiary of the company making the return, or

   - another wholly owned subsidiary of the same parent company.

   If there is insufficient space on the form for other directorships you may use a separate sheet of paper, which should include the company's number and the full name of the director.

5. Use Form 10 continuation sheets or photocopies of page 2 to provide details of joint secretaries or additional directors.

EXHIBIT A

040615



*The Companies Acts 1985 and 1989*

## COMPANY LIMITED BY SHARES

# Memorandum of Association

OF

PABLO STAR

**LIMITED**



A15
COMPANIES HOUSE        0784
                       08/08/03

1.   The Company's name is "      **PABLO STAR**

LIMITED."

2.   The Company's registered office is to be situated in England and Wales.

3.   The Company's objects are\*:—

(A)
     To provide intellectual property consultancy.

*Where the Memorandum states that the object of the Company is to carry on business as a general commercial company the object of the Company is to carry on any trade or business whatsoever and the Company has power to do all such things as are incidental or conducive to the carrying on of any trade or business by it – see section 3A of the Companies Act 1985 as amended by the Companies Act 1989. If it is intended that section 3A should apply, it would be prudent to delete the whole of Clause 3 and to substitute: "3. The object of the Company is to carry on business as a general commercial company."

(B)  To carry on any other trade or business which can, in the opinion of the Board of Directors, be advantageously carried on by the Company in connection with or as ancillary to any of the above businesses or the general business of the Company.

(C)  To purchase, take on lease or in exchange, hire or otherwise acquire and hold for any estate or interest any lands, buildings, easements, rights, privileges, concessions, patents, patent rights, licences, secret processes, machinery, plant, stock-in-trade, and any real or personal property of any kind necessary or convenient for the purpose of or in connection with the Company's business or any branch or department thereof.

EXHIBIT A

2

(D)  To erect, construct, lay down, enlarge, alter and maintain any roads, railways, tramways, sidings, bridges, reservoirs, shops, stores, factories, buildings, works, plant and machinery necessary or convenient for the Company's business, and to contribute to or subsidise the erection, construction and maintenance of any of the above.

(E)  To borrow or raise or secure the payment of money for the purpose of or in connection with the Company's business, and for the purposes of or in connection with the borrowing or raising of money by the Company to become a member of any building society.

(F)  To mortgage and charge the undertaking and all or any of the real and personal property and assets, present or future, and all or any of the uncalled capital for the time being of the Company, and to issue at par or at a premium or discount, and for such consideration and with such rights, powers and privileges as may be thought fit, debentures or debenture stock, either permanent or redeemable or repayable, and collaterally or further to secure any securities of the Company by a trust deed or other assurance.

(G)  To make advances to customers and others with or without security, and upon such terms as the Company may approve, and to guarantee the liabilities, obligations and contracts of any other person, firm or company whether a customer of the Company or otherwise, and the dividends, interest and capital of the shares, stocks or securities of any company of or in which this Company is a member or is otherwise interested.

(H)  To receive money on deposit or loan upon such terms as the Company may approve, and generally to act as bankers for customers and others.

(I)  To grant pensions, allowances, gratuities and bonuses to officers or ex-officers, employees or ex-employees of the Company or of any body corporate which is or has been a subsidiary of the Company or a predecessor in business of the Company or of any such subsidiary or to the dependants or any member of the family of such persons, and to contribute to any fund and pay premiums for the purchase or provision of any such benefit and to establish and support, or to aid in the establishment and support of, any

EXHIBIT A

3

schools and any educational, scientific, literary, religious or charitable institutions or trade societies, whether such institutions or societies be solely connected with the business carried on by the Company or its predecessors in business or not, and to institute and maintain any club or other establishment or benefit fund or profit-sharing scheme calculated to advance the interests of the Company or of the officers of or persons employed by the Company or any such subsidiary.

(J)   To draw, make, accept, endorse, negotiate, discount and execute promissory notes, bills of exchange, and other negotiable instruments.

(K)   To invest and deal with the moneys of the Company not immediately required for the purposes of the business of the Company in or upon such investments and in such manner as may from time to time be determined.

(L)   To pay for any property or rights acquired by the Company either in cash or fully or partly paid-up shares, with or without preferred or deferred or special rights or restrictions in respect of dividend, repayment of capital, voting or otherwise, or by any securities which the Company has power to issue, or partly in one mode and partly in another, and generally on such terms as the Company may determine.

(M)   To accept payment for any property or rights sold or otherwise disposed of or dealt with by the Company, either in cash, by instalments or otherwise, or in fully or partly paid-up shares or stock of any company or corporation, with or without preferred or deferred or special rights or restrictions in respect of dividend, repayment of capital, voting or otherwise, or in debentures or mortgage debentures or debenture stock, mortgages or other securities of any company or corporation, or partly in one mode and partly in another, and generally on such terms as the Company may determine, and to hold, dispose of or otherwise deal with any shares, stock or securities so acquired.

(N)   To amalgamate with or enter into any partnership or arrangement for sharing profits, union of interests, reciprocal concession or co-operation with any company, firm or person carrying on or proposing to carry on any business within the objects of this Company or which is

EXHIBIT A

4

capable of being carried on so as directly or indirectly to benefit this Company, and to acquire and hold, sell, deal with or dispose of any shares, stock or securities of or other interests in any such company, and to guarantee the contracts or liabilities of, subsidise or otherwise assist, any such company.

(O)   To purchase or otherwise acquire, take over and undertake all or any part of the business, property, liabilities and transactions of any person, firm or company carrying on any business which this Company is authorised to carry on, or the carrying on of which is calculated to benefit this Company or to advance its interests, or possessed of property suitable for the purposes of the Company.

(P)   To sell, improve, manage, develop, turn to account, exchange, let on rent, royalty, share of profits or otherwise, grant licences, easements and other rights in or over, and in any other manner deal with or dispose of the undertaking and all or any of the property and assets for the time being of the Company for such consideration as the Company may think fit.

(Q)   To distribute among the members in specie any property of the Company, or any proceeds of sale or disposal of any property of the Company, but so that no distribution amounting to a reduction of capital be made except with the sanction (if any) for the time being required by law.

(R)   To do all or any of the above things in any part of the world, and either as principals, agents, trustees, contractors or otherwise, and either alone or in conjunction with others, and either by or through agents, trustees, sub-contractors or otherwise.

(S)   To do all such other things as are incidental or conducive to the above objects or any of them.

And it is hereby declared that:—

(A)   the word "Company" in this Clause, except where used in reference to this Company, shall be deemed to include any partnership or other body of persons, whether corporate or unincorporate, and whether incorporated, registered, resident or domiciled in the United Kingdom or elsewhere, and

5

(B)   the objects of the Company specified in each of the foregoing paragraphs of this Clause shall be distinct and separate objects of the Company and shall be no way limited by reference to any other paragraphs hereof or to the order in which the same occur, but shall be construed in as wide a sense as possible as if each of the said paragraphs defined the objects of a separate and distinct company.

4.   The liability of the members is limited.

5.   The Company's share capital is £ 100 , divided into shares of £ 1 each.

_____

WE, the Subscribers to this Memorandum of Association, wish to be formed into a Company pursuant to this Memorandum, and we agree to take the number of shares shown opposite our respective names.

| NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF SUBSCRIBER(S) | Number of Shares taken by each Subscriber |
|---|---|
| HAYDN PRICE<br>63 HAY GREEN LANE<br>BOURNVILLE<br>BIRMINGHAM<br>B30 1UP | 100 |

Dated this   7th   day of        AUGUST 2003

EXHIBIT A

6

NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF WITNESS(ES)

to the above Signature(s) —

JULIAN PHILIP KAHN
9 BROMFORD GARDENS
WESTFIELD ROAD
EDGBASTON
BIRMINGHAM
B15 3XD

NOTE: A subscriber which is a company should sign by its authorised
officials in accordance with any relevant provisions in its articles of
association.

EXHIBIT A

*The Companies Acts 1985 and 1989*

---

COMPANY LIMITED BY SHARES

---

# Articles of Association

OF

PABLO STAR

**LIMITED**

---

1.   Subject as hereinafter provided, the regulations contained or incorporated in Table A in The Companies (Tables A to F) Regulations 1985 (hereinafter referred to as "Table A") shall apply to the Company.

2.   Regulations 8, 64, 76, 77 and 113 of Table A shall not apply to the Company.

3.   The Company is a private company and accordingly no offer or invitation shall be made to the public (whether for cash or otherwise) to subscribe for any shares in or debentures of the Company, nor shall the Company allot or agree to allot (whether for cash or otherwise) any shares in or debentures of the Company with a view to all or any of those shares or debentures being offered for sale to the public.

4.   At the date of the adoption of these Articles the capital of the Company is £ 100 divided into 100 Ordinary Shares of £1 each.

5.   (a) The Directors may subject to Article 6 hereof allot, grant options over, or otherwise deal with or dispose of any relevant securities (as defined by section 80(2) of the Companies Act 1985) of the Company to such persons and generally on such terms and conditions as the Directors think proper.

(b) The general authority conferred by paragraph (a) of this Article shall be conditional upon due compliance with Article 6 hereof and shall extend to the amount of the authorised share capital of the Company upon its incorporation. The said authority will expire on the date of the fifth

EXHIBIT A

8

anniversary of the incorporation unless renewed, varied or revoked by the Company in general meeting in accordance with section 80 or section 80A of the Act.

(c) The Directors shall be entitled under the general authority conferred by paragraph (a) of this Article to make at any time before the expiry of such authority any offer or agreement which will or might require relevant securities of the Company to be allotted after the expiry of such authority.

