UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PABLO STAR LTD., *et al.*,

                Plaintiffs,

-v-

THE WELSH GOVERNMENT, *et al.*,

                Defendants.

15-CV-1167 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiffs Pablo Star Ltd. and Pablo Star Media Ltd., two related companies organized and registered under the laws of Ireland and the United Kingdom, own the copyrights to two photographs depicting the poet Dylan Thomas. Plaintiffs have sued Defendants the Welsh Government, Tribune Content Agency, LLC ("TCA"), and certain John Does for having allegedly infringed their copyrights in these two photographs in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.* (Dkt. No. 99 ("SAC").) Before the Court now is the Welsh Government's motion to dismiss Plaintiffs' claims asserted against it in the operative Second Amended Complaint. (Dkt. No. 105.) For the reasons that follow, the motion is denied.

**I.    Background**

    Familiarity with the background of this dispute is presumed based on this Court's prior opinions addressing the Welsh Government's earlier-filed motion to dismiss, *see Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597 (S.D.N.Y. 2016), Plaintiffs' motion for reconsideration of the Court's opinion granting in part and denying in part that motion to dismiss, *see Pablo Star Ltd. v. Welsh Gov't*, No. 15 Civ. 1167, 2016 WL 2745849 (S.D.N.Y. May 11, 2016), and Plaintiffs' motion for leave to file a Second Amended Complaint against the Welsh Government, *see Pablo Star Ltd. v. Welsh Gov't*, No. 15 Civ. 1167, 2018 WL 2041715 (S.D.N.Y. May 1,

2018). The Court details below only those aspects of this case's facts and procedural history most relevant to the instant motion.

On February 18, 2015, Plaintiffs commenced this action against the Welsh Government and various media companies for infringement of Plaintiffs' copyrights in two photographs depicting the poet Dylan Thomas. (Dkt. No. 1.) The nub of Plaintiffs' claims against the Welsh Government is that it has "published, displayed, distributed, and otherwise used unauthorized copies of Plaintiff[s'] copyrighted photographs to in [sic] advertisements, publications, and other promotional materials directed at and specifically targeted towards New York residents," all with the purpose of increasing tourism to Wales. (Dkt. No. 1 ¶¶ 11–13; *see also* Dkt. No. 26 ¶¶ 29–30 (similar allegations in Plaintiffs' First Amended Complaint).)

By an Opinion and Order dated March 16, 2016, this Court granted the Welsh Government's motion to dismiss all claims asserted against it in Plaintiffs' First Amended Complaint on the grounds of improper service and improper venue. (Dkt. No. 53.) With respect to venue, the Court held in relevant part that Plaintiffs had not alleged facts sufficient to justify venue in this district because they had

> not alleged that *any* of the specific conduct at issue occurred in this district, let alone a "substantial part" of it. Neither Plaintiffs nor the Welsh Government reside in the United States. The only concrete infringing materials that Plaintiffs can identify are materials that were available online. But the fact that an infringing material is accessible via the internet in a jurisdiction is hardly sufficient to conclude that this infringement *occurred* in this district for the purposes of venue. Indeed, all of the Welsh Government's relevant conduct—including the creation and maintenance of the websites at issue—appears to have occurred abroad. On this basis, the Court cannot conclude that a substantial part of the events giving rise to this claim occurred in New York.

(Dkt. No. 53 at 16 (internal citations and footnotes omitted).) Plaintiffs then moved for reconsideration of that decision (Dkt. No. 58), and the Court denied that motion on May 11, 2016 (Dkt. No. 65).

Plaintiffs subsequently moved for leave to replead their allegations against the Welsh Government (Dkt. No. 73), attaching to their motion a proposed new pleading that is now the operative Second Amended Complaint (*compare* Dkt. No. 75-1, *with* Dkt. No. 99). Defendant TCA filed an opposition to Plaintiffs' motion for leave to replead, asserting in substance that granting Plaintiffs leave to replead would be futile because this district remained an improper venue for Plaintiffs' claims against the Welsh Government. (Dkt. No. 78.) The Court disagreed. By an Opinion and Order dated May 1, 2018, the Court granted Plaintiffs leave to file the Second Amended Complaint, holding that Plaintiffs' new "allegations, taken as true, plausibly establish[ed] that the Welsh Government undertook significant actions in this district that [were] material to its allegedly unauthorized copying of Plaintiffs' photographs." (Dkt. No. 96 at 5.) Among "Plaintiffs' factual allegations [relevant to that conclusion] include[d] the following:

> The Welsh Government has a permanent presence in New York and maintains offices in New York City. The Welsh Government created infringing "promotional materials" such as "advertisements, brochures, pamphlets, [and] New York City walking tour maps," which included unauthorized copies of Plaintiffs' photographs. In addition, the Welsh Government created display panels for an exhibition called "*Welsh in America*," which made unauthorized use of Plaintiffs' photographs. Prior to creating these materials, the Welsh Government drafted a report detailing its strategies to promote tourism to Wales, and identified the United States as one of its key target markets.
>
> Moreover, Plaintiffs allege, on information and belief, that "the Welsh Government distributed and loaned out copies" of the infringing promotional materials from its offices in New York City, and loaned out and "publicly displayed the infringing panels of the *Welsh in America* exhibition in New York City."

(Dkt. No. 96 at 4–5 (citing SAC ¶¶ 16, 18, 22–23; 27–29; 32–34; Dkt. Nos. 75-2, 75-3) (footnotes omitted).) In response to TAC's contention that the Court had previously rejected similar arguments when denying Plaintiffs' motion for reconsideration, the Court explained that "unlike at the motion-for-reconsideration stage, the Court . . . [was required to] draw all

3

inferences in favor of Plaintiffs" in connection with their motion to replead, and concluded that "any deficiencies addressed in the Court's opinion on reconsideration ha[d] been remedied by the plausible information-and-belief allegations of the" Second Amended Complaint. (Dkt. No. 96 at 6 n.5.) Finally, the Court also declined to address TAC's one-sentence suggestion that the Welsh Government might be immune from suit on the basis of sovereign immunity, explaining that the "Welsh Government will be free to raise any immunity defense on its own behalf in response to the SAC." (Dkt. No. 96 at 7 n.6.)

Plaintiffs filed the operative Second Amended Complaint on May 8, 2018. (Dkt. No. 99.) The Welsh Government has now filed a motion to dismiss Plaintiffs' newly repleaded claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that it is immune from suit on the basis of sovereign immunity. (Dkt. Nos. 105, 106 at 1.)

## II. Legal Standard

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, "is the sole source for subject matter jurisdiction over any action against a foreign state," *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 154 (2d Cir. 2007) (quoting *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999)). The FSIA provides that "a foreign state or an 'agency or instrumentality of a foreign state[]' is immune from federal court jurisdiction unless a specific exception to the FSIA applies." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010) (quoting 28 U.S.C. § 1603(b)).

"When [a] defendant claims immunity under the FSIA," that defendant must first "present[] a *prima facie* case that it is a foreign sovereign." *Figueroa v. Ministry of Foreign Affairs of Swed.*, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016) (second quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993)). "Once the defendant presents a prima facie case that it is a foreign state [within the meaning of the FSIA], 'the plaintiff [then] has the

4

burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted.'" *Kensington*, 505 F.3d at 153 (quoting *Cabiri,* 165 F.3d at 196). Once a Plaintiff has satisfied this burden, "the defendant must show that the alleged exception does *not* apply by a preponderance of the evidence." *Anglo-Iberia*, 600 F.3d at 175 (emphasis added) (internal quotation marks omitted). "The ultimate burden of persuasion remains with the alleged foreign sovereign." *Kensington*, 505 F.3d at 153 (quoting *Cabiri,* 165 F.3d at 196).

"Determining whether [a plaintiff's] burden is met involves a review of the allegations in the complaint, the undisputed facts, if any, placed before the court by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue— resolution of disputed issues of facts." *Anglo-Iberia*, 600 F.3d at 175 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008)). Accordingly, when considering a motion to dismiss for lack of subject matter jurisdiction on the basis of sovereign immunity, "the Court generally must accept the material factual allegations in the complaint as true, but does not draw all reasonable inferences in the plaintiff's favor. [And] where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists." *Figueroa*, 222 F. Supp. 3d at 307 (internal citations omitted). Finally, because "foreign sovereign immunity's basic objective [is] to free a foreign sovereign from *suit*, . . . court[s] should normally resolve those factual disputes and reach a decision about immunity as near to the outset of the case as is reasonably possible." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1317 (2017).