6.   (a) Subject to any direction to the contrary that may be given by the Company in general meeting all shares authorised pursuant to Article 5 hereof to be allotted shall be offered to the members in proportion to the existing shares held by them and such offer shall be made by notice in writing specifying the number of the shares to which the member is entitled and limiting a time (being not less than 21 days) within which the offer if not accepted will be deemed to have been declined, and after the expiry of such time or upon receipt of an intimation from the member to whom such notice is given that he declines to accept the shares offered, the Directors may, subject to these Articles, allot or otherwise dispose of the same to such persons and upon such terms as they think most beneficial to the Company. The Directors may in like manner dispose of any such shares as aforesaid which, by reason of the proportion borne by them to the number of persons entitled to any such offer as aforesaid or by reason of any other difficulty in apportioning the same, cannot in the opinion of the Directors be conveniently offered in manner hereinbefore provided.

(b) By virtue of section 91(1) of the Companies Act 1985, sections 89(1) and 90(1) to 90(6) inclusive of that Act shall not apply to the Company.

7.   The Company shall have a first and paramount lien on every share (whether or not it is a fully paid share) for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share and the Company shall also have a first and paramount lien on all shares (whether fully paid or not) standing registered in the name of any member whether solely or one of two or more joint holders for all moneys presently payable by him or his estate to the Company; but the Directors may at any time declare any share to be wholly or in part exempt from the provisions of this Article. The Company's lien (if any) on a share shall extend to all dividends payable thereon.

EXHIBIT A

9

8. The Directors may, in their absolute discretion and without assigning any reason therefor, decline to register any transfer of any share, whether or not it is a fully paid share. The first sentence of Regulation 24 of Table A shall not apply to the Company.

9. In accordance with section 372(3) of the Companies Act 1985 in every notice calling a General Meeting of the Company there shall appear with reasonable prominence a statement that a member entitled to attend and vote is entitled to appoint a proxy to attend and vote instead of him and that a proxy need not be a member of the Company. Regulation 38 of Table A shall be modified accordingly and the second sentence of Regulation 59 of Table A shall not apply to the Company.

10. In Regulation 41 of Table A there shall be added at the end: "If at any adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the meeting shall be dissolved."

11. Unless and until the Company in general meeting shall otherwise determine, there shall be no maximum number of Directors and the minimum number of Directors shall be one. If and so long as there is a sole Director he may exercise all the powers and authorities vested in the Directors by these Articles and by Table A and Regulation 89 of Table A shall be modified accordingly. The first Directors of the Company shall be as named in the statement delivered to the Registrar of Companies pursuant to section 10 of the Companies Act 1985.

12. The Company shall not be subject to section 293 of the Companies Act 1985, and accordingly any person may be appointed or elected as a Director, whatever his age, and no Director shall be required to vacate his office of Director by reason of his attaining or having attained the age of seventy years or any other age.

13. No person other than a Director retiring by rotation shall be elected a Director at any general meeting unless—

(i) he is recommended by the Directors; or

(ii) not less than fourteen nor more than thirty-five clear days before the date of the meeting a notice has been given to the Company by a member qualified to vote at the meeting of the intention to propose that person for election, together with a notice by that person confirming his willingness to be elected.

10

14.   A Director shall not be required to hold any share qualification but shall nevertheless be entitled to receive notice of and to attend at all general meetings of the Company and at all separate general meetings of the holders of any class of shares in the capital of the Company.

---

NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF SUBSCRIBER(S)

---

HAYDN PRICE
63 HAY GREEN LANE
BOURNVILLE
BIRMINGHAM
B30 1UP

---

Dated this 7th        day of  AUGUST 2003
NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF WITNESS(ES)

to the above Signature(s) —

JULIAN PHILIP KAHN
9 BROMFORD GARDENS
WESTFIELD ROAD
EDGBASTON
BIRMINGHAM
B15 3XD

NOTE: A subscriber which is a company should sign by its authorised officials in accordance with any relevant provisions in its articles of association.                    EXHIBIT A

File Copy



# CERTIFICATE OF INCORPORATION
# OF A
# PRIVATE LIMITED COMPANY

## Company Number  **9039350**

The Registrar of Companies for England and Wales, hereby certifies that

PABLO STAR MEDIA LIMITED

is this day incorporated under the Companies Act 2006 as a private company, that the company is limited by shares, and the situation of its registered office is in England and Wales

Given at Companies House, Cardiff, on **14th May 2014**



\*N09039350G\*

The above information was communicated by electronic means and authenticated by the Registrar of Companies under section 1115 of the Companies Act 2006



Companies House



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES

# IN01(ef)

**Companies House**



| | |
|---|---|
| **Application to register a company** | |

*Received for filing in Electronic Format on the:* **13/05/2014**

X37S6RLN

*Company Name in full:* **PABLO STAR MEDIA LIMITED**

*Company Type:* **Private limited by shares**

*Situation of Registered Office:* **England and Wales**

*Proposed Register Office Address:* **71-75 SHELTON STREET**
**LONDON**
**LONDON**
**UNITED KINGDOM**
**WC2H 9JQ**

*I wish to entirely adopt the following model articles:* **Private (Ltd by Shares)**

---

# Proposed Officers

## Company Secretary 1

| | |
|---|---|
| *Type:* | **Person** |
| *Full forename(s):* | **MR HAYDN** |
| *Surname:* | **PRICE** |
| *Former names:* | |

*Service Address recorded as Company's registered office*

*Consented to Act:* **Y**       *Date authorised:* **14/05/2014**       *Authenticated:* **YES**

---

# Company Director 1

*Type:*                    **Person**

*Full forename(s):*        **MR HAYDN**

*Surname:*                 **PRICE**

*Former names:*

*Service Address recorded as Company's registered office*

*Country/State Usually Resident:*  **IRELAND**

*Date of Birth:* **12/03/1965**              *Nationality:* **BRITISH**

*Occupation:*    **JOURNALIST**

*Consented to Act:* **Y**          *Date authorised:* **14/05/2014**      *Authenticated:* **YES**

---

# Statement of Capital (Share Capital)

| **Class of shares** | **ORDINARY** | *Number allotted* | **100** |
| | | *Aggregate nominal value* | **100** |
| *Currency* | **GBP** | *Amount paid per share* | **1** |
| | | *Amount unpaid per share* | **0** |

*Prescribed particulars*

**EACH SHARE HAS FULL RIGHTS IN THE COMPANY WITH RESPECT TO VOTING, DIVIDENDS AND DISTRIBUTIONS.**

# Statement of Capital (Totals)

| *Currency* | **GBP** | *Total number of shares* | **100** |
| | | *Total aggregate nominal value* | **100** |

# Initial Shareholdings

*Name:*   **HAYDN PRICE**

| | | | |
|---|---|---|---|
| *Address:* | **71 SHELTON STREET**<br>**LONDON**<br>**LONDON**<br>**UNITED KINGDOM**<br>**WC2H 9JQ** | *Class of share:* | **ORDINARY** |
| | | *Number of shares:* | **100** |
| | | *Currency:* | **GBP** |
| | | *Nominal value of each share:* | **1** |
| | | *Amount unpaid:* | **0** |
| | | *Amount paid:* | **1** |

# Statement of Compliance

*I confirm the requirements of the Companies Act 2006 as to registration have been complied with.*

*Name:* **HAYDN PRICE**

*Authenticated:* **YES**

# Authorisation

*Authoriser Designation:* **subscriber**

*Authenticated:* **Yes**

*End of Electronically Filed Document for Company Number:* **09039350**

*Page:6*

# COMPANY HAVING A SHARE CAPITAL

## Memorandum of association of
## PABLO STAR MEDIA LIMITED

Each subscriber to this memorandum of association wishes to form a company under the Companies Act 2006 and agrees to become a member of the company and to take at least one share.

| Name of each subscriber | Authentication |
| --- | --- |
| Haydn Price | Authenticated Electronically |

Dated: 13/05/2014

# Companies Registration Office

Registered No. E *906540*

# F12

Companies Acts, 1963 to 1999
European Communities (Branch Disclosures) Regulations, 1993

‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**4295493**

## Companies incorporated in EC countries

**RETURN,** pursuant to European Communities (Branch Disclosures) Regulations, 1993, by-

Insert Name and
legal form of Company    PABLO STAR LIMITED

Place of Registration of Company CARDIFF                Country WALES

Registered No. of Company 4865232

Name of Branch (if different from Company name) N/A

Address of Branch        2nd Floor
                         27 Capel Street
                         Dublin, D1

Activities of Branch    CREATION, SALES AND ADMIN OF MEDIA IP

Presented for filing:

**(A)  A Certified Copy** of the Charter, Statutes or Memorandum and Articles
of the Company, or other instrument constituting or defining the
constitution of the Company, or where Regulation 15 is applied complete
the section of this Form headed "Regulation 15 statement";

**(B)  A copy** of the certificate of incorporation of the company;

**(C)  Copies** of the latest accounting documents as required by Regulation
4(2)(i).

If these documents at (A), (B) and (C ) are not written in the Irish
or English language a certified translation thereof is required.

===================================================================

Presenter's Name Haydn Price

Address 2nd Floor, 27 Capel Street, Dublin D1

Telephone Number 0863798456                Reference PABLO

EXHIBIT C



FEE PAID
IN FULL
* 31 JAN 2011 *

List of and particulars respecting Persons authorised to represent the Company at the date of this return pursuant to Regulation 4(2)(f) or where Regulation 15 is applied complete the section of this form headed "Regulation 15 Statement".