**III. Discussion**

    **A.    Sovereign Immunity**

The Welsh Government moves to dismiss Plaintiffs' claims against it pursuant to Rule 12(b)(1) on the basis of sovereign immunity. (Dkt. Nos. 105, 106 at 1.) In support of its motion, the Welsh Government submits various exhibits and affidavits. (*See, e.g.*, Dkt. Nos. 106-2–106-4, 107–09.) Plaintiffs, in contrast, do not present to the Court any new evidence in opposing the instant motion.[1] (*See generally* Dkt. No. 119.) Still, as the Court recently explained in granting Plaintiffs leave to replead, Plaintiffs' factual allegations in the Second Amended Complaint, including some of the same allegations that the Court held to be sufficient to establish venue in this district, are also supported in part by a number of exhibits attached to Plaintiffs' pleading. (*See* Dkt. No. 96 at 4 (citing Dkt. Nos. 75-2, 75-3); *see also* Dkt. Nos. 99-1–99-14 (exhibits to Plaintiffs' Second Amended Complaint).) To the extent that any of Plaintiffs' factual allegations in the Second Amended Complaint are both supported by evidence attached to the Second Amended Complaint and unrebutted by the Welsh Government's evidence, they are properly considered in connection with Plaintiffs' burden of production. *See Anglo-Iberia*, 600 F.3d at 175. The Court turns now to consider that evidence.

---

[1] Plaintiffs contend that "[i]n an FSIA case," courts will grant a motion to dismiss for lack of subjection matter jurisdiction only where a pleading is "wholly insubstantial or frivolous," and that in doing so courts "must accept as true all of the factual allegations set out in plaintiffs' complaint, draw inferences from those allegations in the light most favorable to plaintiffs, and construe the complaint liberally." (Dkt. No. 119 at 4 (citations and internal quotation marks omitted).) Plaintiffs are incorrect. The legal standard governing the instant motion to dismiss is that outlined by the Court above. *See supra* Section II. In fact, the Supreme Court just two terms ago expressly addressed and rejected the propriety of a legal standard akin to that articulated by Plaintiffs here. *See Bolivarian Republic of Venez.*, 137 S. Ct. at 1324 ("Simply making a nonfrivolous argument [that an FSIA exception applies] is not sufficient. . . . If a decision about the matter requires resolution of factual disputes, the court will have to resolve those disputes.").

As an initial matter, the Welsh Government has made a *prima facie* showing that it is a political subdivision of a foreign state within the meaning of the FSIA. (*See* Dkt. No. 121 at 2 (citing Gov't of Wales Act § A1 ("[T]he Welsh Government . . . [is] a permanent part of the United Kingdom's constitutional arrangements."))[2].) Accordingly, "the burden [now] falls on [Plaintiffs] to establish by a preponderance of the evidence that an exception under the FSIA permits jurisdiction over [the Welsh Government]." *Swarna v. Al-Awadi*, 622 F.3d 123, 143 (2d Cir. 2010). Plaintiffs contend that three of the general exceptions to foreign sovereign immunity that are outlined in § 1605(a)(2) of the FSIA permit them to sue the Welsh Government for the alleged acts of copyright infringement at issue in this suit: (1) the commercial activity exception (Dkt. No. 119 at 5–11); (2) the noncommercial tort exception (Dkt. No. 119 at 11–17); and (3) the expropriation exception (Dkt. No. 119 at 17–18). The Court addresses only the commercial activity exception, concluding both that Plaintiffs have met their burden of production with respect to the that exception to sovereign immunity, and that the Welsh Government has failed to demonstrate by a preponderance of the evidence that this exception does not apply here.

Among the FSIA's "[g]eneral exceptions to the jurisdictional immunity of a foreign state" is what is commonly referred to as the "commercial activity" exception. 28 U.S.C. § 1605(a)(2). This exception provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based [i] upon a commercial activity carried on in the United States by the foreign state; or [ii] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [iii] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

---

[2] Available at http://www.legislation.gov.uk/ukpga/2006/32/section/A1.

*Id.* As the text of the statute makes plain, all three prongs of the exception require a plaintiff to show some form of (1) a "commercial activity" carried on by or of the foreign state (2) a nexus between that activity and the basis of the plaintiff's claims, and (3) a geographic connection with the United States.