Surname *Note 1* PRICE

Forename *Note 1* HAYDN

Former surnames *Note 2* ------

Former forename *Note 2* ------

Business occupation *Note 3* JOURNALIST

Date of Birth Day 12 Month 03 Year 1965

Usual residential address *Note 4*

Nationality BRITISH

51 REUBEN AVENUE, DUBLIN, D8

Other directorships (in Ireland and elsewhere) *Note 5* NO

a) State the extent of the authorised person's powers in relation to the activities of branch FULL (AS MANAGING DIRECTOR)

b) State whether the authorised person can represent the company alone or jointly with any other person(s) ALONE

---

Surname *Note 1*

Forename *Note 1*

Former surname *Note 2* 4

Former forename *Note 2*

Business occupation *Note 3*

Date of Birth Day            Month            Year

Usual residential address *Note 4*

Nationality

Other directorships (in Ireland and elsewhere *Note 5*

a)   State the extent of the authorised person's powers in relation to the activities of branch

b)   State whether the authorised person can represent the company alone or jointly with any other person(s)

---

Surname *Note 1*

Forename *Note 1*

Former surname *Note 2*

Former forename *Note 2*

Business occupation *Note 3*

Date of Birth Day            Month            Year

Usual residential address *Note 4*

Nationality

Other directorships (in Ireland and elsewhere *Note 5*

a)   State the extent of the authorised person's powers in relation to the activities of branch

b)   State whether the authorised person can represent the company alone or jointly with any other person(s)

EXHIBIT C

Surname *Note 1*                        Forename *Note 1*
Former surname *Note 2*                 Former forename *Note 2*
Business occupation *Note 3*            Date of Birth Day        Month        Year
Usual residential address *Note 4*      Nationality

Other directorships (in Ireland and elsewhere) *Note 5*

a) State the extent of the authorised person's powers in relation to the activities of branch

b) State whether the authorised person can represent the company alone or jointly with any
   other person(s)

---

Surname  *Note 1*                       Forename *Note 1*
Former surname *Note 2*                 Former forename *Note 2*
Business occupation *Note 3*            Date of Birth Day        Month        Year
Usual residential address *Note 4*      Nationality

Other directorships (in Ireland and elsewhere) *Note 5*

a) State the extent of the authorised person's powers in relation to activities of branch

b) State whether the authorised person can represent the company alone or jointly with any
   other person(s)

---

Surname  *Note 1*                       Forename *Note 1*
Former surname *Note 2*                 Former forename *Note 2*
Business occupation *Note 3*            Date of Birth Day        Month        Year
Usual residential address *Note 4*      Nationality

Other directorships (in Ireland and elsewhere) *Note 5*

a) State the extent of the authorised person's powers in relation to activities of branch

b) State whether the authorised person can represent the company alone or jointly with any
   other person(s)

---

EXHIBIT C

List of persons resident in the State authorised to accept service of process on behalf of the Company and any notices required to be served on the Company - Regulation 4 (2)(g).

Name HAYDN PRICE                    Name
Address  2nd FLOOR                   Address
       27 CAPEL STREET
       DUBLIN. D1

---

List of persons resident in the State responsible for ensuring compliance with these Regulations – Regulation 4 (2)(h).

Name HAYDN PRICE                    Name
Address 2nd FLOOR                   Address
       27 CAPEL STREET
       DUBLIN. D1

I hereby consent to act              I hereby consent to act
in this capacity                    in this capacity

Signature                       Signature
Date 31st January 2011                  Date

---

## Regulation 15 Statement

### The information detailed as follows

Insert
details of
information

is not returned with this Form because it has already been returned on        (1)
pursuant to             (2) in respect of        (3)

(1)    Insert date of return of information.

(2)    Insert legislative provision under which it was returned (Part XI of the Companies Act, 1963 or the European Communities (Branch Disclosures) Regulations, 1993).

(3)    Insert name of branch or place of business in respect of which the information was previously disclosed, together with  registered number.

---

Signature of a person authorised
under Regulation 4(2)(h) of the European Communities
(Branch Disclosures) Regulations, 1993.

Date 31st January 2011

---

EXHIBIT C

# Companies Registration Office



Registered No. E   957654



6087407

above

Companies Acts, 1963 to 2013
European Communities (Branch Disclosures) Regulations, 1993

## Companies incorporated in EC countries

**RETURN,** pursuant to European Communities (Branch Disclosures) Regulations, 1993, by-

Insert Name and
legal form of Company     Pablo Star Media Ltd

Place of Registration of Company Cardiff                    Country Wales

Registered No. of Company 9039350

Name of Branch (if different from Company name) --------

Address of Branch       1, 71 Sir John Rogerson Quay,
                        Dublin

Activities of Branch    Creation, sales and admin of IP

Presented for filing:

(A)   **A Certified Copy** of the Charter, Statutes or Memorandum and Articles
      of the Company, or other instrument constituting or defining the
      constitution of the Company, or where Regulation 15 is applied complete
      the section of this Form headed "Regulation 15 statement";

(B)   **A copy** of the certificate of incorporation of the company;

(C)   **Copies** of the latest accounting documents as required by Regulation
      4(2)(i).

If these documents at (A), (B) and (C ) are not written in the Irish
or English language a certified translation thereof is required.

Presenter's Name Haydn Price

Address 1, 71 Sir John Rogerson Quay, Dublin

Telephone Number                          Reference IRP

EXHIBIT D

List of and particulars respecting Persons authorised to represent the Company at the date of this return pursuant to Regulation 4(2)(f) or where Regulation 15 is applied complete the section of this form headed "Regulation 15 Statement".

Surname *Note 1* Price

Forename *Note 1* Haydn

Former surnames *Note 2* -----

Former forename *Note 2* -------

Business occupation *Note 3* Journalist

Date of Birth Day 12 Month 03Year1965

Usual residential address *Note 4*

Nationality British

Oak Cottage,

Kiltegan.

Co. Wicklow

Other directorships (in Ireland and elsewhere) *Note 5* Pablo Star Ltd

a) State the extent of the authorised person's powers in relation to the activities of branch Full

b) State whether the authorised person can represent the company alone or jointly with any other person(s) Yes

---

Surname *Note 1*

Forename *Note 1*

Former surname *Note 2* 4

Former forename *Note 2*

Business occupation *Note 3*

Date of Birth Day          Month          Year

Usual residential address *Note 4*

Nationality

Other directorships (in Ireland and elsewhere *Note 5*

a)   State the extent of the authorised person's powers in relation to the activities of branch

b)   State whether the authorised person can represent the company alone or jointly with any other person(s)

---

Surname *Note 1*

Forename *Note 1*

Former surname *Note 2*

Former forename *Note 2*

Business occupation *Note 3*

Date of Birth Day          Month          Year

Usual residential address *Note 4*

Nationality

Other directorships (in Ireland and elsewhere *Note 5*

a)   State the extent of the authorised person's powers in relation to the activities of branch

b)   State whether the authorised person can represent the company alone or jointly with any other person(s)

EXHIBIT D

Surname *Note 1*                                     Forename *Note 1*
Former surname *Note 2*                              Former forename *Note 2*
Business occupation *Note 3*                         Date of Birth Day          Month          Year
Usual residential address *Note 4*                   Nationality

Other directorships (in Ireland and elsewhere) *Note 5*

a)  State the extent of the authorised person's powers in relation to the activities of branch

b)  State whether the authorised person can represent the company alone or jointly with any
    other person(s)

Surname  *Note 1*                                    Forename *Note 1*
Former surname *Note 2*                              Former forename *Note 2*
Business occupation *Note 3*                         Date of Birth Day          Month          Year
Usual residential address *Note 4*                   Nationality

Other directorships (in Ireland and elsewhere) *Note 5*

a)  State the extent of the authorised person's powers in relation to activities of branch

b)  State whether the authorised person can represent the company alone or jointly with any
    other person(s)

Surname  *Note 1*                                    Forename *Note 1*
Former surname *Note 2*                              Former forename *Note 2*
Business occupation *Note 3*                         Date of Birth Day          Month          Year
Usual residential address *Note 4*                   Nationality

Other directorships (in Ireland and elsewhere) *Note 5*

a)  State the extent of the authorised person's powers in relation to activities of branch

b)  State whether the authorised person can represent the company alone or jointly with any
    other person(s)

EXHIBIT D

List of persons resident in the State authorised to accept service of process on behalf
of the Company and any notices required to be served on the Company - Regulation 4 (2)(g).

Name Haydn Price                                    Name
Address  Oak Cottage,                               Address
      Kiltegan.
      Co. Wicklow

---

List of persons resident in the State  responsible for ensuring compliance with these Regulations –
Regulation 4 (2)(h).

Name Haydn Price                                    Name
Address Oak Cottage,                                Address
      Kiltegan
      Co. Wicklow

I hereby consent to act                             I hereby consent to act
in this capacity                                    in this capacity

Signature                                           Signature
Date 23rd July 2014                                          Date

---

### Regulation 15 Statement

The information detailed as follows

Insert
details of
information

is not returned with this Form because it has already been returned on                    (1)
pursuant to                    (2) in respect of                    (3)

(1)      Insert date of return of information.

(2)      Insert legislative provision under which it was returned (Part XI of the Companies Act, 1963 or the
European Communities (Branch Disclosures) Regulations, 1993).

(3)      Insert name of branch or place of business in respect of which the information was
previously disclosed, together with  registered number.

---

Signature of a person authorised
under Regulation 4(2)(h) of the European Communities
(Branch Disclosures) Regulations, 1993.

Date 21/7/14.

EXHIBIT D

# Notes

"Director" includes any person who occupies the position of a director by whatever name called and any person in accordance with whose directions or instructions the directors of the company are accustomed to act.

(1)  (a)  Insert full name (initials will not suffice).
     (b)  In the case of a body corporate, the corporate name.

(2)  Former forename" and "former surname" do not include:-

    (a)        in the case of a person usually known by a title different from his surname, the name by which he was known by which he was known previous to the adoption of or succession to the title; or

    (b)        in the case of any person, a former forename or surname where that name or surname was changed or disused before the person bearing the name attained the age of eighteen years or has been changed or disused for a period of not less than twenty years; or

    (c)        in the case of a married woman the name or surname by which she was known previous to marriage.

(3)  Where no Business occupation, state "none".  Do not leave blank.