The FSIA provides that a "commercial activity" may be "either a regular course of commercial conduct or a particular commercial transaction or act," and instructs courts that the "commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* § 1603(d). In addition, the FSIA defines "commercial activity carried on in the United States by a foreign state" as a "commercial activity carried on by such state and having substantial contact with the United States." *Id.* § 1603(e). Describing these tautological definitions as somewhat "obtuse," the Supreme Court has provided lower courts with some necessary clarification regarding the meaning of "commercial activity." *See Saudi Arabia v. Nelson*, 507 U.S. 349, 358–59 (1993). Recognizing that the FSIA codified the preexisting "so-called 'restrictive' theory of foreign sovereign immunity," *id.* at 359 (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612 (1992)), the Supreme Court explained that "a state engages in commercial activity under the restrictive theory where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns," *id.* at 360 (internal quotation marks omitted). In other words, "a foreign state engages in commercial activity for purposes of the restrictive theory only where it acts 'in the manner of a private player within' the market." *Id.* (quoting *Weltover*, 504 U.S. at 614). Under the "commercial activity" inquiry, it matters "not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives." *Weltover*, 504 U.S. at 614. Instead, courts ask whether "the

8

particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Nelson*, 507 U.S. at 360–61 (quoting *Weltover*, 504 U.S. at 614).

Section 1605(a)(2) further provides that in order to be eligible for the commercial activity exception to the FSIA's general grant of sovereign immunity, a plaintiff's claim must also be "*based upon*" the relevant "commercial activity," or, under the second and third prongs of the exception, based upon an act performed in connection with that commercial activity. 28 U.S.C. § 1605(a)(2) (emphasis added). The Supreme Court has explained that determining whether a plaintiff's claim is "based upon" a commercial activity requires courts to "look[] to the 'basis' or 'foundation' for a claim," or to "the 'gravamen of the complaint.'" *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 395 (2015) (quoting *Nelson*, 507 U.S. at 357). Doing so "first requires a court to 'identify[] the particular conduct on which the [plaintiff's] action is "based."'" *Id.* (alterations in original) (quoting *Nelson*, 507 U.S. at 356). Courts then must consider the "'degree of closeness' [that] exist[s] between the commercial activity and the gravamen of the plaintiff's complaint." *Kensington*, 505 F.3d at 156 (quoting *Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006)). For a claim to be "based upon" a commercial activity, there must be a "a *significant nexus* . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action." *Id.* at 155 (quoting *Reiss v. Société Centrale Du Groupe Des Assurances Nationales,* 235 F.3d 738, 747 (2d Cir. 2000)) (omission in original). This requisite "degree of closeness . . . is *considerably greater* than common law causation requirements." *Id.* at 156 (internal quotation marks omitted).

Here, the Court begins, as it must, "by identifying the particular conduct on which [Plaintiffs'] action is 'based' for purposes of the [FSIA]." *Nelson*, 507 U.S. at 356. The Court

not long ago conducted a similar inquiry into "the essence of Plaintiffs' claims for copyright infringement," doing so in the context of considering the propriety of venue for Plaintiffs' claims in this district. (Dkt. No. 96 at 3.) The Court at that time described the "essence" of Plaintiffs' claims in the Second Amended Complaint as consisting of "the Welsh Government's unauthorized use of the two photographs as part of its campaign to promote tourism to Wales," and more specifically, "the Welsh [G]overnment's alleged unauthorized copying" of Plaintiffs' photographs in violation of 17 U.S.C. § 106. (Dkt. No. 96 at 3–4.) The Court sees no reason why these alleged acts do not also constitute the "'basis' or 'foundation' for [Plaintiffs'] claim," or "the 'gravamen of [their] complaint,'" for purposes of the FSIA. *OBB*, 136 S. Ct. at 395 (quoting *Nelson*, 507 U.S. at 357). Accordingly, the Court determines that the acts that Plaintiffs' copyright claims are "based upon" in this case are the Welsh Government's alleged unauthorized copying and distribution of Plaintiffs' copyrighted photographs.

The Court now asks whether Plaintiffs have demonstrated that the Welsh Government's alleged acts of copying and distribution qualify as "commercial activit[ies]" within the meaning of the FSIA. The Court concludes that they do. The exhibits attached to Plaintiffs' Second Amended Complaint demonstrate that the types of conduct the Welsh Government is alleged to have engaged in are "the *type*[*s*] of actions by which a private party engages in 'trade and traffic or commerce.'" *Weltover*, 504 U.S. at 614 (quoting Black's Law Dictionary 270 (6th ed. 1990)).