(4)  In the case of a body corporate the registered or principal office.

(5)  Company Name, Number and Country of Incorporation.

EXHIBIT D

# FILE COPY



## CERTIFICATE OF INCORPORATION

## OF A PRIVATE LIMITED COMPANY



Company No. 4865232

The Registrar of Companies for England and Wales hereby certifies that

PABLO STAR LIMITED

is this day incorporated under the Companies Act 1985 as a private

company and that the company is limited.

Given at Companies House, Cardiff, the 13th August 2003



**4295495**

*N04865232H*



FEE PAID IN FULL

3 1 JAN 2011

Companies Registration Office

*Companies House*
— *for the record* —



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES

EXHIBIT E
HC007B

040615

*The Companies Acts 1985 and 1989*

———

COMPANY LIMITED BY SHARES

———

# Memorandum of Association

OF

PABLO STAR

LIMITED



4295494

Signed by Haydon Price
in the presence of

*Eoin O'Shea*

*Solicitor*

*3 Chancery Place D. 7*

1. The Company's name is " **PABLO STAR**

   LIMITED."

2. The Company's registered office is to be situated in England and Wales.

3. The Company's objects are*:—

   (A)

         To provide intellectual property consultancy.

*Where the Memorandum states that the object of the Company is to carry on business as a general commercial company the object of the Company is to carry on any trade or business whatsoever and the Company has power to do all such things as are incidental or conducive to the carrying on of any trade or business by it – see section 3A of the Companies Act 1985 as amended by the Companies Act 1989. If it is intended that section 3A should apply, it would be prudent to delete the whole of Clause 3 and to substitute: "3. The object of the Company is to carry on business as a general commercial company."

FEE PAID IN FULL
31 JAN 2011
Companies Registration Office

   (B) To carry on any other trade or business which can, in the opinion of the Board of Directors, be advantageously carried on by the Company in connection with or as ancillary to any of the above businesses or the general business of the Company.

   (C) To purchase, take on lease or in exchange, hire or otherwise acquire and hold for any estate or interest any lands, buildings, easements, rights, privileges, concessions, patents, patent rights, licences, secret processes, machinery, plant, stock-in-trade, and any real or personal property of any kind necessary or convenient for the purpose of or in connection with the Company's business or any branch or department thereof.

EXHIBIT F

2

(D)  To erect, construct, lay down, enlarge, alter and maintain any roads, railways, tramways, sidings, bridges, reservoirs, shops, stores, factories, buildings, works, plant and machinery necessary or convenient for the Company's business, and to contribute to or subsidise the erection, construction and maintenance of any of the above.

(E)  To borrow or raise or secure the payment of money for the purpose of or in connection with the Company's business, and for the purposes of or in connection with the borrowing or raising of money by the Company to become a member of any building society.

(F)  To mortgage and charge the undertaking and all or any of the real and personal property and assets, present or future, and all or any of the uncalled capital for the time being of the Company, and to issue at par or at a premium or discount, and for such consideration and with such rights, powers and privileges as may be thought fit, debentures or debenture stock, either permanent or redeemable or repayable, and collaterally or further to secure any securities of the Company by a trust deed or other assurance.

(G)  To make advances to customers and others with or without security, and upon such terms as the Company may approve, and to guarantee the liabilities, obligations and contracts of any other person, firm or company whether a customer of the Company or otherwise, and the dividends, interest and capital of the shares, stocks or securities of any company of or in which this Company is a member or is otherwise interested.

(H)  To receive money on deposit or loan upon such terms as the Company may approve, and generally to act as bankers for customers and others.

(I)  To grant pensions, allowances, gratuities and bonuses to officers or ex-officers, employees or ex-employees of the Company or of any body corporate which is or has been a subsidiary of the Company or a predecessor in business of the Company or of any such subsidiary or to the dependants or any member of the family of such persons, and to contribute to any fund and pay premiums for the purchase or provision of any such benefit and to establish and support, or to aid in the establishment and support of, any

EXHIBIT F

3

schools and any educational, scientific, literary, religious or charitable institutions or trade societies, whether such institutions or societies be solely connected with the business carried on by the Company or its predecessors in business or not, and to institute and maintain any club or other establishment or benefit fund or profit-sharing scheme calculated to advance the interests of the Company or of the officers of or persons employed by the Company or any such subsidiary.

(J) To draw, make, accept, endorse, negotiate, discount and execute promissory notes, bills of exchange, and other negotiable instruments.

(K) To invest and deal with the moneys of the Company not immediately required for the purposes of the business of the Company in or upon such investments and in such manner as may from time to time be determined.

(L) To pay for any property or rights acquired by the Company either in cash or fully or partly paid-up shares, with or without preferred or deferred or special rights or restrictions in respect of dividend, repayment of capital, voting or otherwise, or by any securities which the Company has power to issue, or partly in one mode and partly in another, and generally on such terms as the Company may determine.

(M) To accept payment for any property or rights sold or otherwise disposed of or dealt with by the Company, either in cash, by instalments or otherwise, or in fully or partly paid-up shares or stock of any company or corporation, with or without preferred or deferred or special rights or restrictions in respect of dividend, repayment of capital, voting or otherwise, or in debentures or mortgage debentures or debenture stock, mortgages or other securities of any company or corporation, or partly in one mode and partly in another, and generally on such terms as the Company may determine, and to hold, dispose of or otherwise deal with any shares, stock or securities so acquired.

(N) To amalgamate with or enter into any partnership or arrangement for sharing profits, union of interests, reciprocal concession or co-operation with any company, firm or person carrying on or proposing to carry on any business within the objects of this Company or which is

EXHIBIT F

4

capable of being carried on so as directly or indirectly to benefit this Company, and to acquire and hold, sell, deal with or dispose of any shares, stock or securities of or other interests in any such company, and to guarantee the contracts or liabilities of, subsidise or otherwise assist, any such company.

(O) To purchase or otherwise acquire, take over and undertake all or any part of the business, property, liabilities and transactions of any person, firm or company carrying on any business which this Company is authorised to carry on, or the carrying on of which is calculated to benefit this Company or to advance its interests, or possessed of property suitable for the purposes of the Company.

(P) To sell, improve, manage, develop, turn to account, exchange, let on rent, royalty, share of profits or otherwise, grant licences, easements and other rights in or over, and in any other manner deal with or dispose of the undertaking and all or any of the property and assets for the time being of the Company for such consideration as the Company may think fit.

(Q) To distribute among the members in specie any property of the Company, or any proceeds of sale or disposal of any property of the Company, but so that no distribution amounting to a reduction of capital be made except with the sanction (if any) for the time being required by law.

(R) To do all or any of the above things in any part of the world, and either as principals, agents, trustees, contractors or otherwise, and either alone or in conjunction with others, and either by or through agents, trustees, sub-contractors or otherwise.

(S) To do all such other things as are incidental or conducive to the above objects or any of them.

And it is hereby declared that:—

(A) the word "Company" in this Clause, except where used in reference to this Company, shall be deemed to include any partnership or other body of persons, whether corporate or unincorporate, and whether incorporated, registered, resident or domiciled in the United Kingdom or elsewhere, and

EXHIBIT F

5

(B)   the objects of the Company specified in each of the foregoing paragraphs of this Clause shall be distinct and separate objects of the Company and shall be no way limited by reference to any other paragraphs hereof or to the order in which the same occur, but shall be construed in as wide a sense as possible as if each of the said paragraphs defined the objects of a separate and distinct company.

4.   The liability of the members is limited.

5.   The Company's share capital is £ 100 . divided into shares of £ 1 each.

WE, the Subscribers to this Memorandum of Association, wish to be formed into a Company pursuant to this Memorandum, and we agree to take the number of shares shown opposite our respective names.

| NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF SUBSCRIBER(S) | Number of Shares taken by each Subscriber |
|---|---|
| HAYDN PRICE<br>63 HAY GREEN LANE<br>BOURNVILLE<br>BIRMINGHAM<br>B30 1UP | 100 |

Dated this   7th   day of      AUGUST 2003

EXHIBIT F

25

6

NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF WITNESS(ES)

to the above Signature(s) —

JULIAN PHILIP KAHN
9 BROMFORD GARDENS
WESTFIELD ROAD
EDGBASTON
BIRMINGHAM
B15 3XD

NOTE: A subscriber which is a company should sign by its authorised officials in accordance with any relevant provisions in its articles of association.

EXHIBIT F

*The Companies Acts 1985 and 1989*

COMPANY LIMITED BY SHARES

## Articles of Association

OF

PABLO STAR

**LIMITED**

*Signed by Haydn Price*
*in the presence of*
*Eoin O'Shea*
*Solicitor*
*5 Chancery Place D. 7*

---

1. Subject as hereinafter provided, the regulations contained or incorporated in Table A in The Companies (Tables A to F) Regulations 1985 (hereinafter referred to as "Table A") shall apply to the Company.

2. Regulations 8, 64, 76, 77 and 113 of Table A shall not apply to the Company.

3. The Company is a private company and accordingly no offer or invitation shall be made to the public (whether for cash or otherwise) to subscribe for any shares in or debentures of the Company, nor shall the Company allot or agree to allot (whether for cash or otherwise) any shares in or debentures of the Company with a view to all or any of those shares or debentures being offered for sale to the public.

4. At the date of the adoption of these Articles the capital of the Company is £ 100 divided into 100 Ordinary Shares of £1 each.

5. (a) The Directors may subject to Article 6 hereof allot, grant options over, or otherwise deal with or dispose of any relevant securities (as defined by section 80(2) of the Companies Act 1985) of the Company to such persons and generally on such terms and conditions as the Directors think proper.

   (b) The general authority conferred by paragraph (a) of this Article shall be conditional upon due compliance with Article 6 hereof and shall extend to the amount of the authorised share capital of the Company upon its incorporation. The said authority will expire on the date of the fifth

8

anniversary of the incorporation unless renewed, varied or revoked by the Company in general meeting in accordance with section 80 or section 80A of the Act.