The copies of Plaintiffs' photo that are reproduced in Plaintiffs' exhibits are generally part of the Welsh Government's issuance of promotional materials for Welsh-themed activities and travel. (*See, e.g.*, Dkt. No. 99-1 ("Dylan Thomas Walking Tour of Greenwich Village, New York" map published by the Welsh Government, which uses one of Plaintiffs' photographs); Dkt. No. 99-2 ("Discovering the Welsh in America" article published by the Welsh Government,

which uses one of Plaintiffs' photographs); Dkt. No. 99-6–99-9 (copies of articles published by various United States media outlets promoting tourism to Wales and using the same infringing photographs included as part of the Welsh Government's publications)[3].) The Welsh Government's use of these photos is an eminently familiar manifestation of the manner in which any number of private travel agents or guides have been alleged to have used another's copyrighted materials to supplement their own products or services. *See, e.g.*, *Beasley v. John Wiley & Sons, Inc.*, 56 F. Supp. 3d 937 (N.D. Ill. 2014) (copyright infringement suit premised on private publisher's unauthorized copying and use of plaintiff's copyrighted pictures of Chicago in a travel book); *Burch v. Nyarko*, No. 06 Civ. 7022, 2007 WL 2191615 (S.D.N.Y. July 31, 2007) (Gorenstein, Mag. J.) (copyright infringement suit premised on private publisher's unauthorized copying and use of plaintiff's copyrighted pictures of Ghana on a travel website); *Feder v. Videotrip Corp.*, 697 F. Supp. 1165 (D. Colo. 1988) (copyright infringement suit premised on private publisher's unauthorized copying and use of plaintiff's copyrighted travel guides in a travel video). Here too, Plaintiffs' exhibits confirm that the Welsh Government

---

[3] Plaintiffs allege on information and belief that the Welsh Government provided these United States news outlets with the infringing copies of Plaintiffs' photo as part of their efforts to encourage tourism to Wales. (*See, e.g.*, SAC ¶¶ 47–48.) The contents of these articles corroborate Plaintiffs' allegations: The articles not only favorably depict and encourage travel to Wales, but also link directly to the website for Visit Wales (*see, e.g.*, 99-7 at 6–7), which according to a Welsh Government official is "an administrative division of the Welsh Government charged with carrying out the Government's policy to promote tourism to Wales" (Dkt. No. 107 ¶ 5). Plaintiffs also attach to their Second Amended Complaint a "Framework Action Plan" from the Welsh Government in which it resolved to "[r]e-launch websites for US and German markets providing [them with] tailored content." (Dkt. No. 99-14 at 6.) A Welsh official has confirmed that the Government of Wales does license images for purposes of tourism promotion (Dkt. No. 107 ¶ 8), and the Welsh Government offers no evidence to rebut Plaintiffs' allegations that the Welsh Government did in fact provide United States news outlets with infringing copies of Plaintiffs' photos. The Court concludes that Plaintiffs have produced evidence sufficient to corroborate their allegations that the United States news articles appended to the Second Amended Complaint were published in coordination with the Welsh Government.

distributed copies of Plaintiffs' photos in a form largely indistinguishable from the form in which private parties also distributed copies of Plaintiffs' photo. (*Compare* Dkt. No. 99-2 *with* Dkt. Nos. 99-6–99-9.) This evidence confirms that Plaintiffs' suit against the Welsh Government arises from the latter's exercise of "powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns," *Nelson*, 507 U.S. at 360 (internal quotation marks omitted), and that Plaintiffs' suit is therefore "based upon . . . commercial activit[ies]" within the meaning of 28 U.S.C. § 1605(a)(2).

In moving to dismiss Plaintiffs' Second Amended Complaint, the Welsh Government points to unrebutted evidence showing that "the Welsh Government did not use the photographs for profit[,] but [instead used them] to carry out its public mission to encourage economic development, culture, and tourism in Wales," evidence the Welsh Government contends demonstrates that any alleged copying was done in connection with a uniquely sovereign objective (*i.e.*, promoting tourism) insufficient to constitute "commercial activity." (*See* Dkt. No. 106 at 12–14.) But the Welsh Government's evidence of the *purposes* behind its copying and distributing of Plaintiffs' photos, however persuasive, is tangential to the Court's inquiry. That is because courts considering whether a government's conduct is a "commercial activity [as defined by the FSIA] . . . 'ask not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives[,] but rather whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce.'" *Swarna*, 622 F.3d at 147 (quoting *Anglo-Iberia*, 600 F.3d at 177). Because Plaintiffs' evidence shows that the Welsh Government's acts of copying and distributing Plaintiffs' photos were of the sort a private

person might also engage in, the Court need not (and indeed must not) inquire further into the purposes behind that copying.