(c) The Directors shall be entitled under the general authority conferred by paragraph (a) of this Article to make at any time before the expiry of such authority any offer or agreement which will or might require relevant securities of the Company to be allotted after the expiry of such authority.

6. (a) Subject to any direction to the contrary that may be given by the Company in general meeting all shares authorised pursuant to Article 5 hereof to be allotted shall be offered to the members in proportion to the existing shares held by them and such offer shall be made by notice in writing specifying the number of the shares to which the member is entitled and limiting a time (being not less than 21 days) within which the offer if not accepted will be deemed to have been declined. and after the expiry of such time or upon receipt of an intimation from the member to whom such notice is given that he declines to accept the shares offered. the Directors may, subject to these Articles. allot or otherwise dispose of the same to such persons and upon such terms as they think most beneficial to the Company. The Directors may in like manner dispose of any such shares as aforesaid which. by reason of the proportion borne by them to the number of persons entitled to any such offer as aforesaid or by reason of any other difficulty in apportioning the same. cannot in the opinion of the Directors be conveniently offered in manner hereinbefore provided.

(b) By virtue of section 91(1) of the Companies Act 1985. sections 89(1) and 90(1) to 90(6) inclusive of that Act shall not apply to the Company.

7. The Company shall have a first and paramount lien on every share (whether or not it is a fully paid share) for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share and the Company shall also have a first and paramount lien on all shares (whether fully paid or not) standing registered in the name of any member whether solely or one of two or more joint holders for all moneys presently payable by him or his estate to the Company; but the Directors may at any time declare any share to be wholly or in part exempt from the provisions of this Article. The Company's lien (if any) on a share shall extend to all dividends payable thereon.

EXHIBIT F

9

8.  The Directors may, in their absolute discretion and without assigning any reason therefor, decline to register any transfer of any share. whether or not it is a fully paid share. The first sentence of Regulation 24 of Table A shall not apply to the Company.

9.  In accordance with section 372(3) of the Companies Act 1985 in every notice calling a General Meeting of the Company there shall appear with reasonable prominence a statement that a member entitled to attend and vote is entitled to appoint a proxy to attend and vote instead of him and that a proxy need not be a member of the Company. Regulation 38 of Table A shall be modified accordingly and the second sentence of Regulation 59 of Table A shall not apply to the Company.

10.  In Regulation 41 of Table A there shall be added at the end: "If at any adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the meeting shall be dissolved."

11.  Unless and until the Company in general meeting shall otherwise determine. there shall be no maximum number of Directors and the minimum number of Directors shall be one. If and so long as there is a sole Director he may exercise all the powers and authorities vested in the Directors by these Articles and by Table A and Regulation 89 of Table A shall be modified accordingly. The first Directors of the Company shall be as named in the statement delivered to the Registrar of Companies pursuant to section 10 of the Companies Act 1985.

12.  The Company shall not be subject to section 293 of the Companies Act 1985. and accordingly any person may be appointed or elected as a Director. whatever his age. and no Director shall be required to vacate his office of Director by reason of his attaining or having attained the age of seventy years or any other age.

13.  No person other than a Director retiring by rotation shall be elected a Director at any general meeting unless—

(i)  he is recommended by the Directors: or

(ii)  not less than fourteen nor more than thirty-five clear days before the date of the meeting a notice has been given to the Company by a member qualified to vote at the meeting of the intention to propose that person for election. together with a notice by that person confirming his willingness to be elected.

10

14.   A Director shall not be required to hold any share qualification but shall nevertheless be entitled to receive notice of and to attend at all general meetings of the Company and at all separate general meetings of the holders of any class of shares in the capital of the Company.

---

NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF SUBSCRIBER(S)

---

HAYDN PRICE
63 HAY GREEN LANE
BOURNVILLE
BIRMINGHAM
B30 1UP

---

Dated this 7th     day of  AUGUST 2003

NAME(S), ADDRESS(ES) AND SIGNATURE(S) OF WITNESS(ES)

to the above Signature(s) —

JULIAN PHILIP KAHN
9 BROMFORD GARDENS
WESTFIELD ROAD
EDGBASTON
BIRMINGHAM
B15 3XD

NOTE: A subscriber which is a company should sign by its authorised officials in accordance with any relevant provisions in its articles of association.                                        EXHIBIT F





6087409

# CERTIFICATE OF INCORPORATION
# OF A
# PRIVATE LIMITED COMPANY

## Company Number **9039350**

The Registrar of Companies for England and Wales, hereby certifies that

PABLO STAR MEDIA LIMITED

is this day incorporated under the Companies Act 2006 as a private company, that the company is limited by shares, and the situation of its registered office is in England and Wales.

Given at Companies House, Cardiff, on **14th May 2014**.

The above information was communicated by electronic means and authenticated by the
Registrar of Companies under section 1115 of the Companies Act 2006



**THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES**



**Companies House**

EXHIBIT G

**File Copy**



# CERTIFICATE OF INCORPORATION
# OF A
# PRIVATE LIMITED COMPANY

## Company Number  **9039350**

The Registrar of Companies for England and Wales, hereby certifies that

PABLO STAR MEDIA LIMITED

is this day incorporated under the Companies Act 2006 as a private company, that the company is limited by shares, and the situation of its registered office is in England and Wales

Given at Companies House, Cardiff, on **14th May 2014**

The above information was communicated by electronic means and authenticated by the Registrar of Companies under section 1115 of the Companies Act 2006


Companies House


THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES

EXHIBIT G


**Companies House**

# IN01(ef)

## Application to register a company

*Received for filing in Electronic Format on the:* **13/05/2014**

| | |
|---|---|
| *Company Name in full:* | **PABLO STAR MEDIA LIMITED** |
| *Company Type:* | **Private limited by shares** |
| *Situation of Registered Office:* | **England and Wales** |
| *Proposed Register Office Address:* | **71-75 SHELTON STREET**<br>**LONDON**<br>**LONDON**<br>**UNITED KINGDOM**<br>**WC2H 9JQ** |

*I wish to entirely adopt the following model articles:*   **Private (Ltd by Shares)**

---

EXHIBIT G

## Proposed Officers

*Company Secretary 1*

| | |
|---|---|
| *Type:* | **Person** |
| *Full forename(s):* | **MR HAYDN** |

*Surname:* **PRICE**

*Former names:*

*Service Address recorded as Company's registered office*

*Consented to Act:* **Y**     *Date authorised:* **14/05/2014**     *Authenticated:* **YES**

---

EXHIBIT G

## Company Director   *1*

| | |
|---|---|
| *Type:* | **Person** |
| *Full forename(s):* | **MR HAYDN** |

*Surname:*            **PRICE**

*Former names:*

*Service Address recorded as Company's registered office*

*Country/State Usually Resident:*  **IRELAND**

*Date of Birth:* **12/03/1965**              *Nationality:* **BRITISH**
*Occupation:*   **JOURNALIST**

*Consented to Act:* **Y**          *Date authorised:* **14/05/2014**     *Authenticated:* **YES**

---

EXHIBIT G

EXHIBIT G

## Statement of Capital   (Share Capital)

| Class of shares | ORDINARY | Number allotted | 100 |
| | | Aggregate nominal value | 100 |
| Currency | GBP | Amount paid per share | 1 |
| | | Amount unpaid per share | 0 |

Prescribed particulars

EACH SHARE HAS FULL RIGHTS IN THE COMPANY WITH RESPECT TO VOTING, DIVIDENDS AND DISTRIBUTIONS.

## Statement of Capital   (Totals)

| Currency | GBP | Total number of shares | 100 |
| | | Total aggregate nominal value | 100 |

EXHIBIT G



# Initial Shareholdings

*Name:* **HAYDN PRICE**

*Address:* **71 SHELTON STREET**
**LONDON**
**LONDON**
**UNITED KINGDOM**
**WC2H 9JQ**

| | |
|---|---|
| *Class of share:* | **ORDINARY** |
| *Number of shares:* | **100** |
| *Currency:* | **GBP** |
| *Nominal value of each share:* | **1** |
| *Amount unpaid:* | **0** |
| *Amount paid:* | **1** |

EXHIBIT G

EXHIBIT G

## Statement of Compliance

*I confirm the requirements of the Companies Act 2006 as to registration have been complied with.*

*Name:* **HAYDN PRICE**

*Authenticated:* **YES**

## *Authorisation*

*Authoriser Designation:* **subscriber**                     *Authenticated:* **Yes**

---

EXHIBIT G



**6087408**

# COMPANY HAVING A SHARE CAP

## Memorandum of association of
## PABLO STAR MEDIA LIMITED

Each subscriber to this memorandum of association wishes to form a company under the Companies Act 2006 and agrees to become a member of the company and to take at least one share.

| Name of each subscriber | Authentication |
|---|---|
| Haydn Price | Authenticated Electronically |

Dated: 13/05/2014

*1*

EXHIBIT H

# ARTICLES OF ASSOCIATION FOR
## PABLO STAR MEDIA LTD
## Company number 9039350

# A COMPANY LIMITED BY SHARES

## INDEX TO THE ARTICLES

### PART 1
### INTERPRETATION AND LIMITATION OF LIABILITY

1. Defined terms
2. Liability of members

### PART 2
### DIRECTORS
### DIRECTORS' POWERS AND RESPONSIBILITIES

3. Directors' general authority
4. Shareholders' reserve power
5. Directors may delegate
6. Committees

### DECISION-MAKING BY DIRECTORS

7. Directors to take decisions collectively
8. Unanimous decisions
9. Calling a directors' meeting
10. Participation in directors' meetings
11. Quorum for directors' meetings
12. Chairing of directors' meetings
13. Casting vote
14. Conflicts of interest
15. Records of decisions to be kept
16. Directors' discretion to make further rules