At least one other court in this district has rejected similar arguments made by foreign entities seeking to evade copyright claims brought against them pursuant to the FSIA's commercial activity exception. In *Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277 (S.D.N.Y. 2001) (Lynch, J.), the court rejected an assertion of sovereign immunity raised by copyright-infringement defendants who were officials of a Jordanian governmental body, *id.* at 290. The *Leutwyler* defendants were accused of "furnishing photos taken by [the plaintiff] for use in the *Jordan Diary,* a publication that ha[d] been sold in the United States" in order to promote tourism to Jordan. *Id.* at 283, 291. Declining to consider the Jordanian defendants' alleged purposes of encouraging tourism in selling copies of the "diary," Judge Lynch explained that even if "the *purpose* of publishing the diary may have been governmental (disseminating information about Jordan and encouraging tourism), the *nature* of the activity (publishing and selling books) is clearly commercial." *Id.* Accordingly, the court concluded that the plaintiff "had sustained his burden of demonstrating that the [otherwise-immune Jordanian defendants had] engaged in certain 'commercial activity,' as that term is defined in § 1603(e), that could give rise to subject matter jurisdiction under the FSIA." *Id.* For the reasons explored above, this Court similarly concludes that the Welsh Government's alleged copying and distribution of Plaintiffs' copyrighted photos in connection with its promotional materials was a "commercial activity" as that term is used in the context of the FSIA— irrespective of the purposes underlying the Welsh Government's copying of those photos.

Finally, even with Plaintiffs having shown that their suit is "based upon a commercial activity carried on . . . by the" Welsh Government, Plaintiffs still must show that this conduct

was "carried on *in the United States*" in order to overcome the Welsh Government's assertion of sovereign immunity.[4] 28 U.S.C. § 1605(a)(2) (emphasis added). To do so, Plaintiffs are required to produce evidence showing that the Welsh Government's alleged commercial activities had "substantial contact with the United States." 28 U.S.C. § 1603(e).

In granting Plaintiffs leave to replead, the Court concluded that Plaintiffs' allegations, "taken as true, plausibly establish[ed] that the Welsh Government undertook significant actions in this district that are material to its allegedly unauthorized copying of Plaintiffs' photographs." (Dkt. No. 96 at 5.) But unlike at the motion-to-replead stage, the Court can no longer "draw all reasonable inferences in [Plaintiffs'] favor" in connection with the instant Rule 12(b)(1) motion to dismiss. *Figueroa*, 222 F. Supp. 3d at 307. Instead, because "jurisdictional facts are [now] disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists." *Id.* Accordingly, the Court considers the extent to which the Second Amended Complaint's attached exhibits are sufficient to carry Plaintiffs' evidentiary burden of showing that the Welsh Government's commercial activities were "carried on in the United States," 28 U.S.C. § 1605(a)(2), particularly in light of the evidence now presented by the Welsh Government.

The Court concludes that Plaintiffs' evidence is sufficient to carry their burden. Most relevant to the Court's conclusion in this regard are the exhibits attached to Plaintiffs' Second

---

[4] Alternatively, Plaintiffs could make a showing under the statute's second and third prongs that their suit is "based . . . upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," or "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). But as the Court concludes that Plaintiffs have met their burden of showing that the commercial activities upon which their action is based were "carried on in the United States by the" Welsh Government, *id.*, the Court need not address these alternative bases for rejecting the Welsh Government's assertion of sovereign immunity.

Amended Complaint in which the Welsh Government itself represents that at least some of the infringing materials at issue in this suit were "developed by the Welsh Government in New York" and were available to order "for distribution free-of-charge . . . from the Welsh Government in New York." (*See* Dkt. No. 99-2 at 2–3.) Buttressing this conclusion is Plaintiffs' evidence showing that some of the Welsh Government's infringing materials were also published in the United States by United States news outlets in furtherance of the Welsh Government's attempts to promote tourism to Wales. (Dkt. Nos. 99-6–99-9.)