### APPOINTMENT OF DIRECTORS

17. Methods of appointing directors
18. Termination of director's appointment
19. Directors' remuneration
20. Directors' expenses

### PART 3
### SHARES AND DISTRIBUTIONS
### SHARES

21. All shares to be fully paid up

CLARKE JEFFERS &
Solicitors
30 DUBLIN STREET
CARLOW H
Phone(0503)31656

22. Powers to issue different classes of share
23. Company not bound by less than absolute interests
24. Share certificates
25. Replacement share certificates
26. Share transfers
27. Transmission of shares
28. Exercise of transmittees' rights
29. Transmittees bound by prior notices

## DIVIDENDS AND OTHER DISTRIBUTIONS

30. Procedure for declaring dividends
31. Payment of dividends and other distributions
32. No interest on distributions
33. Unclaimed distributions
34. Non-cash distributions
35. Waiver of distributions

## CAPITALISATION OF PROFITS

36. Authority to capitalise and appropriation of capitalised sums

# PART 4
# DECISION-MAKING BY SHAREHOLDERS
## ORGANISATION OF GENERAL MEETINGS

37. Attendance and speaking at general meetings
38. Quorum for general meetings
39. Chairing general meetings
40. Attendance and speaking by directors and non-shareholders
41. Adjournment

## VOTING AT GENERAL MEETINGS

42. Voting: general
43. Errors and disputes
44. Poll votes
45. Content of proxy notices
46. Delivery of proxy notices
47. Amendments to resolutions

# PART 5
# ADMINISTRATIVE ARRANGEMENTS

48. Means of communication to be used
49. Company seals
50. No right to inspect accounts and other records
51. Provision for employees on cessation of business

## DIRECTORS' INDEMNITY AND INSURANCE

52. Indemnity
53. Insurance

EXHIBIT H

# PART 1

# INTERPRETATION AND LIMITATION OF LIABILITY

**Defined terms**

**1.** In the articles, unless the context requires otherwise—

"articles" means the company's articles of association;

"bankruptcy" includes individual insolvency proceedings in a jurisdiction other than England and Wales or Northern Ireland which have an effect similar to that of bankruptcy;

"chairman" has the meaning given in article 12;

"chairman of the meeting" has the meaning given in article 39;

"Companies Acts" means the Companies Acts (as defined in section 2 of the Companies Act 2006), in so far as they apply to the company;

"director" means a director of the company, and includes any person occupying the position of director, by whatever name called;

"distribution recipient" has the meaning given in article 31;

"document" includes, unless otherwise specified, any document sent or supplied in electronic form;

"electronic form" has the meaning given in section 1168 of the Companies Act 2006;

"fully paid" in relation to a share, means that the nominal value and any premium to be paid to the company in respect of that share have been paid to the company;

"hard copy form" has the meaning given in section 1168 of the Companies Act 2006;

"holder" in relation to shares means the person whose name is entered in the register of

members as the holder of the shares;

"instrument" means a document in hard copy form;

"ordinary resolution" has the meaning given in section 282 of the Companies Act 2006;

"paid" means paid or credited as paid;

"participate", in relation to a directors' meeting, has the meaning given in article 10;

"proxy notice" has the meaning given in article 45;

EXHIBIT H

"shareholder" means a person who is the holder of a share;

"shares" means shares in the company;

"special resolution" has the meaning given in section 283 of the Companies Act 2006;

"subsidiary" has the meaning given in section 1159 of the Companies Act 2006;

"transmittee" means a person entitled to a share by reason of the death or bankruptcy of a

shareholder or otherwise by operation of law; and

"writing" means the representation or reproduction of words, symbols or other information in a visible form by any method or combination of methods, whether sent or supplied in electronic form or otherwise.

Unless the context otherwise requires, other words or expressions contained in these articles bear the same meaning as in the Companies Act 2006 as in force on the date when these articles become binding on the company.

**Liability of members**

**2.** The liability of the members is limited to the amount, if any, unpaid on the shares held by them.

# PART 2

## DIRECTORS

### DIRECTORS' POWERS AND RESPONSIBILITIES

**Directors' general authority**

**3.** Subject to the articles, the directors are responsible for the management of the company's business, for which purpose they may exercise all the powers of the company.

**Shareholders' reserve power**

**4.**—(1) The shareholders may, by special resolution, direct the directors to take, or refrain from taking, specified action.
   (2) No such special resolution invalidates anything which the directors have done before the passing of the resolution.

**Directors may delegate**

**5.**—(1) Subject to the articles, the directors may delegate any of the powers which are conferred on them under the articles—
   (a) to such person or committee;
   (b) by such means (including by power of attorney);

EXHIBIT H

(c) to such an extent;
(d) in relation to such matters or territories; and
(e) on such terms and conditions;
as they think fit.

(2) If the directors so specify, any such delegation may authorise further delegation of the
directors' powers by any person to whom they are delegated.
(3) The directors may revoke any delegation in whole or part, or alter its terms and conditions.

## Committees

**6.**—(1) Committees to which the directors delegate any of their powers must follow procedures which are based as far as they are applicable on those provisions of the articles which govern the taking of decisions by directors.
    (2) The directors may make rules of procedure for all or any committees, which prevail over rules derived from the articles if they are not consistent with them.

## DECISION-MAKING BY DIRECTORS

### Directors to take decisions collectively

**7.**—(1) The general rule about decision-making by directors is that any decision of the directors must be either a majority decision at a meeting or a decision taken in accordance with article 8.
(2) If—
    (a) the company only has one director, and
    (b) no provision of the articles requires it to have more than one director,
the general rule does not apply, and the director may take decisions without regard to any of the provisions of the articles relating to directors' decision-making.

### Unanimous decisions

**8.**—(1) A decision of the directors is taken in accordance with this article when all eligible directors indicate to each other by any means that they share a common view on a matter.
(2) Such a decision may take the form of a resolution in writing, copies of which have been signed by each eligible director or to which each eligible director has otherwise indicated agreement in writing.
(3) References in this article to eligible directors are to directors who would have been entitled to vote on the matter had it been proposed as a resolution at a directors' meeting.
(4) A decision may not be taken in accordance with this article if the eligible directors would not have formed a quorum at such a meeting.

### Calling a directors' meeting

**9.**—(1) Any director may call a directors' meeting by giving notice of the meeting to the
directors or by authorising the company secretary (if any) to give such notice.

EXHIBIT H

(2) Notice of any directors' meeting must indicate—
      (a) its proposed date and time;
      (b) where it is to take place; and
      (c) if it is anticipated that directors participating in the meeting will not be in the
      same place, how it is proposed that they should communicate with each other
      during the meeting.
(3) Notice of a directors' meeting must be given to each director, but need not be in
writing.
(4) Notice of a directors' meeting need not be given to directors who waive their
entitlement to notice of that meeting, by giving notice to that effect to the company
not more than 7 days after the date on which the meeting is held. Where such notice is
given after the meeting has been held, that does not affect the validity of the meeting,
or of any business conducted at it.

**Participation in directors' meetings**

**10.**—(1) Subject to the articles, directors participate in a directors' meeting, or part of
a
directors' meeting, when—
      (a) the meeting has been called and takes place in accordance with the articles,
      and
      (b) they can each communicate to the others any information or opinions they
      have on any particular item of the business of the meeting.
(2) In determining whether directors are participating in a directors' meeting, it is
irrelevant where any director is or how they communicate with each other.
(3) If all the directors participating in a meeting are not in the same place, they may
decide that the meeting is to be treated as taking place wherever any of them is.

**Quorum for directors' meetings**

**11.**—(1) At a directors' meeting, unless a quorum is participating, no proposal is to be
voted on, except a proposal to call another meeting.
(2) The quorum for directors' meetings may be fixed from time to time by a decision
of the directors, but it must never be less than two, and unless otherwise fixed it is
two.
(3) If the total number of directors for the time being is less than the quorum required,
the
directors must not take any decision other than a decision—
      (a) to appoint further directors, or
      (b) to call a general meeting so as to enable the shareholders to appoint further
      directors.

**Chairing of directors' meetings**

**12.**—(1) The directors may appoint a director to chair their meetings.
(2) The person so appointed for the time being is known as the chairman.
(3) The directors may terminate the chairman's appointment at any time.
(4) If the chairman is not participating in a directors' meeting within ten minutes of
the time at which it was to start, the participating directors must appoint one of
themselves to chair it.

EXHIBIT H

**Casting vote**

**13.**—(1) If the numbers of votes for and against a proposal are equal, the chairman or other director chairing the meeting has a casting vote.

(2) But this does not apply if, in accordance with the articles, the chairman or other director is not to be counted as participating in the decision-making process for quorum or voting purposes.

**Conflicts of interest**

**14.**—(1) If a proposed decision of the directors is concerned with an actual or proposed
transaction or arrangement with the company in which a director is interested, that director is not to be counted as participating in the decision-making process for quorum or voting purposes.

(2) But if paragraph (3) applies, a director who is interested in an actual or proposed transaction or arrangement with the company is to be counted as participating in the decision-making process for quorum and voting purposes.

(3) This paragraph applies when—

    (a) the company by ordinary resolution disapplies the provision of the articles which would otherwise prevent a director from being counted as participating in the decision-making process;

    (b) the director's interest cannot reasonably be regarded as likely to give rise to a conflict of interest; or

    (c) the director's conflict of interest arises from a permitted cause.

(4) For the purposes of this article, the following are permitted causes—

    (a) a guarantee given, or to be given, by or to a director in respect of an obligation incurred by or on behalf of the company or any of its subsidiaries;

    (b) subscription, or an agreement to subscribe, for shares or other securities of the company or any of its subsidiaries, or to underwrite, sub-underwrite, or guarantee subscription for any such shares or securities; and

    (c) arrangements pursuant to which benefits are made available to employees and directors or former employees and directors of the company or any of its subsidiaries which do not provide special benefits for directors or former directors.