The most persuasive evidence submitted by the Welsh Government in support of its attempts to rebut this conclusion is the affidavit of Rob Holt, the Deputy Director of Tourism Development and Major Events of the Department of Economy, Skills and Natural Resources for the Welsh Government.[5] (Dkt. No. 107 ¶ 2.) Holt confirms that the Welsh Government does maintain an office in New York. (Dkt. No. 107 ¶ 3.) But Holt represents that the Welsh Government's activities in furtherance of its promotion of tourism and culture are conducted entirely from Wales (Dkt. No. 107 ¶ 6), and that the computer servers that host the webpages appended to Plaintiffs' Second Amended Complaint are also located in Wales (Dkt. No. 107 ¶ 7; *see also* Dkt. No. 99-4). Holt further represents that the Welsh Government never offered copies

---

[5] The other evidence the Welsh Government submits in disputing the applicability of the commercial activity exception is irrelevant to the Court's disposition of this question. The Welsh Government's remaining evidence relates either to the locus of Plaintiffs' alleged injury (*see, e.g.*, Dkt. No. 106-4), or to the purposes underlying the Welsh Government's promotion of tourism (*see, e.g.*, Dkt. Nos. 106-2–106-3, 107 at 4–31). The former category of evidence would be relevant to only the tortious act exception to the FSIA's general grant of sovereign immunity, *see* 18 U.S.C. § 1605(a)(5), and, for reasons already explored, the latter category of evidence does not shed any light on the commercial character of the Welsh Government's activities, because such a character "shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose," *id.* § 1603(d). Given that all that is left for the Court to determine is the question of whether this "action is based upon commercial activity carried on *in the United States* by a foreign state," *id.* § 1605(a)(2) (emphasis added), the Court need consider these categories of evidence no further.

of Plaintiffs' photos for sale or distributed them for profit, and that the Welsh Government expressly forbade its licensees from using Plaintiffs' photographs for "promotion of non-tourism related, non-inward investment related or commercial products." (Dkt. No. 107 ¶¶ 8–9; *see also* Dkt. No. 107 at 32.)

Many of Holt's representations are immaterial to the Court's inquiry at this stage: It does not matter whether Wales distributed copies of the photograph for sale or for profit, or only for purposes of promoting tourism. Instead, it matters only where the relevant copies of Plaintiffs' photos were made and distributed. In that respect, Holt's affidavit is conspicuous for what it fails to say. This is particularly true with respect to Holt's failure to call into questions Plaintiffs' allegations regarding some of the particular activities the "Welsh Government has engaged in and undertaken . . . in this District," which is of course located in the United States. (*See* Dkt. No. 99 ¶¶ 22–25.) As already discussed, Plaintiffs support these allegations with documentary evidence in the form of a walking tour mapped onto New York City streets (Dkt. No. 99-1), a map that would presumably be useful only if distributed in a manner that had "substantial contact with the United States," 28 U.S.C. 1603(e). These allegations are further supported by an exhibit consisting of a webpage published by the Welsh Government that includes copies of Plaintiffs' photos alongside an offer of sale of tickets to "the Official Dylan Thomas Walking Tour of New York," a tour the Welsh Government then describes as "a collaboration of the Welsh Government *in New York* and the family of Dylan Thomas." (Dkt. No. 99-2 (emphasis added).) In addition, that website explains that copies of the infringing materials are available to order "for distribution free-of-charge . . . from the Welsh Government *in New York*." (*Id.* (emphasis added).) Finally, that same website also confirms that the "Dylan Thomas Walking Tour of Greenwich Village" that is attached to Plaintiffs' Second Amended Complaint (Dkt. No. 99-1)

16

"was [also] developed by the Welsh Assembly Government *in New York*" (Dkt. No. 99-2 at 2 (emphasis added)).

Holt's affidavit fails to rebut what the exhibits to Plaintiffs' Second Amended Complaint persuasively demonstrate: that "the Welsh Government *in New York*" played an active role in the development and distribution of the promotional materials which included copies of Plaintiffs' photographs. (*Id.*) Moreover, Plaintiffs' other exhibits also corroborate Plaintiffs' allegation that "the Welsh Government contracted with private businesses located in New York City to publish, print, display, and distribute the Infringing Promotional Materials, including the infringing walk tour maps and infringing *Welsh in America* display panels." (Dkt. No. 99 ¶ 25; *see also, e.g.*, Dkt. Nos. 99-6–99-9 (evidence of Welsh Government's coordination with other United States news outlets).) Taken together, all of this evidence persuasively demonstrates that the Welsh Government's "commercial activity . . . [had] substantial contact with the United States." 28 U.S.C. § 1603(e).