(5) For the purposes of this article, references to proposed decisions and decision-making
processes include any directors' meeting or part of a directors' meeting.

(6) Subject to paragraph (7), if a question arises at a meeting of directors or of a committee of directors as to the right of a director to participate in the meeting (or part of the meeting) for voting or quorum purposes, the question may, before the conclusion of the meeting, be referred to the chairman whose ruling in relation to any director other than the chairman is to be final and conclusive.

(7) If any question as to the right to participate in the meeting (or part of the meeting) should arise in respect of the chairman, the question is to be decided by a decision of the directors at that meeting, for which purpose the chairman is not to be counted as participating in the meeting (or that part of the meeting) for voting or quorum purposes.

EXHIBIT H

**Records of decisions to be kept**

**15.** The directors must ensure that the company keeps a record, in writing, for at least 10 years from the date of the decision recorded, of every unanimous or majority decision taken by the directors.

**Directors' discretion to make further rules**

**16.** Subject to the articles, the directors may make any rule which they think fit about how they take decisions, and about how such rules are to be recorded or communicated to directors.

## APPOINTMENT OF DIRECTORS

**Methods of appointing directors**

**17.**—(1) Any person who is willing to act as a director, and is permitted by law to do so, may be appointed to be a director—
    (a) by ordinary resolution, or
    (b) by a decision of the directors.
(2) In any case where, as a result of death, the company has no shareholders and no directors, the personal representatives of the last shareholder to have died have the right, by notice in writing, to appoint a person to be a director.
(3) For the purposes of paragraph (2), where 2 or more shareholders die in circumstances
rendering it uncertain who was the last to die, a younger shareholder is deemed to have survived an older shareholder.

**Termination of director's appointment**

**18.** A person ceases to be a director as soon as—
    (a) that person ceases to be a director by virtue of any provision of the Companies Act 2006 or is prohibited from being a director by law;
    (b) a bankruptcy order is made against that person;
    (c) a composition is made with that person's creditors generally in satisfaction of that
person's debts;
    (d) a registered medical practitioner who is treating that person gives a written opinion to the company stating that that person has become physically or mentally incapable of acting as a director and may remain so for more than three months;
    *(e) [paragraph omitted pursuant to The Mental Health (Discrimination) Act 2013]*
    (f) notification is received by the company from the director that the director is resigning from office, and such resignation has taken effect in accordance with its terms.

**Directors' remuneration**

EXHIBIT H

**19.**—(1) Directors may undertake any services for the company that the directors decide.

(2) Directors are entitled to such remuneration as the directors determine—

    (a) for their services to the company as directors, and

    (b) for any other service which they undertake for the company.

(3) Subject to the articles, a director's remuneration may—

    (a) take any form, and

    (b) include any arrangements in connection with the payment of a pension, allowance or gratuity, or any death, sickness or disability benefits, to or in respect of that director.

(4) Unless the directors decide otherwise, directors' remuneration accrues from day to day.

(5) Unless the directors decide otherwise, directors are not accountable to the company for any remuneration which they receive as directors or other officers or employees of the company's subsidiaries or of any other body corporate in which the company is interested.

**Directors' expenses**

**20.** The company may pay any reasonable expenses which the directors properly incur in
connection with their attendance at—

    (a) meetings of directors or committees of directors,

    (b) general meetings, or

    (c) separate meetings of the holders of any class of shares or of debentures of the company, or otherwise in connection with the exercise of their powers and the discharge of their responsibilities in relation to the company.

# PART 3

## SHARES AND DISTRIBUTIONS

### SHARES

**All shares to be fully paid up**

**21.**—(1) No share is to be issued for less than the aggregate of its nominal value and any
premium to be paid to the company in consideration for its issue.

(2) This does not apply to shares taken on the formation of the company by the subscribers to the company's memorandum.

**Powers to issue different classes of share**

**22.**—(1) Subject to the articles, but without prejudice to the rights attached to any existing share, the company may issue shares with such rights or restrictions as may be determined by ordinary resolution.

EXHIBIT H

(2) The company may issue shares which are to be redeemed, or are liable to be redeemed at the option of the company or the holder, and the directors may determine the terms, conditions and manner of redemption of any such shares.

**Company not bound by less than absolute interests**

**23.** Except as required by law, no person is to be recognised by the company as holding any share upon any trust, and except as otherwise required by law or the articles, the company is not in any way to be bound by or recognise any interest in a share other than the holder's absolute ownership of it and all the rights attaching to it.

**Share certificates**

**24.**—(1) The company must issue each shareholder, free of charge, with one or more certificates in respect of the shares which that shareholder holds.
(2) Every certificate must specify—
 (a) in respect of how many shares, of what class, it is issued;
 (b) the nominal value of those shares;
 (c) that the shares are fully paid; and
 (d) any distinguishing numbers assigned to them.
(3) No certificate may be issued in respect of shares of more than one class.
(4) If more than one person holds a share, only one certificate may be issued in respect of it.
(5) Certificates must—
 (a) have affixed to them the company's common seal, or
 (b) be otherwise executed in accordance with the Companies Acts.

**Replacement share certificates**

**25.**—(1) If a certificate issued in respect of a shareholder's shares is—
 (a) damaged or defaced, or
 (b) said to be lost, stolen or destroyed, that shareholder is entitled to be issued with a replacement certificate in respect of the same shares.
(2) A shareholder exercising the right to be issued with such a replacement certificate—

 (a) may at the same time exercise the right to be issued with a single certificate or separate certificates;
 (b) must return the certificate which is to be replaced to the company if it is damaged or defaced; and
 (c) must comply with such conditions as to evidence, indemnity and the payment of a
reasonable fee as the directors decide.

**Share transfers**

**26.**—(1) Shares may be transferred by means of an instrument of transfer in any usual form or any other form approved by the directors, which is executed by or on behalf of the transferor.

EXHIBIT H

(2) No fee may be charged for registering any instrument of transfer or other document relating to or affecting the title to any share.

(3) The company may retain any instrument of transfer which is registered.

(4) The transferor remains the holder of a share until the transferee's name is entered in the register of members as holder of it.

(5) The directors may refuse to register the transfer of a share, and if they do so, the instrument of transfer must be returned to the transferee with the notice of refusal unless they suspect that the proposed transfer may be fraudulent.

**Transmission of shares**

**27.**—(1) If title to a share passes to a transmittee, the company may only recognise the
transmittee as having any title to that share.

(2) A transmittee who produces such evidence of entitlement to shares as the directors may properly require—

    (a) may, subject to the articles, choose either to become the holder of those shares or to have them transferred to another person, and

    (b) subject to the articles, and pending any transfer of the shares to another person, has the same rights as the holder had.

(3) But transmittees do not have the right to attend or vote at a general meeting, or agree to a proposed written resolution, in respect of shares to which they are entitled, by reason of the holder's death or bankruptcy or otherwise, unless they become the holders of those shares.

**Exercise of transmittees' rights**

**28.**—(1) Transmittees who wish to become the holders of shares to which they have become entitled must notify the company in writing of that wish.

(2) If the transmittee wishes to have a share transferred to another person, the transmittee must execute an instrument of transfer in respect of it.

(3) Any transfer made or executed under this article is to be treated as if it were made or
executed by the person from whom the transmittee has derived rights in respect of the share, and as if the event which gave rise to the transmission had not occurred.

**Transmittees bound by prior notices**

**29.** If a notice is given to a shareholder in respect of shares and a transmittee is entitled to those shares, the transmittee is bound by the notice if it was given to the shareholder before the transmittee's name has been entered in the register of members.

## DIVIDENDS AND OTHER DISTRIBUTIONS

**Procedure for declaring dividends**

**30.**—(1) The company may by ordinary resolution declare dividends, and the directors may decide to pay interim dividends.

(2) A dividend must not be declared unless the directors have made a recommendation as to its amount. Such a dividend must not exceed the amount recommended by the directors.

(3) No dividend may be declared or paid unless it is in accordance with shareholders' respective rights.

(4) Unless the shareholders' resolution to declare or directors' decision to pay a dividend, or the terms on which shares are issued, specify otherwise, it must be paid by reference to each shareholder's holding of shares on the date of the resolution or decision to declare or pay it.

(5) If the company's share capital is divided into different classes, no interim dividend may be paid on shares carrying deferred or non-preferred rights if, at the time of payment, any preferential dividend is in arrear.

(6) The directors may pay at intervals any dividend payable at a fixed rate if it appears to them that the profits available for distribution justify the payment.

(7) If the directors act in good faith, they do not incur any liability to the holders of shares conferring preferred rights for any loss they may suffer by the lawful payment of an interim dividend on shares with deferred or non-preferred rights.

## Payment of dividends and other distributions

**31.**—(1) Where a dividend or other sum which is a distribution is payable in respect of a share, it must be paid by one or more of the following means—

    (a) transfer to a bank or building society account specified by the distribution recipient either in writing or as the directors may otherwise decide;

    (b) sending a cheque made payable to the distribution recipient by post to the distribution recipient at the distribution recipient's registered address (if the distribution recipient is a holder of the share), or (in any other case) to an address specified by the distribution recipient either in writing or as the directors may otherwise decide;

    (c) sending a cheque made payable to such person by post to such person at such address as the distribution recipient has specified either in writing or as the directors may otherwise decide; or

    (d) any other means of payment as the directors agree with the distribution recipient either in writing or by such other means as the directors decide.

(2) In the articles, "the distribution recipient" means, in respect of a share in respect of which a dividend or other sum is payable—

    (a) the holder of the share; or

    (b) if the share has two or more joint holders, whichever of them is named first in the register of members; or

    (c) if the holder is no longer entitled to the share by reason of death or bankruptcy, or otherwise by operation of law, the transmittee.

## No interest on distributions

**32.** The company may not pay interest on any dividend or other sum payable in respect of a share unless otherwise provided by—

    (a) the terms on which the share was issued, or

EXHIBIT H

(b) the provisions of another agreement between the holder of that share and the company.

## Unclaimed distributions

**33.**—(1) All dividends or other sums which are—
(a) payable in respect of shares, and
(b) unclaimed after having been declared or become payable,
may be invested or otherwise made use of by the directors for the benefit of the company until claimed.
(2) The payment of any such dividend or other sum into a separate account does not make the company a trustee in respect of it.
(3) If—
(a) twelve years have passed from the date on which a dividend or other sum became due for payment, and
(b) the distribution recipient has not claimed it,
the distribution recipient is no longer entitled to that dividend or other sum and it ceases to remain owing by the company.

## Non-cash distributions

**34.**—(1) Subject to the terms of issue of the share in question, the company may, by ordinary resolution on the recommendation of the directors, decide to pay all or part of a dividend or other distribution payable in respect of a share by transferring non-cash assets of equivalent value (including, without limitation, shares or other securities in any company).
(2) For the purposes of paying a non-cash distribution, the directors may make whatever
arrangements they think fit, including, where any difficulty arises regarding the distribution—
(a) fixing the value of any assets;
(b) paying cash to any distribution recipient on the basis of that value in order to adjust the rights of recipients; and
(c) vesting any assets in trustees.
## Waiver of distributions

**35.** Distribution recipients may waive their entitlement to a dividend or other distribution
payable in respect of a share by giving the company notice in writing to that effect, but if—
(a) the share has more than one holder, or
(b) more than one person is entitled to the share, whether by reason of the death or
bankruptcy of one or more joint holders, or otherwise,
the notice is not effective unless it is expressed to be given, and signed, by all the holders or persons otherwise entitled to the share.

## CAPITALISATION OF PROFITS

EXHIBIT H

(b) it appears to the chairman of the meeting that an adjournment is necessary to protect the safety of any person attending the meeting or ensure that the business of the meeting is conducted in an orderly manner.

(3) The chairman of the meeting must adjourn a general meeting if directed to do so by the meeting.

(4) When adjourning a general meeting, the chairman of the meeting must—

(a) either specify the time and place to which it is adjourned or state that it is to continue at a time and place to be fixed by the directors, and

(b) have regard to any directions as to the time and place of any adjournment which have been given by the meeting.

(5) If the continuation of an adjourned meeting is to take place more than 14 days after it was adjourned, the company must give at least 7 clear days' notice of it (that is, excluding the day of the adjourned meeting and the day on which the notice is given)—

(a) to the same persons to whom notice of the company's general meetings is required to be given, and

(b) containing the same information which such notice is required to contain.

(6) No business may be transacted at an adjourned general meeting which could not properly have been transacted at the meeting if the adjournment had not taken place.

## VOTING AT GENERAL MEETINGS

**Voting: general**

**42.** A resolution put to the vote of a general meeting must be decided on a show of hands unless a poll is duly demanded in accordance with the articles.

**Errors and disputes**

**43.**—(1) No objection may be raised to the qualification of any person voting at a general
meeting except at the meeting or adjourned meeting at which the vote objected to is tendered, and every vote not disallowed at the meeting is valid.

(2) Any such objection must be referred to the chairman of the meeting, whose decision is final.

**Poll votes**

**44.**—(1) A poll on a resolution may be demanded—

(a) in advance of the general meeting where it is to be put to the vote, or

(b) at a general meeting, either before a show of hands on that resolution or immediately after the result of a show of hands on that resolution is declared.

(2) A poll may be demanded by—

(a) the chairman of the meeting;

(b) the directors;

(c) two or more persons having the right to vote on the resolution; or

EXHIBIT H

(d) a person or persons representing not less than one tenth of the total voting rights of all the shareholders having the right to vote on the resolution.

(3) A demand for a poll may be withdrawn if—

(a) the poll has not yet been taken, and

(b) the chairman of the meeting consents to the withdrawal.

(4) Polls must be taken immediately and in such manner as the chairman of the meeting directs.

**Content of proxy notices**

**45.**—(1) Proxies may only validly be appointed by a notice in writing (a "proxy notice") which—

(a) states the name and address of the shareholder appointing the proxy;

(b) identifies the person appointed to be that shareholder's proxy and the general meeting in relation to which that person is appointed;

(c) is signed by or on behalf of the shareholder appointing the proxy, or is authenticated in such manner as the directors may determine; and

(d) is delivered to the company in accordance with the articles and any instructions contained in the notice of the general meeting to which they relate.

(2) The company may require proxy notices to be delivered in a particular form, and may specify different forms for different purposes.

(3) Proxy notices may specify how the proxy appointed under them is to vote (or that the proxy is to abstain from voting) on one or more resolutions.

(4) Unless a proxy notice indicates otherwise, it must be treated as—

(a) allowing the person appointed under it as a proxy discretion as to how to vote on any ancillary or procedural resolutions put to the meeting, and

(b) appointing that person as a proxy in relation to any adjournment of the general meeting to which it relates as well as the meeting itself.

**Delivery of proxy notices**

**46.**—(1) A person who is entitled to attend, speak or vote (either on a show of hands or on a poll) at a general meeting remains so entitled in respect of that meeting or any adjournment of it, even though a valid proxy notice has been delivered to the company by or on behalf of that person.

(2) An appointment under a proxy notice may be revoked by delivering to the company a notice in writing given by or on behalf of the person by whom or on whose behalf the proxy notice was given.

(3) A notice revoking a proxy appointment only takes effect if it is delivered before the start of the meeting or adjourned meeting to which it relates.

(4) If a proxy notice is not executed by the person appointing the proxy, it must be accompanied by written evidence of the authority of the person who executed it to execute it on the appointor's behalf.

**Amendments to resolutions**

**47.**—(1) An ordinary resolution to be proposed at a general meeting may be amended by ordinary resolution if—

EXHIBIT H

(a) notice of the proposed amendment is given to the company in writing by a person entitled to vote at the general meeting at which it is to be proposed not less than 48 hours before the meeting is to take place (or such later time as the chairman of the meeting may determine), and

(b) the proposed amendment does not, in the reasonable opinion of the chairman of the meeting, materially alter the scope of the resolution.

(2) A special resolution to be proposed at a general meeting may be amended by ordinary resolution, if—

(a) the chairman of the meeting proposes the amendment at the general meeting at which the resolution is to be proposed, and

(b) the amendment does not go beyond what is necessary to correct a grammatical or other non-substantive error in the resolution.

(3) If the chairman of the meeting, acting in good faith, wrongly decides that an amendment to a resolution is out of order, the chairman's error does not invalidate the vote on that resolution.

# PART 5

## ADMINISTRATIVE ARRANGEMENTS

**Means of communication to be used**

**48.**—(1) Subject to the articles, anything sent or supplied by or to the company under the articles may be sent or supplied in any way in which the Companies Act 2006 provides for documents or information which are authorised or required by any provision of that Act to be sent or supplied by or to the company.

(2) Subject to the articles, any notice or document to be sent or supplied to a director in
connection with the taking of decisions by directors may also be sent or supplied by the means by which that director has asked to be sent or supplied with such notices or documents for the time being.

(3) A director may agree with the company that notices or documents sent to that director in a particular way are to be deemed to have been received within a specified time of their being sent, and for the specified time to be less than 48 hours.

**Company seals**

**49.**—(1) Any common seal may only be used by the authority of the directors.

(2) The directors may decide by what means and in what form any common seal is to be used.

(3) Unless otherwise decided by the directors, if the company has a common seal and it is
affixed to a document, the document must also be signed by at least one authorised person in the presence of a witness who attests the signature.

(4) For the purposes of this article, an authorised person is—

(a) any director of the company;

(b) the company secretary (if any); or

(c) any person authorised by the directors for the purpose of signing documents to which the common seal is applied.

EXHIBIT H

**No right to inspect accounts and other records**

**50.** Except as provided by law or authorised by the directors or an ordinary resolution of the company, no person is entitled to inspect any of the company's accounting or other records or documents merely by virtue of being a shareholder.

**Provision for employees on cessation of business**

**51.** The directors may decide to make provision for the benefit of persons employed or formerly employed by the company or any of its subsidiaries (other than a director or former director or shadow director) in connection with the cessation or transfer to any person of the whole or part of the undertaking of the company or that subsidiary.

## DIRECTORS' INDEMNITY AND INSURANCE

**Indemnity**

**52.**—(1) Subject to paragraph (2), a relevant director of the company or an associated company may be indemnified out of the company's assets against—
  (a) any liability incurred by that director in connection with any negligence, default, breach of duty or breach of trust in relation to the company or an associated company,
  (b) any liability incurred by that director in connection with the activities of the company or an associated company in its capacity as a trustee of an occupational pension scheme (as defined in section 235(6) of the Companies Act 2006),·
  (c) any other liability incurred by that director as an officer of the company or an associated company.
(2) This article does not authorise any indemnity which would be prohibited or rendered void by any provision of the Companies Acts or by any other provision of law.
(3) In this article—
  (a) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate, and
  (b) a "relevant director" means any director or former director of the company or an associated company.

**Insurance**

**53.**—(1) The directors may decide to purchase and maintain insurance, at the expense of the company, for the benefit of any relevant director in respect of any relevant loss.
(2) In this article—
  (a) a "relevant director" means any director or former director of the company or an associated company,
  (b) a "relevant loss" means any loss or liability which has been or may be incurred by a relevant director in connection with that director's duties or powers in relation to the company, any associated company or any pension fund or employees' share scheme of the company or associated company, and
  (c) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate.

EXHIBIT H