In summary, the Court concludes that Plaintiffs have produced evidence that establishes that their claims are "based upon a commercial activity carried on in the United States by [a] foreign state," 28 U.S.C. §1605(a)(2), and that the Welsh Government has not carried its burden of "show[ing] that the alleged [commercial activity] exception does not apply [to its conduct] by a preponderance of the evidence." *Anglo-Iberia*, 600 F.3d at 175.

### B. The Welsh Government's Remaining Contentions

#### 1. International Comity

The Welsh Government briefly suggests that the doctrine of international comity calls for the dismissal of Plaintiffs' claims. (See Dkt. No. 106 at 14.)

The Second Circuit has described the doctrine of comity as "'amorphous' and 'fuzzy,'" and it has counseled that "even where the doctrine clearly applies[,] it 'is not an imperative

obligation of courts but rather is a discretionary rule of practice, convenience, and expediency.'" *Royal and Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quoting *JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A. DE C.V.*, 412 F.3d 418, 423 (2d Cir. 2005)). Among other things, the rule of "comity requires that the parties and issues in both litigations [be] the same or sufficiently similar, such that the doctrine of *res judicata* can be asserted." *Herbstein v. Bruetman*, 743 F. Supp. 184, 189 (S.D.N.Y. 1990). "[S]ince comity is an affirmative defense, [the party invoking comity] carrie[s] the burden of proving that comity [is] appropriate." *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993).

In support of its suggestion that comity should dictate the outcome of the parties' dispute here, the Welsh Government submits to the Court a copy of a judgment issued by an Irish court that dismissed some claims raised by Pablo Star Media Ltd. against the Welsh Government. (*See* Dkt. No. 107 at 33.) But it is entirely unclear from that Irish judgment whether Pablo Star Ltd. was also a party to that suit, or whether Plaintiffs' claims failed because of a jurisdictional bar sufficiently similar to that at issue here to warrant *res judicata*. (*Id.*; *see also* Dkt. No. 107 at 41 (suggesting the possibility of Plaintiffs obtaining jurisdiction for their claims against the Welsh Government in another United Kingdom court).) The Welsh Government's passing suggestion that international comity warrants dismissal of Plaintiffs' claims before this Court is insufficient to carry its "burden of proving that comity [is] appropriate" in this case. *Allstate Life Ins. Co.*, 994 F.2d at 999.

### 2. Pablo Star Media Ltd.'s Dissolution

The Welsh Government presents for the first time in its reply brief evidence demonstrating that one of the Plaintiffs, namely Pablo Star Media Ltd., has been dissolved and may lack standing to proceed in this matter. (Dkt. Nos. 121 at 1, 121-1 ¶ 4, 121-1 at 3–4.) The Court notes that this evidence does nothing to rebut the standing of at least one Plaintiff to

proceed in this action. (*See* Dkt. No. 99 ¶¶ 9–10 (alleging that the action's other Plaintiff, Pablo Star Ltd., retains an independent right to pursue claims at issue in this suit).) Because "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* 547 U.S. 47, 52 n.2 (2006), and because courts "ordinarily will not consider issues raised for the first time in a reply brief," *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009), the Court declines to address the Welsh Government's belated contention regarding Pablo Star Media Ltd.'s dissolution. The Welsh Government is free to raise this issue again at a later stage of this case.

### 3. Plaintiffs' Berne Convention Claims

Finally, the Welsh Government moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Plaintiffs' claims brought under the Berne Convention. (Dkt. No. 106 at 1, 16–17.) However, Plaintiffs disclaim any attempt to state independent claims under the Berne Convention, and explain that their allegations regarding the Berne Convention are relevant only to their attempts to demonstrate a violation of international law sufficient to trigger the expropriation exception to the FSIA, 28 U.S.C. § 1605(a)(3). (Dkt. No. 119 at 17–18; *see also* SAC ¶ 102.) Because Plaintiffs have disclaimed any attempt to state a claim in this action under the Berne Convention, the Welsh Government's Rule 12(b)(6) motion to dismiss Plaintiffs' claims brought under the Berne Convention is denied as moot.

## IV. Conclusion

For the foregoing reasons, the Welsh Government's motion to dismiss is DENIED. The Welsh Government is directed to file an answer to the Second Amended Complaint within 21 days of the date of this Opinion.

The Clerk of Court is directed to close the motion at Docket Number 105.

SO ORDERED.

Dated: March 29, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge